ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
KEVIN A. SEELY (199982)
ASHLEY R. RIFKIN (246602)
STEVEN M. MCKANY (271405)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        kseely@robbinsarroyo.com
        arifkin@robbinsarroyo.com
        smckany@robbinsarroyo.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
        rkshelquist@locklaw.com

Attorneys for Plaintiffs

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER, DANZ DOGGIE DAYTRIPS, and AMY FREEBORN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>WELLPET LLC, a Delaware corporation, and BERWIND CORPORATION, a Pennsylvania corporation,<br><br>                    Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR:<br><br>  (1) NEGLIGENT MISREPRESENTATION;<br>  (2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br>  (3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW;<br>  (4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>  (5) BREACH OF EXPRESS WARRANTY;<br>  (6) BREACH OF IMPLIED WARRANTY; AND<br>  (7) NEGLIGENCE PER SE<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

1.     Plaintiffs Daniel Zeiger, Danz Doggie Daytrips, and Amy Freeborn ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against defendants WellPet LLC and Berwind Corporation ("Defendants"), to cause Defendants to disclose the presence of dangerous substances in their pet food sold throughout the United States and to restore monies to the consumers and businesses who purchased the Contaminated Dog Foods (as defined herein) during the time that Defendants failed to make such disclosures. Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel, including independent testing of the products, and as to all other matters, upon information and belief (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## THE DANGEROUS MAKE-UP OF DEFENDANTS' DOG FOOD

2.     Defendants manufacture, market, advertise, label, distribute, and sell Wellness® CORE® Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal and Wellness® Complete Health Adult Dry Whitefish and Sweet Potato (the "Contaminated Dog Foods").[1]  The Contaminated Dog Foods contain material and significant levels of arsenic and lead—both known dangerous toxins for both humans and animals, including dogs.  Some foods, like rice and sweet potato, have been determined to absorb arsenic in water during cooking and therefore increase exposure.

3.     Inorganic arsenic is a ***known human carcinogen.***  It can contribute to cancers, heart disease, diabetes, declines in intellectual function, and can decrease a body's ability to respond to viruses.  The organic form of arsenic—the form found in arsenic-containing compounds—has been shown in recent studies to easily convert to inorganic arsenic.

4.     Based on the risks associated with exposure to high levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration

---

[1] Discovery may reveal additional products that also contain unsafe levels of heavy metals and Plaintiffs reserve their right to include any such products in this action.

CLASS ACTION COMPLAINT

("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb"). For the FDA, the 10 ppb level regulates apple juice and for the EPA it governs drinking water.[2]

5.     Moreover, the FDA is considering limiting the action level for arsenic in rice to 100 ppb:

> The action level for inorganic arsenic in infant rice cereals that FDA considers achievable with the use of such practices is 100 μ g/kg or 100 ppb (see Ref. 14)…. The proposed action level for inorganic arsenic in infant rice cereals is intended to reduce the possible risk for infants fed rice cereal by reducing exposure to inorganic arsenic that may be found in rice cereal for infants. FDA considers this reduction in exposure to infants fed rice cereal will lead to a quantifiable reduction in the lifetime risk of certain cancers associated with exposure to inorganic arsenic, as well as an unquantifiable reduction in the risk of certain non-cancer adverse health outcomes reviewed in the risk assessment, including neurodevelopmental effects in infants.[3]

6.     The Contaminated Dog Foods also contain material and significant levels of lead, which is another carcinogen and developmental toxin known to cause health problems to consumers. Exposure to lead in food builds up over time. Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

7.     Despite the known risks of arsenic and lead exposure, Defendants have negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods despite containing alarming levels of arsenic and lead. The independent lab testing of the Contaminated Dog Foods found that Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal contains 1,500 ppb of arsenic and 221 ppb of lead and Wellness Complete Health Adult Dry Whitefish and Sweet Potato contains 1,200 ppb of arsenic and 220 ppb of lead.

---

[2] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers. *See, e.g*., Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters/2016/ucm506526.htm.

[3] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

CLASS ACTION COMPLAINT

8.      Additionally, Defendants knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods multiple times each day to his or her dog being the main, if not only, source of food for the dog.  This leads to repeated exposure of the toxins to the dog.

9.      Defendants have wrongfully advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that these products contain arsenic or lead, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur.

