ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
KEVIN A. SEELY (199982)
ASHLEY R. RIFKIN (246602)
STEVEN M. MCKANY (271405)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
         kseely@robbinsarroyo.com
         arifkin@robbinsarroyo.com
         smckany@robbinsarroyo.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
         rkshelquist@locklaw.com

Attorneys for Plaintiffs

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER, DANZ DOGGIE DAYTRIPS, and AMY FREEBORN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>WELLPET LLC, a Delaware corporation, and BERWIND CORPORATION, a Pennsylvania corporation,<br><br>     Defendants. | Case No. 3:17-CV-04056-WHO<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>(1) NEGLIGENT MISREPRESENTATION;<br>(2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br>(3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW;<br>(4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(5) BREACH OF EXPRESS WARRANTY;<br>(6) BREACH OF IMPLIED WARRANTY; AND<br>(7) VIOLATION OF CALIFORNIA HEALTH & SAFETY CODE SECTION 113095.<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

1.     Plaintiffs Daniel Zeiger, Danz Doggie Daytrips, and Amy Freeborn ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, as and for this First Amended Class Action Complaint against defendants WellPet LLC and Berwind Corporation ("Defendants"), for their negligent, reckless, and/or intentional practice misrepresenting and failing to fully disclose the presence of dangerous substances and chemicals in their pet food sold throughout the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full disclosure of all such substances in its marketing, advertising, and labeling and restoring monies to the members of the proposed Classes members.  Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel, including independent testing of the products, and as to all other matters, upon information and belief (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## THE DANGEROUS MAKE-UP OF DEFENDANTS' DOG FOOD

2.     Defendants manufacture, market, advertise, label, distribute, and sell Wellness® CORE® Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal ("CORE Ocean") and Wellness® Complete Health Adult Dry Whitefish and Sweet Potato (collectively the "Contaminated Dog Foods").[1]  The Contaminated Dog Foods contain material and significant levels of arsenic and lead—both known dangerous toxins for both humans and animals, including dogs.  Some foods, like rice and sweet potato, have been determined to absorb arsenic in water during cooking and therefore increase exposure.

3.     Inorganic arsenic is a ***known human carcinogen.***  It can contribute to cancers, heart disease, diabetes, declines in intellectual function, and can decrease a body's ability to respond to viruses.  The organic form of arsenic—the form found in arsenic-containing compounds—has been shown in recent studies to easily convert to inorganic arsenic.

---

[1] Discovery may reveal additional products that also contain unsafe levels of heavy metals and Plaintiffs reserve their right to include any such products in this action.

4.    Based on the risks associated with exposure to high levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb"). For the FDA, the 10 ppb level regulates apple juice and for the EPA it governs drinking water.[2]

5.    Moreover, the FDA is considering limiting the action level for arsenic in rice to 100 ppb:

> The action level for inorganic arsenic in infant rice cereals that FDA considers achievable with the use of such practices is 100 μ g/kg or 100 ppb (see Ref. 14).…   The proposed action level for inorganic arsenic in infant rice cereals is intended to reduce the possible risk for infants fed rice cereal by reducing exposure to inorganic arsenic that may be found in rice cereal for infants.  FDA considers this reduction in exposure to infants fed rice cereal will lead to a quantifiable reduction in the lifetime risk of certain cancers associated with exposure to inorganic arsenic, as well as an unquantifiable reduction in the risk of certain non-cancer adverse health outcomes reviewed in the risk assessment, including neurodevelopmental effects in infants.[3]

6.    The Contaminated Dog Foods also contain material and significant levels of lead, which is another carcinogen and developmental toxin known to cause health problems to consumers.  Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

7.    Despite the known risks of arsenic and lead exposure, Defendants have negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods despite containing alarming levels of arsenic and lead.  The independent lab testing of the Contaminated Dog Foods found that CORE Ocean contains 1,500 ppb of arsenic and 221 ppb of lead and Wellness

---

[2] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers.  *See, e.g.*, Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.

[3] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

CLASS ACTION COMPLAINT

1  Complete Health Adult Dry Whitefish and Sweet Potato contains 1,200 ppb of arsenic and 220

2  ppb of lead.

3       8.       Additionally, Defendants knew or should have been aware that a consumer would

4  be feeding the Contaminated Dog Foods multiple times each day to his or her dog being the

5  main, if not only, source of food for the dog.  This leads to repeated exposure of the toxins to the

6  dog.

7       9.       Defendants have wrongfully advertised and sold the Contaminated Dog Foods

8  without any label or warning indicating to consumers that these products contain arsenic or lead,

9  or that these toxins can over time accumulate in the dog's body to the point where poisoning,

10  injury, and/or disease can occur.

11      10.      Defendants' omissions are not only material but also false, misleading, and

12  reasonably likely to deceive the public.  This is true especially in light of the long-standing

13  campaign by Defendants to market the Contaminated Dog Foods as healthy and safe to induce

14  consumers, such as Plaintiffs to purchase the products.  For instance,  not only did Defendants

15  chose a brand name for their dog food, "Wellness," that in itself suggests a healthy product, they

16  market the Contaminated Dog Foods by promising "Uncompromising Nutrition" and "Unrivaled

17  Quality Standards":



26      11.      Moreover, the Contaminated Dog Foods declare themselves as offering complete

27  health and nothing in excess:

28

CLASS ACTION COMPLAINT





12.    Using such descriptions and promises makes Defendants' advertising campaign deceptive based on the unsafe and alarming levels of arsenic and lead in the Contaminated Dog Foods.  Defendants' statements, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy and safe.  Moreover, Defendants knew or should have reasonably expected that the presence of arsenic and lead in its Contaminated Dog Foods is something an average consumer would consider in purchasing dog food.  Thus, Defendants' omissions are false, misleading, and reasonably likely to deceive the public.

