1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
   REBECCA A. PETERSON (241858)
2  ROBERT K. SHELQUIST(*pro hac vice*)
   100 Washington Avenue South, Suite 2200
3  Minneapolis, MN 55401
   Telephone: (612) 339-6900
4  Facsimile: (612) 339-0981
   E-mail: rapeterson@locklaw.com
5          rkshelquist@locklaw.com

6  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
7  KEVIN A. SEELY (199982)
   ASHLEY R. RIFKIN (246602)
8  GINA STASSI (261263)
   STEVEN M. McKANY (271405)
9  600 B Street, Suite 1900
   San Diego, CA 92101
10 Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
11 E-mail: brobbins@robbinsarroyo.com
           kseely@robbinsarroyo.com
12         arifkin@robbinsarroyo.com
           gstassi@robbinsarroyo.com
13         smckany@robbinsarroyo.com

14 Attorneys for Plaintiffs
   [Additional counsel on signature page]

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

SAN FRANCISCO DIVISION

18 | DANIEL ZEIGER, DANZ DOGGIE | ) Case No. 3:17-cv-04056-WHO
19 | DAYTRIPS, and AMY FREEBORN, | )
   | Individually and on Behalf of All Others | ) <u>CLASS ACTION</u>
20 | Similarly Situated, | )
   | | ) **PLAINTIFFS' OPPOSITION TO**
21 | Plaintiffs, | ) **DEFENDANTS' MOTION TO DISMISS**
   | | ) **PLAINTIFFS' FIRST AMENDED**
22 | v. | ) **COMPLAINT**
   | | )
23 | WELLPET LLC, a Delaware corporation, and | ) **CLASS ACTION**
   | BERWIND CORPORATION, a Pennsylvania | )
24 | corporation, | ) Date:  January 10, 2018
   | | ) Time:  2:00 p.m.
25 | | ) Dept:  Courtroom 2, 17th Floor
   | Defendants. | ) Judge: Hon. William H. Orrick
26 | | )
   | | ) Complaint Filed: July 19, 2017
27 | | ) FAC Filed:      October 26, 2017

28

# TABLE OF CONTENTS

**Page**

I.      PLAINTIFFS HAVE ARTICLE III STANDING ............................................................. 3

  A.    Plaintiffs Have Standing Because They Did Not Get What They Paid for – Healthy,
        Clean, Safe, Natural, and Pure Dog Food Free from Arsenic, Lead, or BPA ................ 3

  B.    Danz Doggie Daytrips Has Standing ................................................................. 7

  C.    Plaintiffs Have Standing on Their Statutory Claims as Well.................................... 7

II.     PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS ARE SOUND AND SHOULD
        BE CONSIDERED AT THE CLASS CERTIFICATION MOTION ............................... 8

  A.    The Court Has Personal Jurisdiction Over Defendants......................................... 8

  B.    The Scope of Plaintiffs' Class Should Be Determined at the Class Certification Stage. 11

III.    THE FAC PLEADS CLAIMS WITH PARTICULARITY TO SATISFY RULE 9(B) ... 12

IV.     PLAINTIFFS SUFFICIENTLY PLEAD CLRA, UCL, FAL, AND NEGLIGENT
        MISREPRESENTATION CLAIMS ........................................................................ 14

  A.    The Express Representations at Issue Are Actionable, Objective Statements About the
        Contaminated Products ....................................................................................... 14

    1.  The FAC amply states and supports a concealment or omission claim........................ 15

    2.  Defendants' request to have the FAC's allegations construed against Plaintiffs is
        improper an contrary to established pleading standards .......................................... 16

    3.  Plaintiffs need not define "natural" ................................................................... 16

    4.  Plaintiffs' claims under the UCL unfair and unlawful prongs were pled with reasonable
        particularity and satisfy Rule 9(b)'s standards. ................................................... 17

V.      THE WELL PLED FAC ALLEGES CLAIMS FOR BREACH OF EXPRESS AND
        IMPLIED WARRANTY ........................................................................................ 18

  A.    Plaintiffs' Express Warranty Claim Is Supported Defendants' Specific Promises......... 18

  B.    Plaintiffs' Well Pled FAC Supports a Breach of Implied Warranty Claim.................... 19

    1.  Privity exists between Plaintiffs and Defendants.................................................... 19

    2.  Plaintiffs sufficiently alleged breach of implied warranty....................................... 20

VI.     PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION UNDER SECTION 113095 OF
        THE CALIFORNIA HEALTH & SAFETY CODE ...................................................... 20

VII.    PLAINTIFFS' CLRA NOTICE WAS TIMELY ........................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Anunziato v. eMachines, Inc.*,
        402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...................................................15

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
        7 Cal. 4th 503 (1994) ................................................................................22

*Astiana v. Ben & Jerry's Homemade, Inc.*,
        No. C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ...............4, 13

*Bay Cities Paving & Grading, Inc. v. Hensel Phelps Constr. Co.*,
        56 Cal. App. 3d 361 (1976) ......................................................................22

*Bernard v. Foley*,
        39 Cal. 4th 794 (2006) ..............................................................................21

*Birdsong v. Apple*,
        590 F.3d 955 (9th Cir. 2009) ......................................................................5

*Bly-Magee v. California*,
        236 F.3d 1014 (9th Cir. 2001) ...............................................................2, 12

*Boswell v. Costco Wholesale Corp.*,
        No. SA CV 16-0278-DOC (DFMx), 2016 WL 3360701
        (C.D. Cal. June 6, 2016). ...........................................................................19

*Boysen v. Walgreen Co.*,
        No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ...............5

*Branca v. Nordstrom*,
        No. 14cv2062-MMA (JMA), 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015)...................13

*Brazil v. Dole*,
        660 Fed. Appx 531 (9th Cir. Sept. 30, 2016)...............................................17

*Bristol-Myers Squibb Co. v. Superior Court*,
        137 S. Ct. 1773 (2017)...............................................................................10

*Clancy v. Bromley Tea Co.*,
        308 F.R.D. 564 (N.D. Cal. 2013)................................................................12

*Clemens v. DaimlerChrysler Corp.*,
        534 F.3d 1017 (9th Cir. 2008) ....................................................................20

*Cousins v. Lockyer*,
        568 F.3d 1063 (9th Cir. 2009) ......................................................................2

*Cover v. Windsor Surry Co.*,
   No. 14-CV-05262-WHO, 2015 WL 4396215 (N.D. Cal. July 17, 2015)........................20

*Dubose v Bristol-Myers Squibb Co.*,
   No. 17-cv-00244-JST, 2017 WL 2775034 (N.D. Cal. June 27, 2017) ..........................9, 10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
   No. 17-cv-00564-NC, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) .............................10

*Foman v. Davis*,
   371 U.S. 178 (1962)..................................................................................................23

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...............................................................11, 12

*Frye v. L'Oreal USA, Inc.*,
   583 F. Supp. 2d 954 (N.D. Ill. 2008) .........................................................................5

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017) ............................................................7, 19

*Hall v. Diamond Foods, Inc.*,
   No. C-14-2148 MMC, 2014 WL 5364122 (N.D. Cal. Oct. 21, 2014).............................13

*Henry R. Jahn & Son, Inc. v. Superior Court*,
   49 Cal. 2d 855 (1958) ...............................................................................................11

*Herrington v. Johnson & Johnson Consumer Cos.*,
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)....................................5

*Hollins v. U.S. Tennis Ass'n*,
   469 F. Supp. 2d 67 (E.D.N.Y. 2006) .........................................................................11

*Hunter v. Nature's Way Prod., LLC*,
   No. 16cv532-WQH-BLM, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016)......................19

