1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL ZEIGER, et al.,

Plaintiffs,

v.

WELLPET LLC, et al.,

Defendants.

Case No. 17-cv-04056-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 34

## INTRODUCTION

Plaintiffs Daniel Zeiger, Danz Doggie Daytrips ("Danz"), and Amy Freeborn allege that WellPet LLC ("WellPet") and its parent company Berwind Corporation ("Berwind," and collectively with WellPet, "defendants") manufacture, market, and sell certain dog food products that are contaminated with the toxins arsenic and lead, and the chemical Bisphenol A ("BPA"). Plaintiffs allege that defendants knowingly, recklessly, or negligently sold these contaminated products without disclosing their presence on the labels, which make certain health claims and safety assurances. They now bring suit on behalf of themselves, a nationwide class, and a California subclass for negligent misrepresentation, violations of California's Consumer Legal Remedies Act ("CLRA"), violations of California's False Advertising Law ("FAL"), violations of California's Unfair Competition Law ("UCL"), breach of express and implied warranty, and violation of California Health and Safety Code Section 113095. Defendants move to dismiss all claims against them on several grounds. For the foregoing reasons, I GRANT IN PART and DENY IN PART Defendants' motion.

## BACKGROUND

WellPet is a subsidiary of Berwind. Amended Complaint ("Am. Compl.") [Dkt. No. 33] ¶

29. WellPet manufactures, markets, and sells certain dog food products, including Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal ("CORE Ocean") and Wellness Complete Health Adult Dry Whitefish and Sweet Potato (collectively, the "Products"). *Id.* ¶ 2. The Products contain "material and significant levels of arsenic and lead," "known dangerous toxins for both humans and animals, including dogs." *Id.* The CORE Ocean product also contains "material and significant levels of BPA," "an industrial chemical that is an endocrine disruptor" and "has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems." *Id.* ¶ 15.

Plaintiffs allege that defendants knew or should have known of the presence of these contaminants, but the Products do not contain any warning label or disclose the presence of these contaminants. Am. Compl. ¶¶ 9, 38–39, 53. Instead, the Products' labels contain various health claims and promises, such as "Unrivaled Quality Standards," "Optimal Health" "with Nothing in Excess and Everything in Balance," and "natural, safe and pure." *Id.* ¶¶ 10–11, 20. Defendants' website also makes certain quality assurance representations. *Id.* ¶¶ 17–19.

Plaintiff Zeiger, a citizen of California, began purchasing the Products for his pet dog in or around October 2014, and continued to purchase them monthly until approximately July 2017 when he discovered that the food was contaminated. Am. Compl. ¶ 25. Zeiger alleges that he saw defendants' false and misleading nutritional claims and marketing materials, and relied on them in deciding to purchase the Products. *Id.* ¶¶ 25, 50–52. He was unaware that the Products contained any level of lead, arsenic, or BPA, and would not have purchased the Products if their presence had been disclosed. *Id.* ¶ 25.

Plaintiff Danz, a citizen of California, is a dog sitting business that used the Products as one of the primary foods for its clients' dogs. Am. Compl. ¶ 26. It purchased the Products approximately monthly from October 2014 to July 2017, when it discovered that the Products were contaminated. *Id.* It bought the Products in reliance on the false and misleading claims and marketing materials, and would not have purchased them had the presence of lead, arsenic, or BPA been disclosed. *Id.* ¶¶ 26, 50–52. Similarly, Freeborn is also a citizen of California, who purchased the Products approximately monthly from January 2010 to July 2017 when she too

2

discovered that the Products were contaminated. *Id.* ¶ 27. She alleges that in reliance on defendants' false and misleading claims and marketing materials, she was unaware that the Products contained any level of lead, arsenic, or BPA, and would not have purchased the Products had that been disclosed. *Id.* ¶¶ 27, 50–52.

Plaintiffs each allege that they were economically injured when they paid the purchase price or a price premium for the Products, assuming "that it was healthy, clean, and safe for dogs to ingest, as well as natural and pure." Am. Compl. ¶ 28. They would not have paid this money had they known of the presence of the contaminants. *Id.* They do not allege any physical injuries. They now bring suit individually and on behalf of two nationwide classes and two California subclasses, one for the Products collectively and another for CORE Ocean only, asserting several claims under California law.

## LEGAL STANDARD

### I.    Rule 12(b)(1): Subject Matter Jurisdiction

Under Federal Rule of Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1014 (N.D. Cal. 2017).