10.     Defendants' omissions are not only material but also false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendants to market the Contaminated Dog Foods as healthy and safe to induce consumers, such as Plaintiffs to purchase the products.  For instance,  not only did Defendants chose a brand name for their dog food, "Wellness," that in itself suggests a healthy product, they market the Contaminated Dog Foods by promising "Uncompromising Nutrition" and "Unrivaled Quality Standards":



11.     Moreover, the Contaminated Dog Foods declare themselves as offering complete health and nothing in excess:

- 3 -

CLASS ACTION COMPLAINT





12. Using such descriptions and promises makes Defendants' advertising campaign deceptive based on the unsafe and alarming levels of arsenic and lead in the Contaminated Dog Foods. Defendants' statements, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy and safe.

13. Moreover, a reasonable consumer, such as Plaintiffs and other members of the Class (as defined herein), would have no reason to not expect and anticipate that the

Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess as promised by Defendants.  Non-disclosure and concealment of the toxins in the Contaminated Dog Foods coupled with the partial disclosures and/or misrepresentations that the food provides complete health and is safe by Defendants is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and Class members would not have bought if the true quality and ingredients were disclosed.  As a result of these false statements, omissions, and concealment, Defendants have generated substantial sales of the Contaminated Dog Foods.

14.     Plaintiffs bring this action individually and on behalf of all other similarly situated consumers within the United States who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of material and significant levels of arsenic and lead in the Contaminated Dog Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs reside and suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

**INTRADISTRIC ASSIGNMENT**

17.    A substantial portion of the transactions and wrongdoings which gave rise to the claims in this action occurred in the County of Marin, and as such, this action is properly assigned to the San Francisco division of this Court.

**THE PARTIES**

18.    Plaintiff Daniel Zeiger ("Zeiger") is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Zeiger purchased the Contaminated Dog Foods and fed it to his three-year-old American Bulldog named Mack.  Plaintiff Zeiger has purchased the Contaminated Dog Foods approximately once every two months for the past three years.

19.    Plaintiff Danz Doggie Daytrips ("Danz Doggie"), is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Danz Doggie is a dog sitting business that used the Contaminated Dog Foods as one of the primary foods fed to its clients' dogs.

20.    Plaintiff Amy Freeborn ("Freeborn") is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Freeborn purchased the Contaminated Dog Foods and fed it to her three-year-old Labrador Retriever named Olivia.

21.    As the result of Defendants' deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what it promised.  They paid the above sum on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was healthy, clean, and safe for dogs to ingest.  Plaintiffs would not have paid this money had they known that the Contaminated Dog Foods contained an excessive degree of arsenic and lead.  Damages can be calculated through expert testimony at trial.  Further, should Plaintiffs encounter the Contaminated Dog Foods in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

22.    Defendant WellPet LLC is incorporated in Delaware with its headquarters located at 200 Ames Pond Drive, Tewksbury, Massachusetts.  Defendant WellPet LLC is a subsidiary of defendant Berwind Corporation that is incorporated in Pennsylvania with its headquarters

- 6 -

located at 3000 Centre Square West, 1500 Market Street, Philadelphia, Pennsylvania. Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Dog Foods under the Wellness dog food brand name throughout the United States. The advertising for the Contaminated Dog Foods, relied upon by Plaintiffs, was prepared and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through advertising and labeling that contained the misrepresentations alleged herein.   The advertising and labeling for the Contaminated Dog Foods was designed to encourage consumers to purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, i.e., Plaintiffs and the Class, into purchasing the Contaminated Dog Foods.   Defendants own, manufacture, and distribute the Contaminated Dog Foods, and created and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Dog Foods.

23.   The Contaminated Dog Foods, at a minimum, include:

(a)   Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal:



CLASS ACTION COMPLAINT

(b)      Wellness Complete Health Adult Dry Whitefish and Sweet Potato:



## FACTUAL ALLEGATIONS

**Both Arsenic and Lead Are Exceptionally Dangerous When Ingested**

24.      Toxins like arsenic and lead can cause serious illness to humans and animals.  A company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these toxins.