CLASS ACTION COMPLAINT

13.     Moreover, a reasonable consumer, such as Plaintiffs and other members of the Class (as defined herein), would have no reason to not expect and anticipate that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess as promised by Defendants.  Non-disclosure and concealment of the toxins in the Contaminated Dog Foods coupled with the partial disclosures and/or misrepresentations that the food provides complete health and is safe by Defendants is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and Class members would not have bought if the true quality and ingredients were disclosed.  As a result of these false statements, omissions, and concealment, Defendants have generated substantial sales of the Contaminated Dog Foods.

14.     Plaintiffs bring this action individually and on behalf of all other similarly situated consumers within the United States who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of material and significant levels of arsenic and lead in the Contaminated Dog Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

## THE PRESENCE OF BISPHENOL A ("BPA") IN CORE OCEAN

15.     Moreover, CORE Ocean contains material and significant levels of BPA—an industrial chemical that "'is an endocrine disruptor. It's an industrial chemical that according to Medical News Today '… interferes with the production, secretion, transport, action, function and elimination of natural hormones.'"[4]  BPA has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.[5]

---

[4] Dr. Karen Beeker, *A Major Heads Up: Don't Feed This to Your Dog,* Healthy Pets (Feb. 13, 2017), https://healthypets.mercola.com/sites/healthypets/archive/2017/02/13/dogs-canned-food-dangers.aspx.

[5] Christian Nordquist, *Bisphenol A: How Does It Affect Our Health?* Medical News Today (May 24, 2017), https://www.medicalnewstoday.com/articles/221205.php.

CLASS ACTION COMPLAINT

16.     Despite the presence of this harmful chemical,   Defendants prominently warranted, claimed, featured, represented, advertised, or otherwise marketed that CORE Ocean was "natural."  Indeed, each bag states on the front in two different places that CORE Ocean is natural food:





17.     Defendants' website  also warrants, claims, features, represents, advertises, or otherwise markets that its products, including CORE Ocean, are natural. In fact, WellPet's motto according to the  website is "WellPet – The Healthiest Natural Products For Pets:"

WellPet - The Healthiest Natural Products for Pets
www.wellpet.com/ ▼
Check out **WellPet** in magazines, newspapers and more! We're a diverse group, but it's a shared love of pets & natural food that brings us all together! more.

**OUR PHILOSOPHY**

WellPet is home to the family of premium pet food brands including Wellness®, Old Mother Hubbard®, Eagle Pack®, Holistic Select® and Sojo's®. We have a long history of delivering on the promise of making the healthiest natural products for pets.

CLASS ACTION COMPLAINT

# Our Standards. Our Promise.

At Wellness, your pet's health is at the core of all we do. That's why we have developed an extensive quality assurance program, guaranteeing that all of our products are safe, pure and balanced.

18.     In promoting its promise, warranty, claim, representation, advertisement, or otherwise marketing that CORE Ocean is safe and pure,  Defendant further assures that:

> Our mission is to provide you with ***wholesome, natural pet food that is the best it can be.*** Nothing is overlooked in our quest for excellence. We require all suppliers to meet stringent requirements and adhere to the highest standards, ***exceeding even the strictest requirements from the FDA.*** We are determined to go further, to do better and to take as many precautions with our pet food, as is taken with food for humans. ***Because at Wellness, we are passionate about providing your pet with safe, uncompromising nutrition.***[6]

19.     To this end,  Defendants' website  further warrants, claims, features, represents, advertises, or otherwise markets that its products, including CORE Ocean, are manufactured in such a way that would prevent BPA forming by closely monitoring temperatures and quality:[7]

### Unsurpassed Food Safety Programs

During production, rigorous standards and practices are put in place to protect the nutritional integrity of our food. Our processing plant is meticulously sanitized in order to control bacterial growth or pest infestation. In our zeal to provide you with only the highest-quality pet food, we take extra precautions to make sure ingredients are stored properly, temperatures are monitored and products are routinely tested. We believe these measures are absolutely essential to producing the finest pet food that can nourish and energize your pet to the core. Our food is carefully handled, carefully prepared and undoubtedly safe.

---

[6]     https://www.wellnesspetfood.com/our-philosophy/our-standards-our-promise     (emphasis added), visited Oct. 25, 2017.

[7] *Id.*

CLASS ACTION COMPLAINT

20.    Thus, Defendants engaged in deceptive advertising and labeling practice by expressly warranting, claiming, stating, featuring, representing, advertising, or otherwise marketing on CORE Ocean's labels and related websites that CORE Ocean is "natural, safe and pure" when it contains a significant level of BPA of approximately 58.5 ppb.

21.    Besides prominently warranting, claiming, stating featuring, representing, advertising, or otherwise marketing that CORE Ocean is "natural, safe and pure," Defendants charge a premium, knowing that the claimed natural make-up of CORE Ocean is something an average consumer would consider as a reason in picking a more expensive dog food.  By negligently and/or deceptively representing, marketing, and advertising CORE Ocean as "natural, safe and pure" Defendants wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for natural food product.