*In re 5-Hour ENERGY Mktg. and Sales Practices Litig.*,
   No. MDL 13-2438 PSG, 2017 WL 385042 (C.D. Cal. Jan. 24, 2017)............................20

*In re Capacitors Antitrust Litig.*,
   No. 14-cv-03264-JD, 2015 WL 3638551 (N.D. Cal. June 11, 2015)...........................9, 10

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015) ...............................................................3

*In re ConAgra Foods, Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012) .......................................................................20

*In re Ferrero Litigation*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011).........................................................................19

*In re Mattel, Inc.*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ................................................................23

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*
    *Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................14

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) .................................................................11

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ...................................................................3

*Jou v. Kimberly-Clark Corp.*,
    No. C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .............................17

*Jurcoane v. Superior Court*,
    93 Cal. App. 4th 886 (2001) ............................................................................21

*Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 07-CV-1082 H (RBB), 2007 WL
    2300746 (S.D. Cal. Aug. 8, 2007) ......................................................................23

*Koronthaly v. L'Oreal USA, Inc.*,
    No. 07-CV-5588 (DMC), 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd*,
    374 Fed. App'x 257 (3d Cir. 2010) ......................................................................5

*Lack v. Cruise America, Inc.*,
    No. 17-cv-03399-YGR, 2017 WL 3841863 (N.D. Cal. Sept. 1, 2017) .........................15

*Laczko v. Jules Meyers, Inc.*,
    276 Cal. App. 2d 293 (1969) ............................................................................22

*Lee v. City of Los Angeles*,
    250 F.3d 688 (9th Cir. 2001) ..............................................................................6

*Lorenz v. Safeway, Inc.*,
    241 F. Supp. 3d 1005 (N.D. Cal. 2017) ............................................................3, 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................3

*Madenlian v. Flax USA Inc.*,
    No. SACV 13-01748 JVS (JPRx), 2014 WL 7723578
    (C.D. Cal. Mar. 31, 2014) .................................................................................16

*Marolda v. Symanke Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................................16

*Martinez v. Regents of Univ. of Cal.*
    50 Cal. 4th 1277 (2010) ...................................................................................22

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ...................................................................................3

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..................................................................................12

*McDougal v. Cty. of Imperial*,
    942 F.2d 668 (9th Cir. 1991) ...................................................................................2

*McKell v. Washington Mutual, Inc.*,
    142 Cal. App. 4th 1457 (Cal. 2006).......................................................................18

*McKinney v. Google, Inc.*,
    No. 5:10-CV-01177 EJD, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) .......................19

*Mezzadri v. Med. Depot, Inc.*,
    No. 14CV2330 AJB (DHB), 2015 WL 12572619 (S.D. Cal. Feb. 12,
    2015) ........................................................................................................................4

*Michael v. Honest Co., Inc.*,
    No. LA CV15-07059 JAK (AGRx), 2016 WL 8902574
    (C.D. Cal. Dec. 6, 2016) ........................................................................................20

*Morgan v. Wallaby Yogurt Co.*,
    No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4. 2013).........................4, 5

*Morgan v. Wallaby Yogurt Co.*,
    No. 13-CV-00296-WHO, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014).........................8

*Nagrampa v. MailCoups, Inc.*,
    No. C03-00208 MJJ, 2007 WL 2221028 (N.D. Cal. July 30, 2007) ...............................18

*Nguyen v. Medora Holdings, LLC*,
    No. 5:14-CV-00618-PSG, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015).........................4

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
    198 F.R.D. 670 (S.D. Cal. 2001) ............................................................................11

*Palmer v. Apple, Inc.*,
    No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. April 15, 2016) .....................16

*Pelayo v. Nestle USA, Inc.*,
    989 F.Supp.2d 973 (C.D. Cal. 2013) ......................................................................17

*People v. Connor*,
    115 Cal. App. 4th 669 (2004) ................................................................................21

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .................................................................................9

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................................3

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ..................................................................................22

*Rojas v. General Mills, Inc.*,
    No. 12-cv-05099-WHO, 2014 WL 1248017 (N.D. Cal. March 26, 2014).....................15

*Samet v. Procter & Gamble Co.*,
    No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ........................8

*San Diego Cty. Gun Rights Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ........................................................................4

*Sciortino v. Pepsico, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2017) .............................................................7

*T&M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*,
    83 F. Supp. 3d 855, 875 (N.D. Cal. 2015) ......................................................18

*Thorpe v. Abbott Laboratories, Inc.*,
    534 F. Supp. 2d 1120 (N.D. Cal. 2008) .....................................................11, 12

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.*,
    831 P.2d 724 (Wash. 1992)...........................................................................15

*Tracton v. Viva Labs, Inc.*,
    No. 16-CV-2772-BTM-KSC, 2017 WL 4125053 (S.D. Cal. Sept. 18,
    2017) ....................................................................................................19

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ........................................................................23

*Util. Consumers' Action Network v. Sprint Sols., Inc.*,
    No. C07-CV-2231-W (RJB), 2008 WL 1946859
    (S.D. Cal. April 25, 2008)...........................................................................23

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................12, 24

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-cv-027240-LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013)...........................14

*Wetherton v. Growers Farm Labor Ass'n*,
    275 Cal. App. 2d 168 (1969) .......................................................................22

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934 (9th Cir. 2008) .............................................................2, 16, 17

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ..................................................................................14, 16

**STATUTES, RULES & OTHER AUTHORITIES**

Cal. Civ. Code §1782(d) .........................................................................................................23

Cal. Civ. Proc. Code §410.10 ..................................................................................................9

Cal. Comm. Code §2314(2)(f) ...............................................................................................20

Cal. Health & Safety Code
    §110597.........................................................................................................................21
    §111548.5......................................................................................................................21
    §113095...................................................................................................................21, 22
    §113115.........................................................................................................................22
    §113120.........................................................................................................................22

Fed. R. Civ. P. 15(a)(2)...........................................................................................................23

Plaintiffs Daniel Zeiger, Danz Doggie Daytrips, and Amy Freeborn ("Plaintiffs"), individually and on behalf of the proposed Class, submit this Memorandum of Points and Authorities in Opposition to defendants WellPet LLC ("WellPet") and Berwind Corporation's ("Berwind" and, with WellPet, "Defendants") Motion to Dismiss ("Motion").[1]

## STATEMENT OF ISSUES TO BE DECIDED

Whether Defendants' Motion should be denied because: (1) Plaintiffs satisfy Article III standing; (2) Plaintiffs correctly alleged nationwide class allegations against Defendants; (3) Plaintiffs' First Amended Class Action Complaint ("FAC") meets the requirements of Rule 9(b); (4) Plaintiffs' express and implied warranty claims are proper; (5) a private right of action exists under California Health & Safety Code §113095 ("Section 113095"); (6) Plaintiffs' notice of Consumer Legal Remedies Act ("CLRA") violations ("Notice") is timely; and (7) leave to amend is warranted.

## STATEMENT OF FACTS

Plaintiffs initiated this action to end Defendants' negligent, reckless, and/or intentional practices of misrepresenting and failing to fully disclose the presence of dangerous substances and chemicals in Wellness® CORE® Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal ("CORE Ocean") and Wellness® Complete Health Adult Dry Whitefish and Sweet Potato (collectively the "Contaminated Products").  ¶¶1-2.[2]

As detailed in the FAC, Defendants engaged in a far-reaching and misleading advertising campaign regarding the Contaminated Products. ¶¶31-46.  In doing so, Defendants knew that the Contaminated Products contained material and significant levels of arsenic and lead, which are known dangerous toxins for both humans and animals such as dogs.  ¶¶2, 6-8, 38.  Plaintiffs also allege that CORE Ocean contains material and significant levels of bisephenol A ("BPA"), an

---

[1] Citations to the memorandum of points and authorities in support of Defendants' Motion appear as "Defs.' Br. at __.  Exhibits to Defendants' Request for Judicial Notice are referred to as "Defendants Exhibits" or "Defs.' Ex. __".) and all references to "Rule __" are to the Federal Rules of Civil Procedure.