### II.    Rule 12(b)(2): Personal Jurisdiction

A district court must also dismiss any defendant over which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Absent an evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdictional facts. *Id.* Uncontroverted allegations in the pleadings must be taken as true. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). However, the court "may not assume the truth of allegations in a pleading which

are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

### III.    Rule 12(b)(6):  Failure to State a Claim

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

### IV.    Rule 9(b):  Heightened Pleading for Fraud Claims

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the

United States District Court
Northern District of California

circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

## DISCUSSION

### I. Whether Plaintiffs Have Standing to Bring Individual or Nationwide Class Claims

#### A. Defendants' Request for Judicial Notice

Defendants' standing arguments rely heavily on certain documents for which they request judicial notice. *See* Defs.' Request for Judicial Notice ("RJN") [Dkt. No. 24] Exs. C–F. These documents, available on the United States Food & Drug Administration's ("FDA") website, are: a June 2011 "Target Animal Safety Review Memorandum" (Exhibit C); a June 2014 "Updated safety assessment of Bisphenol A (BPA) for use in food contact applications" Memo (Exhibit D); "Questions & Answers on Bisphenol A (BPA) Use in Food Contact Applications" (Exhibit E); and "Questions and Answers on Lead in Foods" (Exhibit F). Defendants contend that the facts in these documents should be judicially noticed because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), and other cases have properly taken judicial notice of materials on government agency websites. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (taking judicial notice of FDA Guidance Document regarding food labeling and FDA response letter available on FDA's website). Plaintiffs argue that defendants offer these documents for the truth of their contents, which plaintiffs urge are subject to reasonable dispute and thus may not be judicially noticed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that while "a court may take judicial notice of matters of public record," it "may not take judicial notice of a fact that is subject to reasonable dispute") (internal quotation marks omitted); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017) (granting judicial notice of a

scientific report on dietary guidelines from a federal advisory committee, but not those "facts subject to reasonable dispute within the document").

I agree with plaintiffs that I may judicially notice the existence of these documents, but not their contents or the facts that plaintiffs show are the subject of reasonable dispute. The FDA documents are not regulations, guidelines, or even studies that conclusively establish that arsenic, lead, or BPA are safe at any level. Instead, the Target Animal Safety Review is a study that purports only to establish estimated maximum tolerable limits of certain metals in dog and cat food products in the absence of "FDA guidance, action levels, or tolerances." *See* RJN Ex. C, at 3, 8. It states that it was a re-evaluation undertaken in response to a prior study, the results of which the authors of this document believed were flawed. *See id.* at 6–7. The contents of the Target Animal Safety Review themselves are the result of a reasonable scientific dispute; plaintiffs provide further evidence that other professionals have disputed those conclusions. *See* Opp. to RJN at 2–3.

Exhibit D, the memorandum on BPA, is not specific to the dog or cat food context, nor does it establish that BPA is necessarily safe or an acceptable contaminant in pet food products. Instead, it affirms the "no observed adverse effect level" for BPA in general food contact applications. *See* RJN Ex. D, at 4. As plaintiffs show, however, these findings are hotly disputed by various sources. *See* Opp. to RJN at 3–4. Finally, Exhibits E and F appear even less authoritative, as they are not studies but simply Question and Answer documents on the FDA website that are not specific to dog or pet foods. While Exhibit E claims that BPA is safe, *see* RJN Ex. E, at 2, plaintiffs show that this contention is very much in dispute, *see* Opp. to RJN at 3–4. Exhibit F does not claim that lead is safe, and plaintiffs nonetheless show that the FDA's statements about lead in foods are subject to disagreement. *See id.* at 4–5.

For these reasons, I may take judicial notice of the existence of these documents, but not the truth of the facts asserted in them, as they are subject to reasonable dispute.[1]

---

[1] Defendants also seek judicial notice of three additional exhibits, which plaintiffs do not oppose. *See* RJN Exs. A, B, & G. Because Exhibits A and B, the Products' labels, are incorporated by reference in the Amended Complaint and form the basis of plaintiffs' claims, I take judicial notice of them. I also take judicial notice of Exhibit G, a July 19, 2017 letter concerning notice of a

### B.  Whether Plaintiffs Allege a Cognizable Injury

Defendants challenge all three of named plaintiffs' standing to bring their claims. Standing addresses the constitutional requirement that a plaintiff allege a case or controversy, which at an "irreducible minimum," requires three elements: "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992).  Defendants argue that plaintiffs cannot show any cognizable injury, because they cannot establish that defendants' Products contain unsafe amounts of arsenic, lead, or BPA.  Defendants' arguments largely go to the merit of plaintiffs' claims, and not their standing to bring those claims.