25.      Arsenic is a semi-metal element in the periodic table.  It is odorless and tasteless. Arsenic occurs naturally in the environment as an element of the earth's crust; it is found in rocks, soil, water, air, plants, and animals.  Elemental arsenic is combined with other elements such as oxygen, chlorine, and sulfur to form inorganic arsenic compounds.  Historically, arsenic compounds were used in many industries, including: (i) as a preservative in pressure-treated lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening; (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to enhance junctions in semiconductors.  The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons.  Some of

these cancellations were based on voluntary withdrawals by producers.   For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the EPA signed the cancellation order.  In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable."  Arsenic is an element—it does not degrade or disappear.

26.   Inorganic arsenic is a known cause of human cancer.  The association between inorganic arsenic and cancer is well documented.  As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled arsenic.  By 1992, the combination of evidence from Taiwan and elsewhere was sufficient to conclude that ingested inorganic arsenic, such as is found in contaminated drinking water and food, was likely to increase the incidence of several internal cancers.  The scientific link to skin and lung cancers is particularly strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder, kidney, and colon cancers as well.

27.   Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States.  Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health.  Lead poisoning can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately cause death.

28.   The State of California has included arsenic and lead as a known carcinogen and developmental toxin on the Proposition 65 list, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986.

29.   The FDA has set standards that regulate the maximum parts per billion of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic.  *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

**Defendants Falsely Advertise the Contaminated Dog Foods as Healthy While Omitting Any Mention of Arsenic or Lead**

30.     Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell their extensive Wellness lines of dry and wet pet food products in California and across the United States.

31.     Based on Defendants' decision to advertise, label, and market their Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health, they had a duty to ensure that the these statements were true.  As such, Defendants knew or should have known that the Contaminated Dog Foods included concerning and higher levels of arsenic and lead.

32.     The Contaminated Dog Foods are available at numerous retail and online outlets.

33.     The Contaminated Dog Foods are widely advertised.

34.     The official Wellness Pet Food website displays the Contaminated Dog Foods' descriptions and full lists of ingredients for the Contaminated Dog Foods and includes the following promise:

# Our Standards. Our Promise.

At Wellness, your pet's health is at the core of all we do. That's why we have developed an extensive quality assurance program, guaranteeing that all of our products are safe, pure and balanced.

35.      The Defendants' webpages again and again repeat the misleading statements about the benefits of the Contaminated Dog Foods described above, without any mention of the arsenic and lead they contain.

36.     As a result of Defendants' omissions, a reasonable consumer would have no reason to suspect the presence of arsenic and lead in the Contaminated Dog Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

37.     That is exactly what Plaintiffs did here.  Plaintiffs' independent lab testing of the Contaminated Dog Foods found that Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal contains 1,500 ppb of arsenic and 221 ppb of lead and Wellness Complete Health Adult Dry Whitefish and Sweet Potato contains 1,200 ppb of arsenic and 220 ppb of lead.

## DEFENDANTS' STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS

38.     California law is designed to ensure that a company's claims about its products are truthful and accurate.  Defendants violated California law by incorrectly claiming that the Contaminated Dog Foods are pure, healthy, and safe for consumption and by not accurately detailing that the products contain the toxins arsenic and lead.  Instead, Defendants represented that the Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

39.     Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiffs to plead relying upon each advertised misrepresentation.

40.     Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients, such as arsenic and lead.

## PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS

41.     Plaintiffs reasonably relied on Defendants' own statements, misrepresentations, and advertising concerning the particular qualities and benefits of the Contaminated Dog Foods.

42.     Plaintiffs read and relied upon the labels of the Contaminated Dog Foods in making their purchasing decisions.

43.     A reasonable consumer would consider the labeling of a product when deciding whether to purchase.  Here, Plaintiffs relied on the specific statements and misrepresentations by Defendants that the Contaminated Dog Foods were healthy and made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health with no disclosure of the inclusion of arsenic or lead.

CLASS ACTION COMPLAINT

**DEFENDANTS' KNOWLEDGE AND NOTICE OF THEIR BREACHES
OF THEIR EXPRESS AND IMPLIED WARRANTIES**

44.     Defendants had sufficient notice of their breaches of express and implied warranties.  Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods.  Moreover, Defendants were put on notice by the Clean Label Project on the inclusion of heavy metals in its dog food products.

**PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS**

45.     Defendants knew that consumers such as Plaintiffs and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of their advertising and statements.

46.     Defendants intended that the advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiffs and the proposed Class.