## JURISDICTION AND VENUE

22.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Classes reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

23.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs reside and suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

24.    A substantial portion of the transactions and wrongdoings which gave rise to the claims in this action occurred in the County of Marin, and as such, this action is properly assigned to the San Francisco division of this Court.

- 8 -
CLASS ACTION COMPLAINT

**THE PARTIES**

25.     Plaintiff Daniel Zeiger ("Zeiger") is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Zeiger purchased the Contaminated Dog Foods and fed it to his three-year-old American Bulldog named Mack.  Plaintiff Zeiger started  purchasing the Contaminated Dog Foods in or around October 2014 and continued to purchase approximately one small bag monthly (priced at around $15.00 per bag) until approximately July 2017 when he discovered that the food was contaminated.  Plaintiff purchased the Contaminated Dog Foods from the following places: (1) Pet Club in Corte Madera, CA; (2) Woodlands Pet Food & Treats in Greenbrae, CA; (3) Woodlands Pet Food & Treats in Mill Valley, CA.  Prior to purchasing the Contaminated Dog Foods, Plaintiff Zeiger saw the products at the Bay Area Pet Fair and the Golden Gate Kennel Club Dog Show at Cow Palace in San Francisco.  During the fair and dog show he received samples of the products and saw the nutritional claims, which he relied on in deciding to purchase the Contaminated Dog Foods.  During that time, based on the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or BPA and would not have purchased the food if that was fully disclosed.

26.     Plaintiff Danz Doggie Daytrips ("Danz Doggie"), is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Danz Doggie is a dog sitting business that used the Contaminated Dog Foods as one of the primary foods fed to its clients' dogs.  Plaintiff Danz Doggie started purchasing the Contaminated Dog Foods in or around October 2014 and continued to purchase approximately one small bag monthly (priced at around $15.00 per bag) and ceased purchasing in approximately July 2017 upon discovery that the food was contaminated.  Plaintiff purchased the Contaminated Dog Foods from the following places: (1) Pet Club in Corte Madera, CA; (2) Woodlands Pet Food & Treats in Greenbrae, CA; (3) Woodlands Pet Food & Treats in Mill Valley, CA.  Prior to purchasing the Contaminated Dog Foods, Plaintiff saw the products at the Bay Area Pet Fair and the Golden Gate Kennel Club Dog Show at Cow Palace in San Francisco. During that time, based on the false and misleading claims, warranties, representations, advertisements, and otherwise marketing by  Defendants,

- 9 -

1    Plaintiff was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or

2    BPA and would not have purchased the food if that was fully disclosed.

3        27.    Plaintiff Amy Freeborn ("Freeborn") is, and at all times relevant hereto has been,

4    a citizen of the state of California.  Plaintiff Freeborn started purchasing the Contaminated Dog

5    Foods in or around January 2010 and fed it to her Labrador Retrievers, including her three year

6    old Lab, Olivia.  She stopped buying the Contaminated Dog Foods in July 2017 when she

7    discovered that the food was contaminated.  Plaintiff Freeborn generally purchased one 40 to 60

8    pound bag of dog food per month.  She sometimes purchased smaller bags of dog food for her

9    dog when traveling for work.  The larger bags ran from $50 to $70 dollars and $20 to $40 dollars

10   for the smaller bags.  Plaintiff purchased the products from various stores, including PetSmart,

11   Petco, and Instacart.  During that time, based on the false and misleading claims, warranties,

12   representations, advertisements and other marketing on the labels and packaging, Plaintiff

13   Freeborn was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or

14   BPA and would not have purchased the food if that was fully disclosed.

15       28.    As the result of Defendants' negligent, reckless, and/or knowingly deceptive

16   conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price

17   premium for the Contaminated Dog Foods that did not deliver what it promised.  They paid the

18   above sum on the assumption that the labeling of the Contaminated Dog Foods was accurate and

19   that it was healthy, clean, and safe for dogs to ingest, as well as natural and pure.  Plaintiffs

20   would not have paid this money had they known that the Contaminated Dog Foods contained an

21   excessive degree of arsenic and lead or BPA.  Damages can be calculated through expert

22   testimony at trial.  Further, should Plaintiffs encounter the Contaminated Dog Foods in the

23   future, they could not rely on the truthfulness of the packaging, absent corrective changes to the

24   packaging and advertising of the Contaminated Dog Foods.

25       29.    Defendant WellPet LLC is incorporated in Delaware with its headquarters located

26   at 200 Ames Pond Drive, Tewksbury, Massachusetts.  Defendant WellPet LLC is a subsidiary of

27   defendant Berwind Corporation that is incorporated in Pennsylvania with its headquarters

28   located at 3000 Centre Square West, 1500 Market Street, Philadelphia, Pennsylvania.

- 10 -

CLASS ACTION COMPLAINT

1   Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the

2   Contaminated Dog Foods under the Wellness dog food brand name throughout the United States.

3   The advertising, labeling, and packaging for the Contaminated Dog Foods, relied upon by

4   Plaintiffs, was prepared, reviewed, and/or approved by Defendants and their agents, and was

5   disseminated by Defendants and their agents through marketing, advertising, packaging, and

6   labeling that contained the misrepresentations alleged herein.    The marketing, advertising,

7   packaging and labeling for the Contaminated Dog Foods was designed to encourage consumers

8   to purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, i.e.,

9   Plaintiffs and the Classes, into purchasing the Contaminated Dog Foods.    Defendants own,

10  manufacture, and distribute the Contaminated Dog Foods, and created, allowed, negligently

11  oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive

12  labeling and advertising for the Contaminated Dog Foods.