[2] Unless otherwise noted, all references to "¶__" or "¶¶__" are to Plaintiffs' FAC, filed on June 15, 2017 (ECF No. 33).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    1
CASE NO. 3:17-CV-04056-WHO

industrial chemical linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.  ¶¶2-21, 31-36.

The presence of arsenic, lead, and BPA in the Contaminated Products demonstrates that Defendants' marketing is false and misleading by claiming, among other things, to offer "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health.  ¶¶10, 13,  38, 47, 52.  In fact, Defendants do not state anywhere on the Contaminated Products' packaging that they contain arsenic, lead, or BPA, nor do they reference the potential inclusion of heavy metals or chemicals.  ¶¶2-12, 31-46.  Unsurprisingly, as Defendants intended, Plaintiffs relied on the false and misleading advertising in purchasing the Contaminated Products.  ¶¶25-27, 50-52, 77-117.  Consequently, Plaintiffs and the Class paid a premium for products that were a farce.  ¶¶21, 28, 78.

## LEGAL STANDARD

A Rule 12(b)(6) motion is "viewed with disfavor and is rarely granted."  *McDougal v. Cty. of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991).[3]  A court must accept as true all of the plaintiff's allegations of material fact and construe them in the light most favorable to the plaintiff, and not allow a defendant to substitute its own facts or its own interpretation of those facts.  *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 937 (9th Cir. 2008) ("*Williams I*").  The complaint need not "contain detailed factual allegations," but only "enough facts to state a claim to relief that is plausible on its face."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).  Where claims are subject to the heightened pleading standard of Rule 9(b), a complaint's fraud allegations need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

---

[3]  Here, as throughout, all emphasis is deemed added and citations, quotation marks, and footnotes are deemed omitted unless otherwise noted.

# ARGUMENT

## I. PLAINTIFFS HAVE ARTICLE III STANDING

Defendants incorrectly maintain that Plaintiffs have no Article III standing. Defs.' Br. at 5-9. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015). "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1014 (N.D. Cal. 2017). A plaintiff must show "injury in fact" for Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). This is exactly what is alleged to have occurred here, and, therefore, Plaintiffs have pled a cognizable injury. Assuming *arguendo* the merits of the FAC, as required by the Court, Plaintiffs easily satisfy Article III standing by alleging an injury in fact.

### A. Plaintiffs Have Standing Because They Did Not Get What They Paid for – Healthy, Clean, Safe, Natural, and Pure Dog Food Free from Arsenic, Lead, or BPA

Plaintiffs have satisfied Article III standing requirements. The overwhelming majority of courts in this Circuit, and elsewhere, recognize that an injury-in-fact is sufficiently pled when a consumer is deceived about a product, and, as a result: (1) buys a product she would not have purchased had she known its true nature; or (2) pays more money for the product than she would have paid had she known its true nature. *E.g.*, *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing."); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (standing established where plaintiffs pleaded that they would not have purchased product had it been labeled accurately, and that they paid an

1    "unwarranted premium" for the allegedly mislabeled product).[4]

2        Here, the FAC easily meets this standard by alleging that: (1) each Plaintiff paid a price

3    premium for mislabeled products (¶¶28, 78); (2) based on representations that the products were

4    healthy, safe, "natural," offering "uncompromising nutrition," the result of "unrivaled quality

5    standards," supporting "optimal health" or "complete health," being "the healthiest natural

6    products for pets," "wholesome," adhering to "the highest standards," and produced in a plant

7    that is "meticulously sanitized" (¶¶10, 11, 13, 16–19); (3) when in fact the representations were

8    misleading and deceptive because the products contained lead, arsenic, and BPA (¶¶15, 20, 46);

9    and (4) Plaintiffs would not have purchased the Contaminated Products if it was disclosed that

10   the products contained lead, arsenic, and/or BPA.  ¶¶13, 25-28.  These allegations are more than

11   adequate.  *See Nguyen*, 2015 WL 4932836, at *5.[5]

12       Defendants' attempts to misconstrue Plaintiffs' claims are unavailing.  First, Defendants

13   mischaracterize Plaintiffs' claims as solely safety-related.   Defs.' Br. at 5-8.  In doing so,

14   Defendants ignore Plaintiffs' assertions that they suffered ***financial*** injury by paying a premium

15   for products they would not have purchased if there were no misrepresentations.  This Court has

16   rejected defense ruses similar to those advanced by Defendants.  For instance, in *Morgan v.*

17   *Wallaby Yogurt Co.*, the defendant argued, in-part, that the plaintiffs did not have standing

18   because the plaintiffs paid for food products they consumed without incident or injury.  No. 13-

19

20

21   [4] *Accord*, *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996)
     ("Economic injury is clearly a sufficient basis for standing."); *Nguyen v. Medora Holdings, LLC*,
22   No. 5:14-CV-00618-PSG, 2015 WL 4932836, at *5 n.38 (N.D. Cal. Aug. 18, 2015) (noting that
     in food-labeling cases, a plaintiff can satisfy Article III injury-in-fact requirement by showing
23   she either paid a price premium for a mislabeled product or would not have purchased the
     product had she known about the misbranding); *Mezzadri v. Med. Depot, Inc.*, No. 14CV2330
24   AJB (DHB), 2015 WL 12572619 (S.D. Cal. Feb. 12, 2015).

25
     [5] Defendants argue that Plaintiffs' premium-paid assertion does not pass muster (Defs.' Br. at 1,
26   4) but extensive details of payments are "more properly ... addressed in the context of a
     dispositive motion, rather than in a motion to dismiss or a motion for class certification."
27   *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097, at *4 (N.D. Cal.
     Jan. 7, 2014).
28

CV-00296-WHO, 2013 WL 5514563, *4 (N.D. Cal. Oct. 4, 2013) ("*Morgan I*").   The court made the following determination:

> This … seriously misconstrues the plaintiffs' contentions.  The plaintiffs' point is that ***they were misled*** ... [Defendant's] argument leads to the untenable conclusion that consumers have no legal recourse for intentionally misidentified products. Such a result has no basis in law, and the plaintiffs have standing.

*Id.*

Defendants' cited cases to this end also offer no support.  In *Boysen v. Walgreen Co.*, the court found the plaintiff's claim of economic injury was not supported by plausible allegations that the product had failed to perform as promised.  No. C 11-06262 SI, 2012 WL 2953069, at *4 (N.D. Cal. July 19, 2012); *accord Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).  Here, Plaintiffs repeatedly alleged that Defendants' products did not perform as promised by exposing their dogs to lead, arsenic, and BPA (*e.g.*, ¶¶2, 6, 8-9, 15, 20), while promising the products were healthy, safe, "natural," offered "uncompromising nutrition," resulted from "unrivaled quality standards," supported "optimal health" or "complete health," were "the healthiest natural products for pets," were "wholesome," adhered to "the highest standards," and were produced in a plant that was "meticulously sanitized."  *E.g.*, ¶¶10-11, 13, 16-17, 19, 21, 29, 38, 42-44, 47.  In *Frye v. L'Oreal USA, Inc.*, the plaintiff did not allege "that she would not have purchased lipstick, that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead." 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008).  In contrast, Plaintiffs here have alleged all these things.  *E.g.*, ¶¶13, 25–28, 78.  In *Birdsong v. Apple*, plaintiffs did not claim any financial injury to themselves, had only alleged a hypothetical risk of hearing loss to others, and had not alleged any misrepresentations by Apple about the safety of the iPods at issue—all distinguishing factors here.  *See Birdsong*, 590 F.3d 955, 961–62 (9th Cir. 2009).  In *Koronthaly v. L'Oreal USA, Inc.*, plaintiff alleged only concern about potential future injury.  No. 07-CV-5588 (DMC), 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd*, 374 Fed. App'x 257 (3d Cir. 2010).