A "quintessential injury-in-fact" occurs when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).  This is precisely what plaintiffs do here.  *See* Am. Compl. ¶¶ 25–27 (describing that each individual plaintiff "was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or BPA and would not have purchased the food if that was fully disclosed").  Plaintiffs' claims are premised on their allegations that were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their Products, plaintiffs would not have purchased and spent money on their Products.  Similar allegations in the food mislabeling context have repeatedly been held sufficient to establish an economic injury for purposes of both constitutional and statutory standing.  *See, e.g.*, *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961–62 (N.D. Cal. 2013) (accepting plaintiff's allegations that he would not have purchased misbranded fruit products absent defendants' representations sufficient for conferring standing, even where plaintiff did not allege physical harm); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) ("[The Ninth Circuit] held that evidence that plaintiffs would not have purchased a product if the product had been labeled accurately is sufficient to establish injury under California's consumer laws."); *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-cv-04291-SI, 2016 WL 4382544, at *4 (N.D. Cal. Aug. 17, 2016) (accepting, for

CLRA claim from plaintiffs' counsel to defendants, because the parties agree that its contents are not subject to reasonable dispute.

purposes of statutory standing under the UCL and CLRA, plaintiffs' allegations that they did not know that the ingredient "evaporated cane juice" was sugar, and would not have purchased defendants' products if they had known).

Defendants rely on *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012), which held that because plaintiffs did not and could not allege that the fruit juice product at issue violated the FDA's guidelines with respect to its arsenic and lead contents, they could not establish standing. *See id.* *4–7. This case is distinguishable for the simple reason that the FDA has not promulgated guidelines with respect to safe or acceptable levels of arsenic and lead in dog foods. Even if I were to consider the contents of the judicially noticed documents on which defendants rely, those documents do not establish the safety of arsenic, lead, or BPA, but instead at best suggest only estimated maximum tolerable limits of certain metals. *See* RJN Ex. C, at 9. Second, plaintiffs' claims in this matter are not solely based on the theory that defendants' Products are unsafe due to the presence of arsenic, lead, and BPA, but also that those products omit on their labeling their presence altogether.

Finally, defendants separately argue that Danz lacks standing because it also fails to allege an injury, but defendants do not explain nor do they cite any legal authority establishing why Danz, as a business entity, should be treated differently than the individual plaintiffs for standing purposes. Danz alleges that it too purchased the Products but would not have done so absent defendants' alleged misrepresentations. *See* Am. Compl. ¶ 26. As already discussed, these allegations are sufficient to establish an economic injury for purposes of standing. For these reasons, I find that named plaintiffs have alleged a cognizable injury for purposes of standing.

### C. Whether Plaintiffs Have Standing to Represent Non-California Residents

Defendants also argue that plaintiffs' nationwide class allegations must be dismissed, because plaintiffs, all of whom are citizens of the state of California, lack standing to represent non-California residents. Plaintiffs contend that the scope of their class should be determined at the class certification stage, rather than the motion to dismiss stage. While there is no hard and fast rule, I agree with defendants that this inquiry may be addressed at the pleadings stage, and that plaintiffs may not maintain nationwide class allegations at this time.

Although the Ninth Circuit has yet to address this specific issue, in *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 587 (9th Cir. 2012), it reversed the district court's certification of a national class after concluding that, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594. Following *Mazza*, I have agreed with my colleagues in this district that "[i]n analogous cases, *Mazza* is not only relevant but controlling, even at the pleading stage." *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016); *see also Johnson v. Nissan N. Am., Inc.*, No. 17-cv-00517-WHO, 2017 WL 4570712, at *3 (N.D. Cal. Aug. 29, 2017). Accordingly, in both *Cover* and *Johnson*, I conducted the choice of law analysis at the pleadings stage rather than the class certification stage, and concluded that the named plaintiffs in those cases could not assert state law claims under state laws they did not represent. *Cover*, 2016 WL 520991, at *5–8; *Johnson*, 2017 WL 4570712, at *3–4.

As in those two cases, I again opt to address this inquiry at the pleadings stage rather than at class certification. Plaintiffs are all residents of California, but purport to represent a nationwide class, creating the significant burden of nationwide discovery. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) ("The Court has reservations of subjecting the [defendant] to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws."). Moreover, while plaintiffs argue that they need discovery in order to find out "where Defendants operate their manufacturing plants, whether they have any offices in California, where they sell the Contaminated Products, and how they create and distribute their California advertising," Opp. at 11, I see no reason that they should be precluded from requesting such materials in discovery based on their California claims. For these reasons, I agree with defendants that without named representatives from any other states, plaintiffs' nationwide class allegations must be DISMISSED.

## II.     Whether This Court Has Personal Jurisdiction over Defendants

Defendants also move to dismiss on the grounds that this Court lacks personal jurisdiction

over them. In assessing personal jurisdiction where there is no applicable federal statute, a district court applies the law of the forum state. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto*, 539 F.3d at 1015.