47.     Defendants directly marketed to Plaintiffs and the proposed Class through statements on their website, labeling, advertising, and packaging.

48.     Plaintiffs and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

**CLASS ACTION ALLEGATIONS**

49.     Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the United States who, from July 1, 2013 to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Class").

50.     In addition, Plaintiffs brings this action individually and on behalf of the following Subclass pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in California who, from July 1, 2013 to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Subclass").

51.     Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

52.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

53.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

54.     Questions of law and fact common to Plaintiffs and the Class and Subclass include, but are not limited to, the following:

(a)     whether Defendants owed a duty of care to the Class;

(b)     whether Defendants knew or should have known that the Contaminated Dog Foods contained higher levels of arsenic and/or lead;

(c)     whether Defendants represented and continue to represent that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health;

(d)     whether Defendants represented and continue to represent that the Contaminated Dog Foods are healthy and safe for consumption;

(e)     whether Defendants failed to state that the Contaminated Dog Foods contained arsenic and lead;

(f)     whether Defendants' representations in advertising and/or labeling are false, deceptive, and misleading;

(g)     whether those representations are likely to deceive a reasonable consumer;

(h)     whether Defendants had knowledge that those representations were false, deceptive, and misleading;

(i)     whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(j)     whether a representation that a product is healthy and safe for consumption and do not contain arsenic and/or lead is material to a reasonable consumer;

(k)     whether Defendants' representations and descriptions on the labeling of the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(l)     whether Defendants violated California Business & Professions Code sections 17200, *et seq.*;

(m)    whether Defendants violated California Business & Professions Code sections 17500, *et seq.*;

(n)     whether Defendants violated California Civil Code sections 1750, *et seq.*;

(o)     whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

(p)     whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

55.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.   Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

56.    Plaintiffs' claims are typical of Class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

57.    Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

58.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

59.     Questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

60.     As a result of the foregoing, Class treatment is appropriate.

## COUNT I

**(Negligent Misrepresentation Against Defendants on Behalf of the Class)**

61.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

62.     Plaintiffs reasonably placed their trust and reliance in Defendants' representations that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

63.     Plaintiffs reasonably placed their trust and reliance in Defendants that the Contaminated Dog Foods marketed and advertised to them and the Class were healthy and safe for consumption and did not contain arsenic and lead.

64.     Because of the relationship between the parties, the Defendants owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of arsenic and lead in the Contaminated Dog Foods or, based upon their superior knowledge, having spoken, to say enough to not be misleading.

65.     Defendants breached their duty to Plaintiffs and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Contaminated Dog Foods.

66.     Plaintiffs and the Class reasonably and justifiably relied upon the information supplied to them by the Defendants.  As a result, Plaintiffs and the Class purchased the Contaminated Dog Foods at a premium.

67.     Defendants failed to use reasonable care in their communications and representations to Plaintiffs and Class.

68.     By virtue of Defendants' negligent misrepresentations, Plaintiffs and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

1

## COUNT II

2

3

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750,** *Et Seq.***, Against Defendants on Behalf of the Subclass)**

4        69.    Plaintiffs Zeiger and Freeborn incorporate by reference and reallege each and

5  every allegation contained above, as though fully set forth herein.

6        70.    Plaintiffs Zeiger and Freeborn   and each proposed Subclass member is a

7  "consumer," as that term is defined in California Civil Code section 1761(d).

8        71.    The Contaminated Dog Foods are "goods," as that term is defined in California

9  Civil Code section 1761(a).

10        72.    Defendants are a "person" as that term is defined in California Civil Code section

11  1761(c).

12        73.    Plaintiffs Zeiger and Freeborn and each proposed Subclass member's purchase of

13  Defendants' products constituted a "transaction," as that term is defined in California Civil Code

14  section 1761(e).

15        74.    Defendants' conduct alleged herein violates the following provisions of

16  California's Consumer Legal Remedies Act (the "CLRA"):

17        (a)    California Civil Code section 1770(a)(5), by representing that the

18  Contaminated Dog Foods are healthy and safe for consumption and by failing to make any

19  mention of arsenic and lead in the Contaminated Dog Foods;

20        (b)    California Civil Code section 1770(a)(7), by representing that the

21  Contaminated Dog Foods were of a particular standard, quality, or grade, when they were of

22  another;

23        (c)    California Civil Code section 1770(a)(9), by advertising the Contaminated

24  Dog Foods with intent not to sell them as advertised; and

25        (d)    California Civil Code section 1770(a)(16), by representing that the

26  Contaminated Dog Foods have been supplied in accordance with previous representations when

27  they have not.