13      30.    The Contaminated Dog Foods, at a minimum, include:

14          (a)    Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon

15  Meal:



CLASS ACTION COMPLAINT

(b)    Wellness Complete Health Adult Dry Whitefish and Sweet Potato:



## FACTUAL ALLEGATIONS

**Both Arsenic and Lead Are Exceptionally Dangerous When Ingested**

31.    Toxins like arsenic and lead can cause serious illness to humans and animals. A company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these toxins.

32.    Arsenic is a semi-metal element in the periodic table. It is odorless and tasteless. Arsenic occurs naturally in the environment as an element of the earth's crust; it is found in rocks, soil, water, air, plants, and animals. Elemental arsenic is combined with other elements such as oxygen, chlorine, and sulfur to form inorganic arsenic compounds. Historically, arsenic compounds were used in many industries, including: (i) as a preservative in pressure-treated lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening; (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to enhance junctions in semiconductors. The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons. Some of

these cancellations were based on voluntary withdrawals by producers. For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the EPA signed the cancellation order. In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable." Arsenic is an element—it does not degrade or disappear.

33.    Inorganic arsenic is a known cause of human cancer. The association between inorganic arsenic and cancer is well documented. As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled arsenic. By 1992, the combination of evidence from Taiwan and elsewhere was sufficient to conclude that ingested inorganic arsenic, such as is found in contaminated drinking water and food, was likely to increase the incidence of several internal cancers. The scientific link to skin and lung cancers is particularly strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder, kidney, and colon cancers as well.

34.    Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States. Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health. Lead poisoning can occur from ingestion of food or water containing lead. Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately cause death.

35.    The State of California has included arsenic and lead as a known carcinogen and developmental toxin on the Proposition 65 list, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986.

36.    The FDA has set standards that regulate the maximum parts per billion of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic. *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

CLASS ACTION COMPLAINT

**Defendants Falsely Advertise the Contaminated Dog Foods as Healthy While Omitting Any Mention of Arsenic or Lead, as Well as Claim CORE Ocean Is Natural, Pure and Safe Despite the Inclusion of the Industrial Chemical BPA**

37.    Defendants formulate, develop, manufacture, label, package, distribute, market, advertise, and sell their extensive Wellness lines of dry and wet pet food products in California and across the United States.

38.    Based on Defendants' decision to warrant, claim, state, represent, advertise, label, and market their Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health, they had a duty to ensure that the these statements were true.  As such, Defendants knew or should have known that the Contaminated Dog Foods included concerning and higher levels of arsenic and lead.

39.    Likewise, by warranting, claiming, stating featuring, representing, advertising or otherwise marketing that CORE Ocean is natural, safe, and pure, Defendants had a known duty to ensure that there were no chemicals included in the Contaminated Dog Foods. In fact, Defendants offered further assurances by representing that the quality control over the manufacturing of their Wellness dog food products was a rigid process that monitored temperature.  As such, Defendants knew or should have known that higher temperatures coupled with the type of containers used in manufacturing create a real risk of significant levels of BPA in their products.

40.    The Contaminated Dog Foods are available at numerous retail and online outlets.

41.    The Contaminated Dog Foods are widely advertised and WellPet LLC includes a Vice President of Marketing as part of its advertised leadership team.

42.    The official Wellness Pet Food website displays the Contaminated Dog Foods' descriptions and full lists of ingredients for the Contaminated Dog Foods and includes the following promise:

CLASS ACTION COMPLAINT

# Our Standards. Our Promise.

At Wellness, your pet's health is at the core of all we do. That's why we have developed an extensive quality assurance program, guaranteeing that all of our products are safe, pure and balanced.

43.     The Defendants' webpages again and again repeat the false and misleading claims, warranties, representations, advertisements, and other marketing about the Contaminated Dog Foods benefits, quality, purity, and natural make-up, without any mention of the arsenic and lead they contain or the BPA contained in CORE Ocean.  This is not surprising given that natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years.[8]



44.     Moreover, WellPet LLC has itself acknowledged the importance to quality dog food to the reasonable consumer: "People are increasingly concerned with what they eat and where their food comes from, and this concern has influenced the pet food space as well," agrees Carly White, digital marketing specialist at WellPet LLC, makers of Wellness pet foods.  "More

---

[8] Statista, *Natural and Organic Pet Food Sales in the U.S. from 2009 to 2019,* The Statistics Portal (accessed Oct. 25, 2017). https://www.statista.com/statistics/548957/us-sales-of-natural-and-organic-pet-food/

CLASS ACTION COMPLAINT

1  and more, pet parents are taking an active role in their pet's nutrition, with a focus on quality

2  ingredients that are [conscientiously] sourced."[9]

3     45.    As a result of Defendants' omissions, a reasonable consumer would have no

4  reason to suspect the presence of arsenic and lead or BPA in the Contaminated Dog Foods

5  without conducting his or her own scientific tests, or reviewing third-party scientific testing of

6  these products.