On the other hand, even if Plaintiffs' claims were focused solely on safety, the FDA study cited by Defendants does not indisputably establish the safety of the products at issue.  As noted in Plaintiffs' Opposition to Defendants' Request for Judicial Notice filed herewith, if a matter of public record—even a government study—can in fact be "subject to reasonable dispute," then the court may not take judicial notice of the facts of that study.  See Opp. RJN at 1 (citing *Lee v. City of Los Angeles*, 250 F.3d 688, 688) (9th Cir. 2001).  Here, the FDA documents cited by Defendants (see ECF Nos. 35-3, 35-4) are not beyond dispute.  First, advocates of safer dog food have criticized the FDA's *Target Animal Safety Review Memorandum* (ECF No. 35-3).  In a report two years ago to the Association of American Feed Control Officials ("AAFCO"), holistic veterinarian and author Jean Hofve took issue with the FDA paper.  Dr. Hofve, an advisor to AAFCO's pet food committee, while discussing another study finding excessive heavy metals and other toxins in pet food, criticized the FDA findings as "based primarily on 'maximum tolerable levels,' which is not equivalent to 'safe for long-term consumption by pets in every meal of every day'—a standard that pet guardians rightly expect."   Jean Hofve, *Potential Contaminants of Pet Food: A Report to the AAFCO Pet Food Comm. Working Grp.*, at §8 (Nov. 9, 2015), available at http://www.littlebigcat.com/nutrition/pet-food-contaminants (last accessed Dec. 5, 2017).  Even the National Research Council report cited by Defendants noted that in humans, lead is toxic to cardiovascular, hematological, and neurodevelopmental systems "at the lowest levels of exposure" and to renal, gastrointestinal, hepatic, and immunological signs at higher levels.  Nat'l Research Council, *Mineral Tolerance of Animals* at 213 (Nat'l Academy Press 2d ed. 2005); Defs'. Mem. at 7.

Scientists have been critical of the FDA's approach to BPA as well.  See, e.g., Union of Concerned Scientists, *The FDA Declares that Bisphenol A is Safe, Despite Scientific Evidence* (2009) (asserting that the FDA in 2008 "relied heavily on two industry-funded studies in declaring the chemical bisphenol A (BPA) safe for humans, while ignoring over one hundred scientific studies linking BPA with adverse health effects"), available at http://www.ucsusa.org/our-work/center-science-and-democracy/promoting-scientific-integrity/bisphenol-a.html (last accessed Dec. 5, 2017); Warren Cornwall, *In BPA safety war, a*

*battle over evidence*, Science Mag. (Feb. 9, 2017), available at http://www.sciencemag.org/news/2017/02/bpa-safety-war-battle-over-evidence (last accessed Dec. 5, 2017).

Therefore, while the Court may take judicial notice of the existence of these FDA documents in Defendants' Exhibits C and D, the Court may not take judicial notice of the facts or conclusions within the documents. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017) (stating that "the Court does not take judicial notice of facts subject to reasonable dispute within" a dietary guidelines report from a federal advisory committee); *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 791 n. 2 (N.D. Cal. 2015) ("The Court does not take notice of the FDA documents for the truth of facts subject to reasonable dispute, such as the safety or riskiness of 4–MeI.").  Because the FDA documents are not appropriate for judicial notice, Defendants' assertions regarding the levels of lead, arsenic, and BPA in the at-issue products boils down to a factual dispute, which is not appropriate in a motion to dismiss.  *See, e.g., Lorenz*, 241 F. Supp. 3d at 1014, 1027.  Thus, Defendants' attack on Plaintiffs' standing fails.

## B.    Danz Doggie Daytrips Has Standing

Defendants improperly assert that Plaintiff Danz Doggie Daytrips ("Danz") has not sufficiently alleged standing.  Defs.' Br. at 5.  All three Plaintiffs pled they: (1) "were injured when they paid the purchase price or a price premium for the Contaminated Products that did not deliver what it promised"; (2) when they paid the purchase price or price premium on the assumption that the product was "healthy, clean, and safe for dogs to ingest," and that it was "natural and pure"; and (3) that they would not have paid this money had they known the Contaminated Products contained the excessive degrees of arsenic, lead, and BPA.  ¶28.  Not only did Danz sufficiently plead this injury, it alleged that it suffered this injury for nearly three years.  See ¶26.  Danz, like its co-Plaintiffs, has constitutional standing.

## C.    Plaintiffs Have Standing on Their Statutory Claims as Well

Likewise, Plaintiffs have standing to bring their CLRA, False Advertising Law ("FAL"), and Unfair Competition Law ("UCL") claims.  To have standing on these claims, a plaintiff must

"establish that he or she suffered an economic injury."  *Morgan v. Wallaby Yogurt Co.*, No. 13-CV-00296-WHO, 2014 WL 1017879, *4 (N.D. Cal. Mar. 13, 2014) ("*Morgan II*").  "A plaintiff has suffered economic injury when she has either: (1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."  *Id.*  Claims based on fraud or misrepresentations require "actual reliance and causation."  *Id.*

Here, for the same reasons explained above regarding Article III standing, Plaintiffs have stated a claim that "they" were misled into purchasing products they otherwise would not have purchased," and "would not have purchased the products at the premium price paid."  *See id.*  "Courts in this district have overwhelmingly found that such allegations are sufficient to establish economic injury."  *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013).  Plaintiffs satisfied all standing requirements for their CLRA, FAL, and UCL claims.

## II.  PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS ARE SOUND AND SHOULD BE CONSIDERED AT THE CLASS CERTIFICATION MOTION

### A.  The Court Has Personal Jurisdiction Over Defendants

Defendants' request to limit Plaintiffs' nationwide class allegations should be denied.  Defs.' Br. at 9-15.  Plaintiffs' class allegations are appropriate for the pleading stage and should be carefully analyzed at the class certification stage, with the benefit of jurisdictional and class discovery.[6]

District Courts in California may assert personal jurisdiction over an out of state corporate defendant if: (1) the defendant purposefully directed activities or consummated a transaction with the forum or a resident, or otherwise used the privileges of acting in the forum, "thereby invoking the benefits and protections of its laws;" (2) the claim arises out of or related to the defendant's forum-related activities; and (3) exercising jurisdiction is reasonable in light of fair play and substantial justice.  *Dubose v Bristol-Myers Squibb Co*., No. 17-cv-00244-JST,

---

[6] Defendants concede the Court has personal jurisdiction over WellPet.

2017 WL 2775034, at *2 (N.D. Cal. June 27, 2017); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2015 WL 3638551, at *2 (N.D. Cal. June 11, 2015); *see* Cal. Civ. Proc. Code §410.10 (California courts may exercise jurisdiction "on any basis not inconsistent with" U.S. Constitution).[7]  These factors all support exercising personal jurisdiction here.

First, both Defendants have made California deals and gone to court here to enforce them, to their benefit.  For example, WellPet sued Pet Partners in California.  Declaration of Rebecca A. Peterson in Support of Plaintiffs' Opposition to Motion to Dismiss ("Peterson Decl."), Ex. 1.  WellPet sold pet food through two California distributors to Pet Partners, which in turn sold the pet food from its Long Beach, California store.  WellPet paid Pet Partners over $140,000 for coupons Pet Partners redeemed.  ¶27.  The U.S. District Court for the Central District of California venue was proper "because a substantial part of the events giving rise to the claims at issue in this lawsuit occurred" there.  ¶6.  WellPet litigated claims based on California Business & Professions Code and breach of contract with Pet Partners until reaching a settlement.  *E.g.*, ¶¶28, 33-37; Peterson Decl., Ex. 2 (at Dkt. No. 30).