Due process requires that a nonresident defendant "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "[T]he nature and quality of contacts necessary to support jurisdiction depends on the type of jurisdiction asserted," whether general or specific. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). General jurisdiction exists where a defendant's activities are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

In the absence of general jurisdiction, a nonresident may only be subject to suit in the forum state if specific jurisdiction exists. "In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). The Ninth Circuit carries three requirements in order to exercise specific jurisdiction: "(1) the defendant either purposefully direct[s] its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it [is] reasonable." *Id.* at 1023.

The parties appear to agree that I may not exercise general jurisdiction over either WellPet or Berwind, but that I may exercise specific jurisdiction over WellPet. They dispute whether there is specific jurisdiction over Berwind, and whether there is specific jurisdiction over either defendant regarding the out-of-state claims. Because I have already dismissed the nationwide allegations, I address only whether I may exercise specific jurisdiction over Berwind.

10

Plaintiffs must make a prima facie showing of jurisdictional facts giving rise to specific jurisdiction over each defendant separately. *See, e.g.*, *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("Regardless of their joint liability, jurisdiction over each defendant must be established individually."); *Skurkis v. Montelongo*, No. 16-cv-0972 YGR, 2016 WL 4719271, at *4 (N.D. Cal. Sept. 9, 2016) ("Th[e personal jurisdiction] inquiry requires an analysis of each defendant's contacts in light of plaintiffs' claims. Here, the jurisdictional allegations of the FAC group all defendants together.") (internal citation omitted); *Parnell Pharm., Inc. v. Parnell, Inc.*, No. 5:14-cv-03158-EJD, 2015 WL 5728396, at *4 (N.D. Cal. Sept. 30, 2015) ("[P]ersonal jurisdiction must be established as to each individual Defendant."). Moreover, "[i]t is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003).

Here, plaintiffs fail to make any specific factual allegations regarding Berwind in their Amended Complaint, and instead make only general allegations that group defendants together. Plaintiffs ask the Court to infer from their general allegations "that **both** defendants, Berwind and WellPet, supervised the design, manufacture, and marketing of the dog food." Opp. at 10 (emphasis in original). But it is plaintiffs' burden to make a prima facie showing of these jurisdictional facts with regards to each individual defendant. Moreover, this inference is controverted by defendants' affidavits that the Products' labels identify WellPet alone in any capacity on the Products. *See* Defs.' Request for Judicial Notice, Exs. A & B. Instead, the only Berwind-specific allegations that plaintiffs make are that Berwind has brought suit in California, and apparently has California-based employees. *See* Opp. at 9; Paterson Decl. [Dkt. No. 51] Exs. 5 & 6. These general allegations are wholly unrelated to the present litigation and cannot give rise to specific jurisdiction here. For these reasons, I agree with defendants that I may not exercise personal jurisdiction over Berwind, and Berwind therefore must be DISMISSED. The sufficiency of plaintiffs' allegations will thus be evaluated with respect to WellPet only.

**III.** **Whether Plaintiffs Plead Plausible Fraud Claims Pursuant to Rule 9(b)**

**A. Whether Plaintiffs Satisfy Rule 9(b)'s Heightened Pleading Standard**

WellPet next moves to dismiss plaintiffs' fraud and consumer protection claims grounded in fraud because they do not satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs argue that they have provided the necessary "who," "when," "what," "where," and "how" to survive Rule 9(b). The Amended Complaint clearly names each plaintiff and defendant (the "who"), and alleges when each plaintiff began purchasing the Products, how frequently, and when they stopped (the "when"). *See* Am. Compl. ¶¶ 25–27. Plaintiffs describe from where they each purchased the Products, as well as the specific products and package labels at issue (the "where"). *See id.* ¶¶ 10–11, 16, 30. They also describe and provide photographs of the claims on WellPet's products and website that they contend are false or misleading (the "what"). *See id.* ¶¶ 10–11, 16–21. Finally, they describe why these claims are false or misleading due to the presence of the contaminants arsenic, lead, and BPA, which is undisclosed by WellPet, and allege that plaintiffs would not have purchased WellPet's Products had they known of the presence of those contaminants (the "how"). *See id.* ¶¶ 10, 12–13, 20–21, 25–29.

These allegations are similar to those in *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013). In that case, the Hon. Jon S. Tigar concluded that the allegations in the complaint satisfied Rule 9(b) where it stated

> that the "who" is Bromley Tea Company and other defendants; the "what" is nine discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of its products, including Pure Green Tea and 100% Organic Pure Black Tea, as well as on its website; the "when" is since 2008 and throughout the class period; the "where" is Bromley's package labels and website. The [complaint] alleges that Defendant's product labels and website were in violation of the Sherman Law, and that Plaintiff reasonably relied on those statements to purchase products he would not have purchased absent these allegedly deceptive statements, satisfying the requirement to demonstrate "how" the statements were misleading.