28

75.     As a direct and proximate result of these violations, Plaintiffs Zeiger and Freeborn and the Subclass have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Dog Foods.

76.     Plaintiffs Zeiger and Freeborn seek an award of attorney's fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## <u>COUNT III</u>

**(Violations of California False Advertising Law, California Business
& Professions Code §§17500, *Et Seq.*, Against Defendants on Behalf of the Subclass)**

77.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

78.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

79.     As set forth herein, Defendants' claims that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public.

80.     Defendants' claims that the Contaminated Dog Foods are healthy and safe for consumption are untrue or misleading, as is failing to make any mention of arsenic and lead in the Contaminated Dog Foods.

81.     Defendants knew, or reasonably should have known, that the claims were untrue or misleading.

82.     Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that, so long as the Contaminated Dog Foods are, as advertised, healthy and safe for consumption and do not contain arsenic or lead.

83.     Plaintiffs and members of the Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Dog Foods.

**COUNT IV**

**(Violations of the Unfair Competition Law, California Business
& Professions Code §§17200, *Et Seq.*, Against Defendants on Behalf of the Subclass)**

84.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

85.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

86.     Defendants' statements that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public, as is Defendants' failing to make any mention of arsenic and lead in the Contaminated Dog Foods.

**Unlawful**

87.     As alleged herein, Defendants have advertised the Contaminated Dog Foods with false or misleading claims, such that Defendants' actions as alleged herein violate at least the following laws:

•     The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

•     The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

88.     Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

89.     Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

90.     Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

91.     In accordance with California Business & Professions Code section 17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

92.     On behalf of themselves and the Subclass, Plaintiffs also seek an order for the restitution of all monies from the sale the Contaminated Dog Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V

**(Breach of Express Warranty, California Commercial Code §2313, Against Defendants on Behalf of the Subclass)**

93.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

94.     As set forth herein, Defendants made express representations to Plaintiffs and the Subclass that the Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

95.     Defendants also made express representations to Plaintiffs and the Subclass that the Contaminated Dog Foods were pure, healthy, and safe for consumption.

96.     These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

97.     There was a sale of goods from Defendants to Plaintiffs and the Subclass members.

98.     On the basis of these express warranties, Defendants sold to Plaintiffs and the Subclass the Contaminated Dog Foods.

CLASS ACTION COMPLAINT

99.     Defendants knowingly breached the express warranties by including arsenic and lead in the Contaminated Dog Foods.

100.    Defendants were on notice of this breach as they were aware of the included arsenic and lead in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

101.    Privity exists because Defendants expressly warranted to Plaintiffs and the Subclass that the Contaminated Dog Foods were healthy and safe for consumption.

102.    Plaintiffs and the Subclass reasonably relied on the express warranties by Defendants.

103.    As a result of Defendants' breaches of their express warranties, Plaintiffs and the Subclass sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendants represented.

104.    Plaintiffs, on behalf of themselves and the Subclass, seeks actual damages for Defendants' breach of warranty.

## COUNT VI

**(Breach of Implied Warranty, California Commercial Code §2314, Against Defendants on Behalf of the Subclass)**

105.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

106.    As set forth herein, Defendants made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiffs and the Subclass that the Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

107.    Defendants also made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiff and the Subclass that the Contaminated Dog Foods were pure, healthy, and safe for consumption and did not contain arsenic or lead.

108.    The Contaminated Dog Foods did not conform to these affirmations and promises as they contained arsenic and lead at alarming and unsafe levels.

CLASS ACTION COMPLAINT

109.    These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

110.    Defendants are merchants engaging in the sale of goods to Plaintiffs and the Subclass.

111.    There was a sale of goods from Defendants to Plaintiffs and the Subclass members.

112.    Defendants breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained arsenic and lead.

113.    Defendants were on notice of this breach as they were aware of the arsenic and lead included in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

114.    Privity exists because Defendants impliedly warranted to Plaintiffs and the Subclass through the advertising, marketing, and labeling that the Contaminated Dog Foods were pure, healthy, and safe for consumption and by failing to make any mention of arsenic or lead in the Contaminated Dog Foods.