7     46.    That is exactly what Plaintiffs did here.  Plaintiffs' independent lab testing of the

8  Contaminated Dog Foods found that CORE Ocean contains 1,500 ppb of arsenic and 221 ppb of

9  lead and Wellness Complete Health Adult Dry Whitefish and Sweet Potato contains 1,200 ppb of

10 arsenic and 220 ppb of lead.

11 **DEFENDANTS' STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

12    47.    California law is designed to ensure that a company's claims about its products are

13 truthful and accurate.  Defendants violated California law by negligently, recklessly, and/or

14 intentionally incorrectly claiming that the Contaminated Dog Foods are pure, healthy, and safe

15 for consumption and by not accurately detailing that the products contain the toxins arsenic and

16 lead. Instead, Defendants represented that the Contaminated Dog Foods as made up of

17 "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and

18 offers complete health Defendants further violated California law by negligently, recklessly,

19 and/or intentionally incorrectly claiming that CORE Ocean is natural, pure, and safe when it

20 contains BPA.

21    48.    Defendants' marketing and advertising campaign has been sufficiently lengthy in

22 duration, and widespread in dissemination, that it would be unrealistic to require Plaintiffs to

23 plead relying upon each advertised misrepresentation.

24    49.    Defendants have engaged in this long-term advertising campaign to convince

25 potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption,

26

27 [9] Melissa Breau, *Pet Food Evolution*, Pet Business (Oct. 16, 2015), (alteration in original)
   http://www.petbusiness.com/Pet-Food-Evolution/

28

and did not contain harmful ingredients, such as arsenic and lead. Likewise, Defendants have engaged in this long-term advertising campaign to convince potential customers that CORE Ocean is natural, pure, and safe despite the presence of BPA in the food.

**PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

50.     Plaintiffs reasonably relied on Defendants' own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Dog Foods.

51.     Plaintiffs read and relied upon the labels and packaging of the Contaminated Dog Foods in making their purchasing decisions.

52.     A reasonable consumer would consider the labeling of a product when deciding whether to purchase.  Here, Plaintiffs relied on the specific statements and misrepresentations by Defendants that the Contaminated Dog Foods were healthy and made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health with no disclosure of the inclusion of arsenic or lead.

**DEFENDANTS' KNOWLEDGE AND NOTICE OF THEIR BREACHES OF THEIR EXPRESS AND IMPLIED WARRANTIES**

53.     Defendants had sufficient notice of their breaches of express and implied warranties.  Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods.  Moreover, Defendants were put on notice by the Clean Label Project on the inclusion of heavy metals in its dog food products.

**PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS**

54.     Defendants knew that consumers such as Plaintiffs and the proposed Classes would be the end purchasers of the Contaminated Dog Foods and the target of their advertising and statements.

55.     Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiffs and the proposed Classes.

56.     Defendants directly marketed to Plaintiffs and the proposed Classes through statements on their website, labeling, advertising, and packaging.

57.     Plaintiffs and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the United States who, from July 1, 2013 to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Class").

59.     Plaintiffs also bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

> All persons who are citizens of the United States who, from July 1, 2013 to the present, purchased CORE Ocean for household or business use, and not for resale (the "Natural Claims Class").

60.     In addition, Plaintiffs brings this action individually and on behalf of the following Subclasses pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in California who, from July 1, 2013 to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale

> and

> All persons in California who, from July 1, 2013 to the present, purchased the CORE Ocean for household or business use, and not for resale. (collectively "California Subclasses").[10]

61.     Excluded from the Classes are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

---

[10] All classes collectively are referred to as the "Classes."

1    62.    This action is brought and may be properly maintained as a class action.  There is

2    a well-defined community of interests in this litigation and the members of the Classes are easily

3    ascertainable.

4    63.    The members in the proposed Classes are so numerous that individual joinder of

5    all members is impracticable, and the disposition of the claims of the members of all Classes

6    members in a single action will provide substantial benefits to the parties and Court.

7    64.    Questions of law and fact common to Plaintiffs and the Classes include, but are

8    not limited to, the following:

9    (a)    whether Defendants owed a duty of care;

10    (b)    whether Defendants knew or should have known that the Contaminated

11    Dog Foods contained higher levels of arsenic and/or lead;

12    (c)    whether Defendants knew or should have known that CORE Ocean

13    contained BPA;

14    (d)    whether Defendants represented and continue to represent that the

15    Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality

16    Standards" that has nothing in excess and offers complete health;

17    (e)    whether Defendants represented and continue to represent that the

18    Contaminated Dog Foods are healthy and safe for consumption;

19    (f)    whether Defendants represented and continue to represent that the CORE

20    Ocean is natural dog food;

21    (g)    whether Defendants represented and continue to represent that the CORE

22    Ocean is pure and safe;

23    (h)    whether Defendants represented and continue to represent that the

24    manufacturing of their Wellness dog food products is subjected to rigorous standards, including

25    temperature;

26    (i)    whether Defendants failed to state that the Contaminated Dog Foods

27    contained arsenic, lead, and/or BPA;

28

- 19 -

CLASS ACTION COMPLAINT

1       (j)     whether Defendants' representations in advertising, warranties, packaging,

2 and/or labeling are false, deceptive, and misleading;

3       (k)     whether those representations are likely to deceive a reasonable consumer;

4       (l)     whether Defendants had knowledge that those representations were false,

5 deceptive, and misleading;

6       (m)     whether Defendants continue to disseminate those representations despite

7 knowledge that the representations are false, deceptive, and misleading;

8       (n)     whether a representation that a product is healthy and safe for

9 consumption and does not contain arsenic and/or lead is material to a reasonable consumer;

10       (o)     whether Defendants' representations and descriptions on the labeling of

11 the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers

12 acting reasonably;

13       (p)     whether Defendants violated California Business & Professions Code

14 sections 17200, *et seq.*;

15       (q)     whether Defendants violated California Business & Professions Code

16 sections 17500, *et seq.*;

17       (r)     whether Defendants violated California Civil Code sections 1750, *et seq.*;

18       (s)     whether Plaintiffs and the members of the Classes are entitled to actual,

19 statutory, and punitive damages;

20       (t)     whether Defendants violated California Health & Safety Code section

21 113095; and

22       (u)     whether Plaintiffs and members of the Classes are entitled to declaratory

23 and injunctive relief.