WellPet's litigation reveals it had commercial agreements with at least two California distributors, in addition to Pet Partners.  One is United Pacific Pet, "one of the largest California pet food and pet products distributors."  Peterson Decl., Exs. 3 & 4.

Defendant Berwind has also brought suit in California, and appears to do business here. Berwind sued inventor Edward Fyfe in the U.S. District Court for the Southern District of California.  Peterson Decl., Ex. 5.  The court enjoined Fyfe from competing with Berwind and ordered Berwind to rehire Fyfe based on their consulting agreement.  Berwind reportedly has California employees.  Peterson Decl., Ex. 6.

Second, Plaintiffs' claims arise out of Defendants' forum-related activities.  Defendants actively distribute, advertise, warrant, and market pet food in California, and monitor the sales even at the retail level, as shown by their allegations about Pet Partners' sales.  "Defendants

---

[7]  *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) is not applicable to this Court's analysis because that defendant's activities were all or nearly all directed towards sales in Michigan and Ohio, and affected only a Delaware corporation's payments to trusts in Wyoming and Australia.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    9
CASE NO. 3:17-CV-04056-WHO

formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Dog Foods under the Wellness dog food brand name throughout the United States."  ¶29. Plaintiffs were given samples of Defendants' dog food in San Francisco, and purchased the products, with their labels, at multiple California locations specified in the complaint.  ¶¶25-27. That **both** defendants, Berwind and WellPet, supervised the design, manufacture, and marketing of the dog food are reasonable inferences from the complaint's factual allegations.  There is a reasonable expectation discovery will reveal and pin down exactly each of Defendants' roles in marketing, advertising, and mislabeling the Contaminated Products.

Third, exercising personal jurisdiction over Defendants is fair and reasonable.  Given Plaintiffs' showing on the first two factors, Defendants must show unfairness.[8]  However, Plaintiffs, in an abundance of caution, note that Defendants have engaged in many transactions, and made and collected significant money from California citizens.  They have both chosen to litigate in California.  They have worked with multiple distributors and misled Plaintiffs to make more money in California.[9]  Each Defendant has "reaped the benefits of our laws that protected its goods while they were here, and it had access to our courts to enforce any rights in regard to these transactions."  *Henry R. Jahn & Son, Inc. v. Superior Court*, 49 Cal. 2d 855, 861 (1958). Accordingly, California personal jurisdiction is fair to these Defendants.[10]

---

[8] *Dubose*, 2017 WL 2775034, at *2; *Capacitors*, 2015 WL 3638551, at *2.

[9] Defendants misinterpret *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). Out of state plaintiffs may still sue in California when some of defendants' misconduct occurred here.  *Dubose*, 2017 WL 2775034, at *3 (proper question is "whether the defendant's conduct connects him to the forum in a meaningful way") (post-*Bristol* case).  Accordingly, a "plaintiff's residency in the forum state is not the *sine qua non* of specific jurisdiction."  *Id*.  Further, *Bristol-Myers* was a mass tort case that does not apply to class actions, since unnamed class members are not named parties.  *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564-NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).

[10] In the alternative, jurisdictional discovery should be permitted.  *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672, 674 (S.D. Cal. 2001) (allowing discovery); *accord, Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 72 (E.D.N.Y. 2006).  Here, Plaintiffs proffer facts showing Defendants do business with multiple California distributors and retailers and avail themselves of California courts to enforce their rights in their business deals.  Plaintiffs respectfully request leave for discovery to further trace Defendants' business deals and activities

(Footnote continues on next page.)

**B.     The Scope of Plaintiffs' Class Should Be Determined at the Class Certification Stage.**

"[G]ranting of motions to dismiss class allegations before discovery has commenced is rare." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).   "[T]he better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *Id.*; *Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) (certification motion "more appropriate vehicle" for class scope issues).   In the current case, this is especially true because Defendants have failed to show Plaintiffs lack standing to represent unnamed class members.

As previously explained in *supra*, Plaintiffs have adequate standing.   *See supra* at Sect. I. There is no authority to support Defendants assertion that although Plaintiffs have established their individual standing, they lack standing to act as class representatives for unnamed class members based solely on residency.   However, Defendants carry the burden to "rigorous[ly]" explain, "based on the facts and circumstances of *this* case, and *this* Plaintiff's allegations," why California law does not apply to the whole controversy.   *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (emphasis in original).   In the end, the Court will consider where Defendants operate their manufacturing plants, whether they have any offices in California, where they sell the Contaminated Products, and how they create and distribute their California advertising.   This information is in Defendants' exclusive control until the parties have engaged in discovery, and therefore an improper consideration for this Court at the motion to dismiss stage.

Despite this, Defendants ask this Court to pre-litigate Plaintiff's typicality for class certification now, with generic arguments and without class discovery.[11] Plaintiffs will provide a

---

(Footnote continued from previous page.)

in California and demonstrate how those activities affected Plaintiffs and other prospective class members.

[11] *Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012) is distinguishable because it "undertook a class-wide choice-of law analysis at the class certification stage, rather than the pleading stage." *Forcellati*, 876 F. Supp. 2d at 1159.   "Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case." *Id.*   Further, "*Mazza* did not purport to hold

(Footnote continues on next page.)

1  detailed choice-of-law analysis based on the facts of this case at the class certification stage to

2  support the contours and applicable law for their proposed classes and any subclasses.  However,

3  the motion for class certification "is a more appropriate vehicle" for these issues.  *Thorpe*, 534 F.

4  Supp. 2d at 1125.  Accordingly, Defendants' motion regarding the nationwide class allegations

5  should be denied.

6  **III.    THE FAC PLEADS CLAIMS WITH PARTICULARITY TO SATISFY RULE 9(B)**

7          Contrary to Defendants' claims (Defs.' Br. at 15-22), the FAC states valid consumer

8  protection and fraud claims in satisfaction of Rule 9(b).   Under Rule 9(b), a complaint's

9  allegations need only be "specific enough to give defendants notice of the particular misconduct

10  which is alleged to constitute the fraud charged so that they can defend against the charge."  *Bly-*

11  *Magee*, 236 F.3d at 1019.  This generally requires the complaint to state "who, what, when,

12  where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

13  1106 (9th Cir. 2003).  For instance, in *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D.

14  Cal. 2013), Rule 9(b) was satisfied when the Plaintiff alleged the who (the company), what (nine

15  discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of

16  its products and on Defendants' website), when (since 2008 and throughout the class period),

17  where (Defendants' package labels and website), and how (reasonable reliance on Defendants'

18  statements made in violation of California consumer protection laws).

19          Here, similar to Clancy, the FAC states who, when, what, where, and how:

20          ***Who and When***: The FAC specifically alleges when the Plaintiffs began purchasing the

21  Contaminated Products, when they stopped, how frequently it was purchased, and from what

22  stores.   ¶25-27.   This is more than sufficient detail regarding Plaintiffs' purchases of the

23  Contaminated Products under Rule 9(b).  *See Hall v. Diamond Foods, Inc.*, No. C-14-2148

24  MMC, 2014 WL 5364122, at *2 (N.D. Cal. Oct. 21, 2014); *Astiana*, 2011 WL 2111796, at *6. [12]

25  (Footnote continued from previous page.)

26  that nationwide classes are, as a matter of law, uncertifiable under California's consumer
   protection laws."  *Id*.

27  [12] Defendants seek this Court to apply a "Daubert-like" standard in its analysis.  Defs.' Br. at 16.