*Id.* at 576; *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010). As in *Clancy*, plaintiffs have fulfilled their burden to describe with particularity the circumstances giving rise to their claims sufficiently to allow WellPet to defend against those claims.

While WellPet claims that Zeiger's allegations fall short for "offer[ing] no hint as to what those [nutritional] claims" he relied on were, the allegations in the complaint clearly identify the

nutritional claims at issue. *See* Am. Compl. ¶¶ 10–11, 16–19. Nor are Zeiger's allegations regarding when he purchased the Products—"in or around October 2014" and monthly "until approximately July 2017," *id.* ¶ 25—like those in *Grimm v. APN, Inc.*, No. 8:17-cv-00356, 2017 WL 6398148 (C.D. Cal. Aug. 31, 2017), in which the plaintiff stated only that she purchased the product at issue "monthly starting in 2016," without alleging what month or when she stopped making such purchases. *Id.* at *6. WellPet's contention that both Zeiger and Danz's allegations that they only purchased one small bag per month is "unreal" because such a bag would only feed a Chihuahua, Mot. at 17, is inapposite. How much of the Products they purchased or whether they fed exclusively the Products to their dogs is irrelevant to claims that the Products' labels are false or misleading. Moreover, the Amended Complaint is most reasonably read to infer that when Freeborn states that she "started purchasing the Contaminated Dog Foods in or around January 2010 and fed it to her [dogs]," and "generally purchased one 40 to 60 pound bag of dog food per month," she is referring to the Products at issue. Am. Compl. ¶ 27.

WellPet fixates on plaintiffs' allegation that the CORE product "contains a significant level of BPA of approximately 58.5 ppb," Am. Compl. ¶ 20, and contends that this is impermissibly vague because plaintiffs do not allege how they came up with this figure. Yet WellPet cites to no legal authority suggesting that plaintiffs' claims must fail for failure to provide background information on this figure in the complaint, nor does WellPet need such information at the pleadings stage in order to defend against plaintiffs' claims, since it must be accepted as true. Plaintiffs allegations are sufficient to put WellPet on notice of the circumstances giving rise to their claims, and as such, satisfy Rule 9(b).

### B. Whether Plaintiffs Allege Misrepresentations Sufficient to Support their Negligent Misrepresentation, CLRA, FAL, and UCL Claims

WellPet also moves to dismiss plaintiffs' misrepresentation claims on the grounds that they do not sufficiently plead either express representations or omissions. The CLRA and FAL prohibit false or misleading advertising, *see* Cal. Bus. & Prof. Code § 17500; Cal. Civ. Code § 1770(a), and the UCL creates a cause of action for business practices that are unlawful, unfair, or fraudulent, *see* Cal. Bus. & Prof. Code § 17200. "Generally, a violation of the FAL or the CLRA

is also a violation of the fraudulent prong of the UCL." *See Hadley*, 243 F. Supp. 3d at 1089.

Under the CLRA, FAL, and fraudulent prong of the UCL, conduct is deceptive or misleading if it

is "likely to deceive a reasonable consumer." *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th

Cir. 2008). The reasonable consumer standard requires that plaintiffs "show that members of the

public are likely to be deceived." *Id.* (internal quotation marks omitted). The California Supreme

Court has recognized that "these laws prohibit not only advertising which is false, but also

advertising which[,] although true, is either actually misleading or which has a capacity, likelihood

or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).

## 1. Whether WellPet's Express Representations Are Either Truthful Statements or Subjective Opinions

WellPet first argues that plaintiffs only identify affirmative misrepresentations that are

either non-actionable truthful statements or subjective opinions. *See McKinney v. Google, Inc.*,

No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2011) ("Although

[m]isdescriptions of specific or absolute characteristics of a product are actionable, [g]eneralized,

vague, and unspecified assertions constitute mere puffery upon which a reasonable consumer

could not rely, and hence are not actionable.") (internal quotation marks and citations omitted).

Plaintiffs, on the other hand, point to WellPet's alleged misrepresentations, including:

- "Natural Food for Adult Dogs," Am. Compl. ¶ 16;
- "We require all suppliers to meet stringent requirements and adhere to the highest standards, exceeding even the strictest requirements from the FDA," *id.* ¶ 18;
- "During production, rigorous standards and practices are put in place to protect the nutritional integrity of our food . . . . In our zeal to provide you with only the highest-quality pet food, we take extra precautions to make sure ingredients are stored properly, temperatures are monitored and products are routinely tested . . . . Our food is carefully handled, carefully prepared and undoubtedly safe," *id.* ¶ 19; and
- "At Wellness, your pet's health is at the core of all we do. That's why we have developed an extensive quality assurance program, guaranteeing that all of our products are safe, pure and balanced," *id.* ¶ 42.