115.    As a result of Defendants' breach of their implied warranties of merchantability, Plaintiffs and the Subclass sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendants represented.

116.    Plaintiffs, on behalf of themselves and the Subclass, seek actual damages for Defendants' breach of warranty.

## **COUNT VII**

### **(Negligence Per Se Against Defendants on Behalf of the Class)**

117.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

118.    Defendants have a statutory duty to not mislabel its products under California Health & Safety Code section 113095.  Under section 113095, a pet food is mislabeled:

(a)    "If its labeling is false or misleading in any particular"; or

- 21 -

CLASS ACTION COMPLAINT

1        (b)      "If its container is so made, formed or filled as to be misleading."

2        119.     This statute sets out the standard of care for Defendants that they failed to meet by

3   failing to disclose that the Contaminated Dog Foods contained higher and/or unsafe levels of

4   arsenic and lead as a reasonable consumer would expect when the label states it is healthy and

5   safe.

6        120.     Defendants also have a statutory duty to not sell adulterated products under

7   California Health & Safety Code section 113090.   Under California Health & Safety Code

8   section 113090, a pet food is adulterated, including:

9        (a)      "If any valuable constituent has been in whole or in part omitted or

10  abstracted therefrom";

11       (b)      "If any substance has been substituted wholly or in part therefor"; or

12       (c)      "If damage or inferiority has been concealed in any manner."

13       121.     This statute sets out the standard of care for Defendants that they failed to meet by

14  failing to disclose that the Contaminated Dog Foods were inferior based on the unsafe level of

15  arsenic and lead included.

16       122.     Defendants' violations of these statutes were a substantial factor in the harm

17  suffered by Plaintiffs and the Class, including paying a premium price for the Contaminated Dog

18  Foods based on the misrepresentations.

19       123.     Plaintiffs and the Class as consumers of dog food are within the class of persons

20  the legislature intended to protect under these statutes.

21                              **PRAYER FOR RELIEF**

22       WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray

23  for judgment against the Defendants as to each and every count, including:

24       A.       An order declaring this action to be a proper class action, appointing Plaintiffs and

25  their counsel to represent the Class and Subclass, and requiring Defendants to bear the costs of

26  class notice;

27       B.       An order enjoining Defendants from selling the Contaminated Dog Foods until

28  the higher and/or unsafe levels of arsenic and lead are removed;

1    C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any

2 manner suggesting or implying that they are healthy and safe for consumption;

3    D.    An order requiring Defendants to engage in a corrective advertising campaign and

4 engage in any further necessary affirmative injunctive relief, such as recalling existing products;

5    E.    An order awarding declaratory relief, and any further retrospective or prospective

6 injunctive relief permitted by law or equity, including enjoining Defendants from continuing the

7 unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

8    F.    An order requiring Defendants to pay restitution to restore all funds acquired by

9 means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent

10 business act or practice, untrue or misleading advertising, or a violation of the Unfair

11 Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest

12 thereon;

13    G.    An order requiring Defendants to disgorge or return all monies, revenues, and

14 profits obtained by means of any wrongful or unlawful act or practice;

15    H.    An order requiring Defendants to pay all actual and statutory damages permitted

16 under the counts alleged herein;

17    I.    An order requiring Defendants to pay punitive damages on any count so

18 allowable;

19    J.    An order awarding attorneys' fees and costs to Plaintiffs, the Class, and the

20 Subclass; and

21    K.    An order providing for all other such equitable relief as may be just and proper.

22                              **<u>JURY DEMAND</u>**

23    Plaintiffs hereby demand a trial by jury on all issues so triable.

24 Dated: July 19, 2017                    ROBBINS ARROYO LLP
                                          BRIAN J. ROBBINS
25                                        KEVIN A. SEELY
                                          ASHLEY R. RIFKIN
26                                        STEVEN M. MCKANY

27                                                */s/Brian J. Robbins*
                                          _____
28                                             BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
      kseely@robbinsarroyo.com
      arifkin@robbinsarroyo.com
      smckany@robbinsarroyo.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
      rapeterson@locklaw.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
      kgluek@gustafsongluek.com

Attorneys for Plaintiffs

1193575

CLASS ACTION COMPLAINT