24     65.    Defendants engaged in a common course of conduct giving rise to the legal rights

25 sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class.

26 Identical statutory violations and business practices and harms are involved.   Individual

27 questions, if any, are not prevalent in comparison to the numerous common questions that

28 dominate this action.

66.     Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

67.     Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

68.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

69.     Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

70.     As a result of the foregoing, class treatment is appropriate.

## **COUNT I**

**(Negligent Misrepresentation Against Defendants on Behalf of the Classes)**

71.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

72.     Plaintiffs reasonably placed their trust and reliance in Defendants' representations that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

73.     Plaintiffs reasonably placed their trust and reliance in Defendants that the Contaminated Dog Foods warranted, represented, marketed, packaged, labeled and advertised to them and the Classes were healthy and safe for consumption and did not contain arsenic and lead.

74.     Plaintiffs reasonably placed their trust and reliance in Defendants that the CORE Ocean product warranted, represented, marketed, packaged, labeled, and advertised to them and the Classes was natural, pure, and safe and did not contain BPA.

CLASS ACTION COMPLAINT

1     75.    Because of the relationship between the parties, the Defendants owed a duty to

2  use reasonable care to impart correct and reliable disclosures concerning the presence of arsenic,

3  lead, and BPA in the Contaminated Dog Foods and CORE Ocean or, based upon their superior

4  knowledge, having spoken, to say enough to not be misleading.

5     76.    Defendants breached their duty to Plaintiffs and the Classes by providing false,

6  misleading, and/or deceptive information regarding the nature of the Contaminated Dog Foods

7  and CORE Ocean.

8     77.    Plaintiffs and the Classes reasonably and justifiably relied upon the information

9  supplied to them by the Defendants.  A reasonable consumer would have relied on Defendants'

10  own warranties, statements, representations, advertising, packaging, labeling, and other

11  marketing as to the quality, make-up, and included ingredients of the Contaminated Dog Foods

12  and CORE Ocean.   Defendants themselves admitted that consumers now "focus on quality

13  ingredients…" when purchasing dog food. [11]

14     78.    As a result of these misrepresentations, Plaintiffs and the Classes purchased the

15  Contaminated Dog Foods and CORE Ocean at a premium.

16     79.    Defendants failed to use reasonable care in their communications and

17  representations to Plaintiffs and the Classes, especially in light of their knowledge of the risks

18  and importance of considering ingredients to consumers when purchasing the Contaminated Dog

19  Foods and CORE Ocean.

20     80.    By virtue of Defendants' negligent misrepresentations, Plaintiffs and the Classes

21  have been damaged in an amount to be proven at trial or alternatively, seek rescission and

22  disgorgement under this Count.

---

[11] Melissa Breau, *Pet Food Evolution*, Pet Business (Oct. 16, 2015), (alteration in original) http://www.petbusiness.com/Pet-Food-Evolution/

CLASS ACTION COMPLAINT

## COUNT II

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendants on Behalf of the California Subclasses)**

81.    Plaintiffs Zeiger and Freeborn incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

82.    Plaintiffs Zeiger and Freeborn and each proposed California Subclasses member is a "consumer," as that term is defined in California Civil Code section 1761(d).

83.    The Contaminated Dog Foods and CORE Ocean are "goods," as that term is defined in California Civil Code section 1761(a).

84.    Defendants are a "person" as that term is defined in California Civil Code section 1761(c).

85.    Plaintiffs Zeiger and Freeborn and each proposed California Subclasses member's purchase of Defendants' products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

86.    Defendants' conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are healthy and safe for consumption and by failing to make any mention of arsenic and lead in the Contaminated Dog Foods;

(b)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are natural, pure and safe and by failing to make any mention of BPA in CORE Ocean;

(c)    California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods were of a particular standard, quality, or grade, when they were of another;

CLASS ACTION COMPLAINT

1    (d)    California Civil Code section 1770(a)(9), by negligently, recklessly,

2  and/or intentionally advertising the Contaminated Dog Foods and CORE Ocean with intent not

3  to sell them as advertised; and

4    (e)    California Civil Code section 1770(a)(16), by representing that the

5  Contaminated Dog Foods and CORE Ocean have been supplied in accordance with previous

6  representations when they have not.

7    87.    As a direct and proximate result of these violations, Plaintiffs Zeiger and Freeborn

8  and the California Subclasses have been harmed, and that harm will continue unless Defendants

9  are enjoined from using the misleading marketing described herein in any manner in connection

10  with the advertising and sale of the Contaminated Dog Foods.