28  They, however, offer no case that supports their proposition.  That is not surprising, as it is
                                                                        (Footnote continues on next page.)

**What and Where**: The FAC also includes sufficient allegations regarding Defendants' deceptive marketing, advertising, and labeling practices in order to satisfy Rule 9(b).  The FAC includes the exact names of the Contaminated Products purchased by the Plaintiffs.  ¶¶2, 30.  Additionally, the FAC includes images of the packaging and labels, as well as the website links containing the deceptive statements.  ¶¶11, 16-19, 30, 42.  The FAC sufficiently alleges that the Plaintiffs saw and relied on the statements, misrepresentations, and marketing prior to purchasing the Contaminated Products.  ¶¶25-27, 51, 52.  Plaintiffs have sufficiently alleged what is misleading about Defendants' products and where the misleading statements were made.

**How**: The FAC alleges how the packaging and labels are misleading under Rule 9(b).  In particular, such allegations include: (1) "Defendants have wrongfully advertised and sold the Contaminated Products without any label or warning indicating to consumers that these products contain arsenic or lead, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur" (¶9);  (2) "Defendants' website further warrants, claims, features, represents, advertises, or otherwise markets that its products, including CORE Ocean, are manufactured in such a way that would prevent BPA forming by closely monitoring temperatures and quality" when it actually contains significant levels of BPA (¶¶19, 20); and (3) "Defendants' claims that the Contaminated Dog Foods are healthy and safe for consumption are untrue or misleading, as is failing to make any mention of arsenic and lead in the Contaminated Dog Foods.  Likewise, Defendants' statements that CORE Ocean is natural, pure, and safe are untrue or misleading, as failing to disclose the presence of BPA in the dog food."  ¶94.

Additionally, the FAC provides further detail that the packaging is deceiving because it fails to disclose or warn, and consumers are unaware, that the statements "Unrivaled Quality Standards" and "natural, safe, and pure" disregard the presence of arsenic, lead, and BPA in the Contaminated Products.  ¶¶7, 10, 20.  Moreover, the FAC details how consumers are misled and

---

(Footnote continued from previous page.)

undoubtedly premature to conduct a Daubert examination at the motion to dismiss stage.  *Branca v. Nordstrom*, No. 14cv2062-MMA (JMA), 2015 WL 10436858, at *7 (S.D. Cal. Oct. 9, 2015).

deceived by Defendants' decision to imply the Contaminated Products are natural through the brand name of the dog food (Wellness) and packaging statements such as "Complete Health [with] Natural Ingredients" and "natural food."  ¶10, 11, 16.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("*Williams II*") (consumers should not be expected to "look beyond misleading representations on the front of the [product's] box to discover the truth from the ingredient list in small print on the side of the box").

Lastly, the FAC includes allegations that Plaintiffs relied on Defendants' statements in purchasing the Contaminated Products, which is sufficient to satisfy Rule 9(b).  Plaintiffs would not have purchased the Contaminated Products if the information about the presence of arsenic, lead, or BPA had been fully or properly disclosed.  ¶¶25-27.   *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1172 n.18 (C.D. Cal. 2010) ("Allegations of representations from product labels and statements that, had consumers not been deceived by the labels, they would not have purchased the product, are sufficient to plead under Rule 9(b)."); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-027240-LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013) (a plaintiff adequately alleged reliance under Rule 9(b) when she stated "why a reasonable consumer would be misled" by allegedly misleading food labels).

Defendants' Motion must be denied because the FAC more than sufficiently satisfies the particularity standards of Rule 9(b).

## IV.   PLAINTIFFS SUFFICIENTLY PLEAD CLRA, UCL, FAL, AND NEGLIGENT MISREPRESENTATION CLAIMS

### A.   The Express Representations at Issue Are Actionable, Objective Statements About the Contaminated Products

Plaintiffs' alleged factual and actionable statements made by Defendants that are not mere puffery.  Defs.' Br. at 18-20.   As detailed in the FAC, Defendants' made specific misrepresentations, such as: "Natural Food for Adult Dogs" (¶16); "We require all suppliers to meet stringent requirements and adhere to the highest standards, exceeding even the strictest requirements from the FDA" (¶18); "During production, rigorous standards and practices are put

in place to protect the nutritional integrity of our food…. In our zeal to provide you with only the highest-quality pet food, we take extra precautions to make sure ingredients are stored properly, temperatures are monitored and products are routinely tested…. Our food is carefully handled, carefully prepared and undoubtedly safe" (¶19); and "At Wellness, your pet's health is at the core of all we do. That's why we have developed an extensive quality assurance program, guaranteeing that all of our products are safe, pure and balanced" (¶42).

Courts have repeatedly found similar statements concerning standards and quality assurances to be actionable and not mere puffery. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (finding the phrase "most stringent quality control tests" was actionable and not mere puffery); *id.* (citing *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.*, 831 P.2d 724, 731 (Wash. 1992) ("[S]tatements in a manufacturer's brochure stating that steel frame structures where 'carefully checked by our quality control department,' constituted more than mere puffery."); *Lack v. Cruise America, Inc.*, No. 17-cv-03399-YGR, 2017 WL 3841863, at *3 (N.D. Cal. Sept. 1, 2017) (A "specific representation about the processes [the Defendant] had completed before offering for a sale a particular [product]" was actionable.); *Rojas v. General Mills, Inc.*, No. 12-cv-05099-WHO, 2014 WL 1248017, at *4 (N.D. Cal. March 26, 2014) (concluding that the terms "100% natural" and "all natural" were not mere puffery.).

### 1. The FAC amply states and supports a concealment or omission claim

In addition to the actionable misrepresentations by Defendants, the FAC includes actionable omission claims. "[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make [their] purchase[s] and that failed to include the alleged omitted information." *Palmer v. Apple, Inc.*, No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal. April 15, 2016) (quoting *Marolda v. Symanke Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). As discussed *supra*, the FAC amply describes what crucial information Defendants omitted with regards to the labeling, advertising and marketing of the

Contaminated Products and have provided specific examples of representations where the critical facts were omitted. *Supra* at Sect. III. Furthermore, Plaintiffs explicitly allege and explain how Defendants knew, or should have known, that the Contaminated Products contained arsenic, lead, and/or BPA but failed to disclose those facts to Plaintiffs at the time of sale. ¶¶38, 39, 53. Plaintiffs easily meet the requirements of Rule 9(b) for an omission based claim.

### 2.   Defendants' request to have the FAC's allegations construed against Plaintiffs is improper an contrary to established pleading standards

Defendants urge this Court to construe the allegations of the FAC against Plaintiffs, in contravention of governing legal standards, by asking the Court to determine Plaintiffs' allegations are mere speculation. Defs.' Br. at 20. This is not appropriate at this pleading stage. *Williams I*, 523 F.3d at 937. "Generally, the issue of whether a business practice is deceptive is a fact question that cannot properly be resolved on a motion to dismiss." *Madenlian v. Flax USA Inc.,* No. SACV 13-01748 JVS (JPRx), 2014 WL 7723578, at *2 (C.D. Cal. Mar. 31, 2014); *see also Williams II*, 552 F.3d at 938 ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."). It is only "in 'rare' cases, the Court can grant a motion to dismiss based upon its review of the disputed packaging." *Madenlian*, 2014 WL 7723578, at 2.

The instant case does not present one of the "rare situation[s]" in which a motion to dismiss should be granted. First, the FAC sufficiently demonstrates how Defendants' conduct is false and misleading to a reasonable consumer. ¶¶12-13, 21, 45, 52, 77. Second, Defendants construe the allegations of the FAC ***against Plaintiffs*** in arguing that there is no alleged factual basis that a reasonable consumer would not purchase the Contaminated Products if the actual inclusion (and levels) of the lead, arsenic, or BPA were fully and properly disclosed. Defendants' assertions are inappropriate and should be rejected by the Court. *See Williams I*, 523 F.3d at 937.