While WellPet argues that "describing a product in positive terms is not actionable," Mot. at 19–

20, courts have allowed actions against similar statements concerning safety and quality

assurances. *See, e.g.*, *Williams*, 552 F.3d at 939 (reversing the district court's dismissal of a case

alleging that fruit juice's "all natural" and "nutritious" claims were misleading); *Anunziato v.*

*eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (finding the phrase "most stringent

quality control tests" was actionable and not mere puffery). WellPet's claim that their food is

"undoubtedly safe," or "safe" and "pure," for example, is neither objectively true, according to

plaintiffs, nor a subjective opinion about the Products. These are measurable claims that plaintiffs

indeed seek to prove are false through this very suit. Plaintiffs thus sufficiently point to express

mirepresentations in their Amended Complaint.

### 2. Whether Plaintiffs Plead a Concealment or Omission Claim

WellPet also argues that plaintiffs fail to plead a concealment or omissions claim because

they do not plead that WellPet knew the facts it allegedly failed to disclose. Plaintiffs point to

their allegations that because WellPet made claims that their Products were made up of

"Uncompromising Nutrition" "that ha[ve] nothing in excess" and "Unrivaled Quality Standards,"

"Defendants knew or should have known that the Contaminated Dog Foods included concerning

and higher levels of arsenic and lead." Am. Compl. ¶ 38. Likewise, because they marketed

CORE Ocean as "natural, safe, and pure," and represented "that the quality control over the

manufacturing of their Wellness dog food products was a rigid process that monitored

temperature," "Defendants knew or should have known that higher temperatures coupled with the

type of containers used in manufacturing create a real risk of significant levels of BPA in their

products." *Id.* ¶ 39. These are not merely conclusory allegations, but provide the basis for

plaintiffs' theory of WellPet's knowledge that they should have known of the presence of

contaminants in their Products based on their affirmative representations. Finally, plaintiffs allege

that "Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the

Contaminated Dog Foods." *Id.* ¶ 53. While I agree that plaintiffs' allegation that "Defendants

were put on notice by the Clean Label Project of the inclusion of heavy metals in its dog food

products," *id.*, is too vague because it does not explain what the Clean Label Project is or why its

existence is sufficient to put WellPet on notice, the other allegations in the Amended Complaint

are nonetheless pleaded with reasonable particularity and can sustain an omission-based claim.

### 3. Whether Plaintiffs Properly Allege the Products Are Misleading

WellPet's final theory as to why plaintiffs' misrepresentation allegations are insufficient is

that plaintiffs do not allege that the Products are misleading beyond a merely speculative level. Put another way, WellPet argues that plaintiffs have not satisfied the "reasonable consumer standard," which requires that they "show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938. Plaintiffs premise their claims on the theory that WellPet's Products' labels are misleading because they fail to disclose that they contain arsenic, lead, or BPA, all the while claiming that they are healthy, safe, pure, and/or natural. While WellPet claims that plaintiffs cannot establish that the levels of arsenic, lead, or BPA in their foods are unsafe or unhealthy for dogs, that issue is in dispute and is inappropriate for resolution on a motion to dismiss. Likewise, plaintiffs' allegation that a reasonable consumer would understand "natural, safe and pure" to mean that CORE Ocean did not contain the chemical BPA is plausible. Plaintiffs have provided an actionable theory why the Products are unsafe and why the labels are misleading; whether plaintiffs can prove their theory is a separate question that I cannot resolve at this stage.

## C. Whether Plaintiffs Sufficiently Allege Claims Under the UCL's "Unfair" or "Unlawful" Prongs

WellPet also moves to dismiss plaintiffs' claims under the "unfair" and "unlawful" prongs of the UCL on the grounds that plaintiffs have failed to state with reasonable particularity that WellPet has violated any law or public policy, as required by these prongs. Plaintiffs have, however, stated claims for violations of the CLRA and FAL, so these claims may serve as predicate violations for a claim under the UCL's "unlawful" prong. With respect to the "unfair" prong, plaintiffs argue that they need not show that WellPet's conduct violated any public policy, but instead only that it is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." Opp. at 17 (citing *Nagrampa v. MailCoups, Inc.*, No. C03-00208 MJJ, 2007 WL 2221028, at *2 (N.D. Cal. July 30, 2007)). While California law is unclear on how exactly to define unfairness in the consumer fraud context, the Ninth Circuit has instructed that the court must "balanc[e] the harm to the consumer against the utility of the defendant's practice." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007) (citing *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 885

16

(1999)). Assuming the truth of plaintiffs' allegations, I cannot conclude as a matter of law that defendants' allegedly misleading and deceptive labeling practices are not unfair, as the harm to the consumer outweighs the utility of this practice. For these reasons, plaintiffs have successfully stated claims under both the "unlawful" and "unfair" prongs of the UCL.