11    88.    On July 19, 2017, counsel for Plaintiffs Zeiger and Freeborn and the California

12  Subclasses sent Defendants written notice (via U.S. certified mail, return receipt requested) that

13  its conduct is in violation of the CLRA concerning the arsenic and lead omissions.

14    89.    Defendants failed to provide appropriate relief for their violations of CLRA

15  sections 1770(a)(5), (7), (9), and (16) within thirty days of receipt of Plaintiffs' notification.   In

16  accordance with CLRA section 1782(b), Plaintiffs and the California Subclasses are entitled,

17  under CLRA section 1780, to recover and obtain the following relief for Defendants' violations of

18  CLRA sections 1770(a)(5),(7), (9) and (16):

19    (a)    actual damages under CLRA section 1780(a)(1);

20    (b)    restitution of property under CLRA section 1780(a)(3);

21    (c)    punitive damages under CLRA section 1780(a)(4) and because Defendants

22    have engaged in fraud, malice, or oppression; and

23    (d)    any other relief the Court deems proper under CLRA section 1780(a)(5).

24    90.    Plaintiffs Zeiger and Freeborn seek an award of attorneys' fees pursuant to, inter

25  alia, California Civil Code section 1780(e) and California Code of Civil Procedure section

26  1021.5.

27

28

CLASS ACTION COMPLAINT

## COUNT III

**(Violations of California False Advertising Law, California Business**
**& Professions Code §§17500, *Et Seq.*, Against Defendants on**
**Behalf of the California Subclasses)**

91.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

92.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

93.     As set forth herein, Defendants' claims that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public. Likewise, Defendants' statements that CORE Ocean is natural, pure, and safe are false and likely to deceive the public.

94.     Defendants' claims that the Contaminated Dog Foods are healthy and safe for consumption are untrue or misleading, as is failing to make any mention of arsenic and lead in the Contaminated Dog Foods. Likewise, Defendants' statements that CORE Ocean is natural, pure, and safe are untrue or misleading, as failing to disclose the presence of BPA in the dog food.

95.     Defendants knew, or reasonably should have known, that all these claims were untrue or misleading.

96.     Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that, so long as the Contaminated Dog Foods are, as advertised, healthy and safe for consumption and do not contain arsenic or lead.

97.     Plaintiffs and members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Dog Foods and CORE Ocean.

CLASS ACTION COMPLAINT

**COUNT IV**

**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendants on Behalf of the California Subclasses)**

98.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

99.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

100.     Defendants' statements that the Contaminated Dog Foods and CORE Ocean are pure, natural, and healthy, and safe for consumption are literally false and likely to deceive the public, as is Defendants' failing to make any mention of arsenic, lead and BPA in the Contaminated Dog Foods and CORE Ocean.

**Unlawful**

101.     As alleged herein, Defendants have advertised the Contaminated Dog Foods and CORE Ocean with false or misleading claims, such that Defendants' actions as alleged herein violate at least the following laws:

• The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

• The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

102.     Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods and CORE Ocean is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

103.     Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods and CORE Ocean is also unfair because it

CLASS ACTION COMPLAINT

1   violates public policy as declared by specific constitutional, statutory, or regulatory provisions,

2   including, but not limited to, the False Advertising Law and the CLRA.

3        104.   Defendants' conduct with respect to the labeling, packaging, advertising,

4   marketing, and sale of the Contaminated Dog Foods and CORE Ocean  is also unfair because the

5   consumer injury is substantial, not outweighed by benefits to consumers or competition, and not

6   one consumers, themselves, can reasonably avoid.

7        105.   In accordance with California Business & Professions Code section 17203,

8   Plaintiffs seek an order enjoining Defendants from continuing to conduct business through

9   fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

10  Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is

11  necessary.

12       106.   On behalf of themselves and the California Subclasses, Plaintiffs also seek an

13  order for the restitution of all monies from the sale the Contaminated Dog Foods and CORE

14  Ocean, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

15                                   **<u>COUNT V</u>**

16                **(Breach of Express Warranty, California Commercial Code §2313,**

17                    **Against Defendants on Behalf of the Classes)**

18       107.   Plaintiffs incorporate by reference and reallege each and every allegation

19  contained above, as though fully set forth herein.

20       108.   As set forth herein, Defendants made express representations to Plaintiffs and the

21  Class that the Contaminated Dog Foods as made up of "Uncompromising Nutrition" and

22  "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

23       109.   Defendants also made express representations to Plaintiffs and the Class that the

24  Contaminated Dog Foods were pure, healthy, and safe for consumption.

25       110.   Defendants likewise made express representations to Plaintiffs and the Natural

26  Claims Class that CORE Ocean was natural, pure, and safe.

27       111.   These promises became part of the basis of the bargain between the parties and

28  thus constituted express warranties.

CLASS ACTION COMPLAINT

112.    There was a sale of goods from Defendants to Plaintiffs and the Classes members.

113.    On the basis of these express warranties, Defendants sold to Plaintiffs and the Classes the Contaminated Dog Foods and CORE Ocean.

114.    Defendants knowingly breached the express warranties by including arsenic, lead, and BPA in the Contaminated Dog Foods and CORE Ocean.

115.    Defendants were on notice of this breach as they were aware of the included arsenic, lead, and BPA in the Contaminated Dog Foods and CORE Ocean, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

116.    Privity exists because Defendants expressly warranted to Plaintiffs and the California Subclasses that the Contaminated Dog Foods and CORE Ocean were healthy, safe, natural, and/or pure.