### 3.   Plaintiffs need not define "natural"

Plaintiffs disagree with Defendants' contention that "natural" is a nebulous definition that cannot be objectively determined under the law. Defs'. Br. at 22. California courts have

recognized that when a product label contains a statement that it is "natural," consumers should be able to rely on that representation, and it should indicate that the product does not contain harsh chemicals or anything unnatural. *Brazil v. Dole*, 660 Fed. Appx 531, 533 (9th Cir. Sept. 30, 2016) (plaintiff argued Dole's labels were deceptive because "they describe the packaged fruit as 'All Natural Fruit,' despite the fact that the products contain synthetic citric and ascorbic acid.")

As Plaintiffs have alleged, BPA is a known chemical that is not "natural." ¶¶5-8. Indeed, nowhere do Defendants actually argue, nor can they argue, that BPA is natural under any plausible definition. Consequently, Defendants' reliance on *Pelayo v. Nestle USA, Inc*., 989 F.Supp.2d 973 (C.D. Cal. 2013) to show that consumers may not be deceived or mislead by the term "natural" is misplaced. Defs.' Br. at 22. As the court in *Jou v. Kimberly-Clark Corp.* found, " [*Pelayo's*] conclusion is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit." No. C-13-03075 JSC, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013). Further, unlike the plaintiff in *Pelayo*, here, Plaintiffs have not proffered various conflicting definitions of "natural." Instead, Plaintiffs relied on the reasonable and common sense expectation that "natural" would not include the presence of the chemical BPA. ¶¶ 7, 13, 16-21, 39.

> ### 4. Plaintiffs' claims under the UCL unfair and unlawful prongs were pled with reasonable particularity and satisfy Rule 9(b)'s standards.

As discussed *supra*, the FAC includes reasonable particularity facts that support FAL, CLRA, and UCL claims and meets Rule 9(b) requirements. Contrary to Defendants' assertions that "unfair" conduct in UCL actions must violate public policy (Defs.' Br. at 22), "[a] business practice is unfair within the meaning of the UCL, if it violates established public policy *or* if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Nagrampa v. MailCoups, Inc.*, No. C03-00208 MJJ, 2007 WL 2221028, at *2 (N.D. Cal. July 30, 2007) (citing *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (Cal. 2006)). Plaintiffs clearly alleged that the Defendants' deceptive (and accordingly,

immoral, unethical, oppressive, and unscrupulous) marketing was injurious to the Plaintiffs and in violation of California's consumer protection laws.  ¶¶8-13, 98-106.

## V.    THE WELL PLED FAC ALLEGES CLAIMS FOR BREACH OF EXPRESS AND IMPLIED WARRANTY

### A.    Plaintiffs' Express Warranty Claim Is Supported Defendants' Specific Promises

Defendants claim that Plaintiffs failed to point to any "specific and unequivocal promise" supporting an express warranty claim.  Defs.' Br. at 23.  This argument fails based on governing law and the FAC's specific allegations concerning "the exact terms of the warranty."  *T&M Solar and Air Conditioning, Inc. v. Lennox Int'l In*c., 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015).[13]

The FAC unequivocally sets out the exact express warranties made by Defendants concerning the Contaminated Products, including promises of "uncompromising nutrition," "unrivaled quality standards," and that the Contaminated Products were "pure, healthy and safe" and "natural."  ¶¶10, 21, 108.  Each bag prominently states that the product is "natural" and that it promotes "complete health" and "wellness" of the pets.  ¶¶10–11, 16.  Plaintiffs also allege that there are unnatural and unsafe ingredients found in Defendants products, namely, BPA.  ¶¶7, 20.[14]

Courts have regularly found that similar affirmations are sufficient to show a breach of express warranty under governing law.  For instance, in *In re Ferrero Litigation*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011), the Court held that an express warranty claim survived a motion to dismiss where the complaint alleged that Nutella was not "an example of a healthy and balanced breakfast" and was not a "healthy" and "nutritious" breakfast food.  *Id.*  ("[T]he challenged statements are sufficiently specific and unequivocal to constitute an affirmation of fact or promise.").  In *Boswell v. Costco Wholesale Corp.*, the court denied a motion to dismiss an

---

[13] Defendants do not challenge the other requirements for stating a breach of express warranty claim here.

[14] The case relied on by Defendants does not change that these are all express warranties. *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *4 (N.D. Cal. Aug. 30, 2011) (finding that when there was no alleged promise as to connection of a network, no express warranty exists concerning the connectivity of the advertised 3G network).

express warranty claim where "[t]he label states the Coconut Oil is a 'healthful and delicious oil,' and that the product provides 'health benefits.'"  No. SA CV 16-0278-DOC (DFMx), 2016 WL 3360701, at *10 (C.D. Cal. June 6, 2016).  Similarly, in *Hunter v. Nature's Way Prod., LLC*, the court held that an express warranty claim challenging "healthy" and "[i]deal for exercise and weight loss programs" statements survived a motion to dismiss.  No. 16cv532-WQH-BLM, 2016 WL 4262188, at *9 (S.D. Cal. Aug. 12, 2016); *see also Tracton v. Viva Labs, Inc.,* No. 16-CV-2772-BTM-KSC, 2017 WL 4125053, at *8 (S.D. Cal. Sept. 18, 2017). [15] As such, this Court should reject Defendants' request to dismiss the adequately pled express warranty claim. [16]

**B.      Plaintiffs' Well Pled FAC Supports a Breach of Implied Warranty Claim**

**1.      Privity exists between Plaintiffs and Defendants**

The Court must ignore case law and the facts of this case in order to accept Defendants' assertion that Plaintiffs needed to purchase the Contaminated Products directly from Defendants or their agents to be in privity.  Defs.' Br. at 23.  Fatal to Defendants argument, is that privity is not required "when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1023 (9th Cir. 2008).  Additionally, there is no privity requirement when Plaintiffs and the Class are the intended beneficiaries of the expressed or implied warranties. *Cover v. Windsor Surry Co.,* No. 14-CV-05262-WHO, 2015 WL 4396215, at *6 (N.D. Cal. July 17, 2015); *Michael v. Honest Co., Inc.*, No. LA CV15-07059 JAK (AGRx), 2016 WL 8902574, at *26 (C.D. Cal. Dec. 6, 2016) (third-party beneficiary exception applies to implied warranties also).  In the current case, the FAC alleges that Defendants: (1) made express and implied warranties through their advertising, labeling,

---

[15] Defendants add a cursory statement that, as safety is not at issue based on their submitted studies and construing allegations against Plaintiffs, no express warranty can exist as to the safety of the Contaminated Products.  As addressed earlier in detail, this is a disputed issue and should not preclude finding an express warranty here by Defendants.  *Hadley*, 2017 WL 3453391, at *32.

[16] It is noteworthy that "courts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty."  *Hadley*, 2017 WL 3453391, at *32.

1    statements, and representations; (2) with the intention that they be considered by the end

2    purchasers, such as Plaintiffs; (3) whom in fact relied on these implied and expressed warranties;

3    and (4) that these end-purchasers were the intended beneficiaries of the implied warranties.

4    ¶¶50-51, 55, 57.   Thus, under *Clemens* and *Cover*, privity exists between Plaintiffs and

5    Defendants under California law.

6                    **2.      Plaintiffs sufficiently alleged breach of implied warranty**

7            Plaintiffs may plead that a product is not merchantable under ***any*** prong of Section

8    2314(2) of the California Commercial Code in order to state a claim for breach of implied

9    warranty.  *See In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1111–12 (C.D. Cal. 2012).