## IV.     Whether Plaintiffs Plead Breach of Warranty Claims

### A.  Whether Plaintiffs Plead an Express Warranty Claim

In order to plead a breach of express warranty claim, plaintiffs must allege facts sufficient to show that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 965–66 (N.D. Cal. 2017) (citing *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 1227, 103 Cal.Rptr.3d 614 (2010)). Judges in this district have found that statements on a food label can create an express warranty. *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 913 F.Supp.2d 881, 899–90 (N.D. Cal. 2012) (interpreting "Pure, Natural & Organic" label on cosmetic products as express warranty); *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (interpreting "All Natural" label on potatoes as express warranty that they did not have artificial ingredients). In the present case, plaintiffs several express claims on WellPet's labels that they allege constitute express warranties, including the promises of "Unrivaled Quality Standards," and Products that are "natural, safe and pure." Am. Compl. ¶ 10, 21. These claims are sufficient under California law to constitute express warranties.

WellPet contends that even if its claims can be interpreted as express warranties, plaintiffs cannot show any breach of such warranties because WellPet's Products are safe. As previously discussed, however, the safety of the Products is a central issue in this litigation and is far from conclusively established. I must take plaintiffs' allegations as true that the levels of arsenic, lead, and BPA in the Products are unsafe, and for these reasons, I DENY WellPet's motion to dismiss plaintiffs' breach of express warranty claim.

### B.  Whether Plaintiffs Plead an Implied Warranty Claim

WellPet moves to dismiss plaintiffs' implied warranty claim on the grounds that plaintiffs

lack privity with WellPet, and that plaintiffs fail to allege that the Products are not fit for their ordinary purpose. WellPet is correct that California law requires that consumers stand in vertical privity with a manufacturer in order to bring an implied warranty claim under California Commercial Code Section 2314. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("[A] plaintiff asserting breach of implied warranty claims must stand in vertical contractual privity with the defendant."). Plaintiffs do not dispute that they lack privity with WellPet, but instead argue that privity is not required "when the plaintiff relies on written labels or advertisements of a manufacturer." *Id.* (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)). The Ninth Circuit, however, cited the California Supreme Court case, *Burr v. Sherwin Williams Co.*, for this proposition. That case did *not* recognize an exception to privity in implied warranty claims, but instead stated that a "possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity." 42 Cal. 2d at 696. *Burr* thus clarifies that "where representations are made by means of label or advertisements," the exception to privity is "applicable only to express warranties" and not implied ones. *Id.*

Plaintiffs next contend that there is no privity requirement where plaintiffs are the intended third-party beneficiaries of an implied warranty. "Not all courts, however, have recognized the third-party beneficiary exception." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014). Those that do typically cite *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978), in support. In that case, a California appellate court allowed the owner of a building to bring an implied warranty claim against a subcontractor who installed a leaky roof in the absence of privity because the owner was an intended third-party beneficiary of the contract between the owner's general contractor and the subcontractor. *See id.* at 67, 69. In *Clemens*, however, the Ninth Circuit dealt with an implied warranty claim arising under California law in the context of a products liability action. *See* 534 F.3d at 1023–24. While the Ninth Circuit acknowledged that certain exceptions to privity apply in specific contexts, it rejected plaintiff's argument that "similar equities support[ed] an exception" in that case, and "decline[d] this

18

1   invitation to create a new exception that would permit [plaintiff's] action to proceed." *Id.* The

2   *Clemens* opinion thus does not recognize any third-party beneficiary exception.

3       Courts in this district are split on how to reconcile these two cases. While WellPet is

4   correct that certain judges in this district have read *Clemens* to bar the third-party beneficiary

5   exception, *see In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017), others

6   have rejected that either California law or Ninth Circuit precedent explicitly forecloses it, *see In re*

7   *MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 983–84. In *Seagate*, Magistrate Judge Spero

8   distinguished *Gilbert* because it did not arise in the products liability context, and instead followed

9   *Clemens*, all the while recognizing that "[a]lthough the privity requirement in this context may

10  well be an 'archaism,'" it is nonetheless a rule "'painstakingly established' by the state courts."