117.    Plaintiffs and the Classes reasonably relied on the express warranties by Defendants.

118.    As a result of Defendants' breaches of their express warranties, Plaintiffs and the Classes sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendants represented.

119.    Plaintiffs, on behalf of themselves and the  Classes, seek actual damages for Defendants' breach of warranty.

## COUNT VI

**(Breach of Implied Warranty, California Commercial Code
§2314, Against Defendants on Behalf of the Classes)**

120.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

121.    As set forth herein, Defendants made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiffs and the California Subclasses that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that has nothing in excess and offers complete health.

- 28 -

CLASS ACTION COMPLAINT

122.    Defendants also made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiffs and the Class that the Contaminated Dog Foods were pure, healthy, and safe for consumption and did not contain arsenic or lead.

123.    The Contaminated Dog Foods did not conform to these affirmations and promises as they contained arsenic and lead at alarming and unsafe levels.

124.    Defendants also made affirmations of fact on the CORE Ocean labels to Plaintiff and the Natural Claims Class that CORE Ocean was natural dog food and did not contain the chemical BPA.

125.    CORE Ocean did not conform to these affirmations and promises as it contains the industrial chemical BPA.

126.    These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

127.    Defendants are merchants engaging in the sale of goods to Plaintiffs and the members of the Classes

128.    There was a sale of goods from Defendants to Plaintiffs and the members of the Classes.

129.    Defendants breached the implied warranties by selling the Contaminated Dog Foods and CORE Ocean that failed to conform to the promises or affirmations of fact made on the container or label as each product contained arsenic, lead and/or BPA.

130.    Defendants were on notice of this breach as they were aware of the arsenic, lead and BPA included in the Contaminated Dog Foods and CORE Ocean, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

131.    Privity exists because Defendants impliedly warranted to Plaintiffs and the California Subclasses through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods  and CORE Ocean were pure, healthy, natural, and safe and by failing to make any mention of arsenic, lead and BPA.

CLASS ACTION COMPLAINT

132.   As a result of Defendants' breach of their implied warranties of merchantability, Plaintiffs and the Classes sustained damages as they paid money for the Contaminated Dog Foods and CORE Ocean that were not what Defendants represented.

133.   Plaintiffs, on behalf of themselves and the Classes, seek actual damages for Defendants' breach of warranty.

**COUNT VII**

**(Violation of California Health and Safety Code §113095  Against Defendants on Behalf of the California Classes)**

134.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

135.   Defendants have a statutory duty to not mislabel its products under California Health & Safety Code section 113095.

136.    Under section 113095, a pet food is mislabeled:

      (a)   "If its labeling is false or misleading in any particular"; or

      (b)   "If its container is so made, formed or filled as to be misleading."

137.   This statute sets out the standard of care for Defendants that they failed to meet by failing to disclose that the Contaminated Dog Foods contained higher and/or unsafe levels of arsenic and lead as a reasonable consumer would expect when the label states it is healthy and safe.

138.   Defendants violated this statute as the CORE Ocean labels and packaging state it is natural dog food and do not disclose the presence of BPA in the food.

139.   Plaintiffs and the California Subclasses as consumers of dog food are within the class of persons the legislature intended to protect under this statute. And there is not limiting to a private cause of action in this section as appears in other sections of this Code.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

- 30 -

CLASS ACTION COMPLAINT

1    A.    An order declaring this action to be a proper class action, appointing Plaintiffs and

2    their counsel to represent the Class and California Subclasses, and requiring Defendants to bear

3    the costs of class notice;

4    B.    An order enjoining Defendants from selling the Contaminated Dog Foods until

5    the higher and/or unsafe levels of arsenic and lead are removed;

6    C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any

7    manner suggesting or implying that they are healthy and safe for consumption;

8    D.    An order requiring Defendants to engage in a corrective advertising campaign and

9    engage in any further necessary affirmative injunctive relief, such as recalling existing products;

10    E.    An order awarding declaratory relief, and any further retrospective or prospective

11    injunctive relief permitted by law or equity, including enjoining Defendants from continuing the

12    unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

13    F.    An order requiring Defendants to pay restitution to restore all funds acquired by

14    means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent

15    business act or practice, untrue or misleading advertising, or a violation of the Unfair

16    Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest

17    thereon;

18    G.    An order requiring Defendants to disgorge or return all monies, revenues, and

19    profits obtained by means of any wrongful or unlawful act or practice;

20    H.    An order requiring Defendants to pay all actual and statutory damages permitted

21    under the counts alleged herein;

22    I.    An order requiring Defendants to pay punitive damages on any count so

23    allowable;

24    J.    An order awarding attorneys' fees and costs to Plaintiffs, the Class, and the

25    Subclass; and

26    K.    An order providing for all other such equitable relief as may be just and proper.

27    **JURY DEMAND**

28    Plaintiffs hereby demand a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

Dated: October 26, 2017

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
REBECCA A. PETERSON

By:  s/  Rebecca A. Peterson

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
           rapeterson@locklaw.com


ROBBINS ARROYO LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
ASHLEY R. RIFKIN
STEVEN M. MCKANY
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
           kseely@robbinsarroyo.com
           arifkin@robbinsarroyo.com
           smckany@robbinsarroyo.com


GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
           kgluek@gustafsongluek.com

Attorneys for Plaintiffs

1193575

- 32 -
CLASS ACTION COMPLAINT