10   Plaintiffs' implied warranty claim is predicated on Section 2314(2)(f), which provides that

11   "[g]oods to be merchantable must  … [c]onform to the promises or affirmations of fact made on

12   the container or label if any."   ¶129; Cal. Comm. Code §2314(2)(f).   Plaintiffs allege that

13   Defendants have violated the implied warranty of merchantability because the Contaminated

14   Products do not conform to the promises and affirmations of being "natural," or "pure, healthy,

15   and safe."   ¶¶122–25. *See, e.g.*, *In re 5-Hour ENERGY Mktg. and Sales Practices Litig.*, No.

16   MDL 13-2438 PSG (PLAx), 2017 WL 385042, at *12 (C.D. Cal. Jan. 24, 2017) (breach of

17   implied warranty of merchantability claim raises a genuine dispute of fact as to whether the

18   product conforms to the "promises or affirmations" on its label).   Plaintiffs have adequately

19   stated a cause of action for breach of implied warranty.

20   **VI.   PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION UNDER SECTION
21         113095 OF THE CALIFORNIA HEALTH & SAFETY CODE**

22           Contrary to Defendants' assertion (Defs.' Br. at 24), statutory construction supports a

23   private right of action under section 113095 of the California Health & Safety Code ("Section

24   113095").  A long standing canon of statutory construction is that "courts may not add provisions

25   to a statute or rewrite it to conform to an assumed intent that does not appear from its plain

26   language."  *People v. Connor*, 115 Cal. App. 4th 669, 692 (2004).  The court in *Jurcoane v.*

27   *Superior Court* explained:

28

> Where the Legislature makes express statutory distinctions, we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended. This concept merely restates another statutory construction canon: we presume the Legislature intended everything in a statutory scheme, and *we should not read statutes to omit expressed language or include omitted language*.

93 Cal. App. 4th 886, 894 (2001). A review of the Health & Safety Code shows that Legislature specifies when it intends to bar a private right of action under a provision of the code. For instance, section 110597 specifically states "the right to commence and pursue civil or administrative actions … shall be vested exclusively in the state." Cal. Health & Safety Code §110597. Similarly, section 111548.5 explicitly states "[t]his article does not create a private cause of action." Cal. Health & Safety Code §111548.5.[17]

In contrast, Section 113095 does not contain language prohibiting a private right of action, nor does the section mention an alternate remedy or enforcement mechanism. The absence of a parallel provision under Section 113095 signals that the Legislature did not intend to bar a private right of action under the section. *See, e.g., Bernard v. Foley*, 39 Cal. 4th 794, 811 (2006) (Legislature's failure to include an express friendship exception in statutory scheme dealing with presumed undue influence was significant because Legislature had shown it knew how to craft one by including it in another portion of Act); *Martinez v. Regents of Univ. of Cal.* 50 Cal. 4th 1277, 1295-96 (2010) (failure to include a requirement in one statute is significant when the legislative body has included that requirement in other statutes).

Moreover, it has long been held that the violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute, and any injured member of the public for whose benefit the statute was enacted may bring an action. *Wetherton v. Growers Farm Labor Ass'n*, 275 Cal. App. 2d 168 (1969), *questioned and overruled on other grounds in Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-521 (1994); *Bay Cities Paving & Grading, Inc. v. Hensel Phelps Constr. Co.*, 56 Cal. App. 3d 361 (1976) (the purpose of the Subletting and Subcontracting Fair Practices Act is to protect both the public

---

[17] It is further noteworthy that both of these sections fall under the same division of environmental Health Section as Section 113095.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    21
CASE NO. 3:17-CV-04056-WHO

and subcontractors from unfair bid peddling and bid shopping (Gov. Code §4101), and that purpose is furthered by recognition of an action for damages); *Laczko v. Jules Meyers, Inc.*, 276 Cal. App. 2d 293 (1969) (violation of Veh. Code, §28051, by turning back an automobile odometer, raises a cause of action in subsequent purchasers); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993) (the existence of a substantial body of legislation designed to protect the public from exposure to toxic substances may provide a basis for liability).

In the present case, Section 113095 was obviously enacted with a particular policy in mind—to ensure fair dealing with consumers.  Indeed, the Code specifically only allows amendments if they further the policy of truth and full disclosure to the consuming public.  Cal. Health & Safety Code §113115 ("When in the judgment of the department the action will promote honesty and fair dealing in the interest of the ultimate purchaser….").  As such, this Court should hold that a private right of action exists under Section 113095 and, therefore, Plaintiffs' seventh cause of action may proceed. [18]

## VII.   PLAINTIFFS' CLRA NOTICE WAS TIMELY

Defendants incorrectly maintain that Plaintiffs' request for damages under the CLRA should be dismissed because notice was not timely provided prior to filing the original complaint.  Defs.' Br. at 24-25.  This is plainly false.  Section 1782(d) of the CLRA allows an action for ***injunctive relief*** to be commenced without first providing notice.  Cal. Civ. Code §1782(d).  Thereafter, the action may be amended to include a request for damages not less than thirty days after the commencement of the action for injunctive relief and notice is provided.  *Id.* Here, the original complaint only sought injunctive relief under the CLRA. *See* ECF No. 1. Thereafter, Plaintiffs added a request for CLRA damages when the FAC was filed, nearly three months after Plaintiffs' Notice was sent on July 19, 2017.  *See* Defs. Ex. G. [19]  Therefore,

---

[18] Defendants' argument that section 113095 is to be administered by the department further shows that the Legislature intended to not limit enforcement to the department as that requirement is purposefully omitted.  Cal. Health & Safety Code §113120.

[19] The FAC does not seek damages under the CLRA in connection with the BPA allegations.

Plaintiffs' Notice was timely and Defendants' argument, based on an incorrect interpretation of the CLRA, must be rejected.  Likewise, the Court should reject Defendants' argument that any claim for restitution under the CLRA should be dismissed for lack of pre-suit notice (Defs.' Br. at 24-25), because such a requirement does not exist.  *See Util. Consumers' Action Network v. Sprint Sols., Inc.*, No. C07-CV-2231-W (RJB), 2008 WL 1946859, at *7 (S.D. Cal. April 25, 2008) (determining that prefiling notice is not required for a CLRA claim for restitution); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("The [first amended complaint] demands restitution and disgorgement [...], which do not appear to be 'damages' for the purposes of the CLRA."); *Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 07-CV-1082 H (RBB), 2007 WL 2300746, at *4 (S.D. Cal. Aug. 8, 2007) (same).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety. Alternatively, if the Court is inclined to grant any portion of Defendants' Motion, Plaintiffs should be granted leave to amend the FAC to cure any perceived deficiencies. [20]

---

[20] Rule 15(a) provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (holding that standard for granting leave to amend is "generous"); *Vess*, 317 F.3d at 1108 (noting that a dismissal under Rules 12(b)(6) and 9(b)  "should ordinarily be without prejudice").

Dated: December 5, 2017

Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist
Rebecca A. Peterson, #241858
LOCKRIDGE GRINDAL NAUEN, P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com
rapeterson@locklaw.com

_s/ Rebecca A. Peterson_
REBECCA A. PETERSON

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
ASHLEY R. RIFKIN
GINA STASSI
STEVEN M. McKANY
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        kseely@robbinsarroyo.com
        arifkin@robbinsarroyo.com
        gstassi@robbinsarroyo.com
        smckany@robbinsarroyo.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)
CATHERINE K. SMITH (*pro hac vice*)
DANIEL J. NORDIN (*pro hac vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
dnordin@gustafsongluek.com

**_Attorneys for Plaintiffs and Proposed Class_**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List for this action.

s/    *Rebecca A. Peterson*