11  233 F. Supp. 3d at 787 (citing *Clemens*, 534 F.3d at 1024). In *MyFord Touch*, on the other hand,

12  Judge Chen reasoned that *Clemens* did not explicitly address the third-party beneficiary exception,

13  nor was it clear whether the plaintiff argued for its application. *See* 46 F. Supp. 3d at 984. The

14  *Clemens* opinion did not critique or even address *Gilbert*. *Id.* Judge Chen thus concluded that

15  "[i]n light of *Gilbert* and the lack of a clear holding to the contrary in *Clemens*," "the third-party

16  beneficiary exception remains viable under California law." *Id.*

17      I agree with Judge Chen's analysis of the *Clemens* opinion. Given that *Clemens* did not

18  directly address the third-party beneficiary exception, nor did it address *Gilbert*, it need not be

19  read to foreclose the third-party beneficiary exception to privity under California law. Because

20  *Gilbert* provides the authority for plaintiffs to plead the third-party beneficiary exception, I will

21  allow them to proceed on their implied warranty claim in the absence of privity.

22      WellPet argues that plaintiffs' claim must nonetheless fail because plaintiffs have not

23  adequately alleged that the Products are not fit for their ordinary purpose. Plaintiffs, however,

24  proceed under the theory that WellPet's Products are not merchantable because they fail to

25  "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal.

26  Comm. Code § 2314(2)(f); *see also Hauter v. Zogarts*, 14 Cal. 3d 104, 117–18 (1975)

27  ("Merchantability has several meanings . . . [including that] the product must conform to the

28  promises or affirmations of fact made on the container or label.") (internal quotation marks and

alterations omitted). Plaintiffs adequately allege that WellPet made certain affirmations of fact on its Products, including that they were "pure," "safe," or "natural," but that WellPet's Products failed to conform to these affirmations because they contained arsenic, lead, and/or BPA. *See* Am. Compl. ¶¶ 122–25. For these reasons, I DENY WellPet's motion to dismiss plaintiffs' implied warranty claim.

## V.     Whether Plaintiffs Have a Private Right of Action Under Cal. Health & Safety Code Section 113095

WellPet moves to dismiss plaintiffs' claim for violation of California Health & Safety Code Section 113095 on the grounds that they have no private right of action under that statute. Plaintiffs argue that because other provisions of the Health & Safety Code explicitly bar a private right of action or vest the power to pursue civil or administrative actions exclusively with the state, *see* Cal. Health & Safety Code § 110597, I should not infer that such a right is barred in this provision. The statute specifies that it "shall be administered by the department," however, which "may bring an action" for "temporary or permanent injunction restraining any person from violating" the chapter, Cal. Health & Safety Code § 113085, and provides for criminal penalties, *see* Cal. Health & Safety Code § 113080. Furthermore, plaintiffs have not pointed to a single example of a case that allowed a private right of action under this section to proceed. For these reasons, I agree with WellPet that Section 113095 confers no private right of action, and I therefore GRANT WellPet's motion to dismiss this claim.

## VI.    Whether Plaintiffs' Claims for Damages and Restitution Under the CLRA Should Be Dismissed for Failure to Comply with the CLRA's Mandatory Notice Requirement

WellPet's final argument is that plaintiffs' CLRA claim must be dismissed for failure to comply with the CLRA's mandatory notice requirement, as required by California Civil Code Section 1782(a). Section 1782 requires that a plaintiff provide "thirty days or more prior to the commencement of an action for damages." Cal. Civ. Code § 1782(a). It further states that "[a]n action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)," and explicitly allows a plaintiff to "amend

20

his or her complaint without leave of court to include a request for damages" "[n]ot less than 30 days after the commencement of an action for injunctive relief." Cal. Civ. Code § 1782(d).

Plaintiffs have plainly complied with this provision. Their original complaint sought only injunctive relief and attorney's fees in connection with the CLRA claim, *see* Compl. ¶¶ 75–76, neither of which constitute damages for purposes of Section 1782(a). Plaintiffs then provided notice to Defendants on July 19, 2017 of their intent to file a CLRA claim for damages, *see* RJN Ex. G, which plaintiffs filed more than 30 days later on October 26, 2017. *See* Am. Compl. WellPet's motion to dismiss the CLRA claim for damages is DENIED.

## CONCLUSION

For these reasons, I GRANT IN PART and DENY IN PART defendants' Motion to Dismiss. Defendant Berwind is dismissed for lack of personal jurisdiction, and plaintiffs' Count VII for violation of California Health and Safety Code Section 113095 is dismissed for lack of a private right of action. While plaintiffs may not proceed on their nationwide class claims, named plaintiffs' remaining claims may proceed.

**IT IS SO ORDERED.**

Dated: January 17, 2018

William H. Orrick
United States District Judge