ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
KEVIN A. SEELY (199982)
ASHLEY R. RIFKIN (246602)
STEVEN M. MCKANY (271405)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        kseely@robbinsarroyo.com
        arifkin@robbinsarroyo.com
        smckany@robbinsarroyo.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
        rkshelquist@locklaw.com

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER and DANZ DOGGIE DAYTRIPS, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>    v.<br><br>WELLPET LLC, a Delaware corporation,<br><br>                              Defendant. | Case No. 3:17-CV-04056-WHO<br><br>SECOND AMENDED CLASS ACTION COMPLAINT FOR:<br><br>(1) NEGLIGENT MISREPRESENTATION;<br>(2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br>(3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW;<br>(4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(5) BREACH OF EXPRESS WARRANTY; AND<br>(6) BREACH OF IMPLIED WARRANTY;<br><br>DEMAND FOR JURY TRIAL |

1.      Plaintiffs Daniel Zeiger and Danz Doggie Daytrips  ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, as and for this Second Amended Class Action Complaint against defendant WellPet LLC ("Defendant"), for its negligent, reckless, and/or intentional practice misrepresenting and failing to fully disclose the presence of dangerous substances and chemicals in its pet food sold throughout the United States. Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances in its marketing, advertising, and labeling and restoring monies to the members of the proposed Class.  Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel, including independent testing of the products, and as to all other matters, upon information and belief (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

**THE DANGEROUS MAKE-UP OF DEFENDANT'S DOG FOOD**

2.      Defendant manufactures, markets, advertises, labels, distributes, and sells Wellness® CORE® Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal ("CORE Ocean"); Wellness® Complete Health Adult Dry Whitefish and Sweet Potato ("Complete Health Whitefish and Sweet Potato"); and Wellness® Complete Health Adult Grain Free Whitefish and Menhaden Fish Meal ("Complete Health Whitefish and Menhaden"), (collectively the "Contaminated Dog Foods").[1]  The Contaminated Dog Foods contain material and significant levels of arsenic and lead—both known dangerous toxins for both humans and animals, including dogs.  Some foods, like rice and sweet potato, have been determined to absorb arsenic in water during cooking and therefore increase exposure.

3.      Inorganic arsenic is a ***known human carcinogen.***  It can contribute to cancers, heart disease, diabetes, declines in intellectual function, and can decrease a body's ability to respond to

---

[1] Discovery may reveal additional products that also contain unsafe levels of heavy metals and/or BPA and Plaintiffs reserve their right to include any such products in this action.

SECOND AMENDED CLASS ACTION COMPLAINT

viruses.  The organic form of arsenic—the form found in arsenic-containing compounds—has been shown in recent studies to easily convert to inorganic arsenic.

4.       Based on the risks associated with exposure to high levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb").  For the FDA, the 10 ppb level regulates apple juice and for the EPA it governs drinking water.[2]

5.       Moreover, the FDA is considering limiting the action level for arsenic in rice to 100 ppb:

> The action level for inorganic arsenic in infant rice cereals that FDA considers achievable with the use of such practices is 100 μ g/kg or 100 ppb (see Ref. 14)….  The proposed action level for inorganic arsenic in infant rice cereals is intended to reduce the possible risk for infants fed rice cereal by reducing exposure to inorganic arsenic that may be found in rice cereal for infants.  FDA considers this reduction in exposure to infants fed rice cereal will lead to a quantifiable reduction in the lifetime risk of certain cancers associated with exposure to inorganic arsenic, as well as an unquantifiable reduction in the risk of certain non-cancer adverse health outcomes reviewed in the risk assessment, including neurodevelopmental effects in infants.[3]

6.       The Contaminated Dog Foods also contain material and significant levels of lead, which is another carcinogen and developmental toxin known to cause health problems to consumers.  Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[2] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers. *See, e.g.*, Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters/2016/ucm506526.htm.

[3] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

7.      Despite the known risks of arsenic and lead exposure, Defendant has negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods despite containing alarming levels of arsenic and lead.  Plaintiffs' testing of the Contaminated Dog Foods showed that CORE Ocean consistently contained over 1,000 ppb of arsenic and close to 200 ppb of lead; Complete Health Whitefish and Sweet Potato consistently contained over 1,000 ppb of arsenic and over 200 ppb of lead; and Complete Health Whitefish and Menhaden also contained more than 1,400 ppb of arsenic and approximately  200 ppb of lead.

8.      Additionally, Defendant knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods multiple times each day to his or her dog being the main, if not only, source of food for the dog.  This leads to repeated exposure of the toxins to the dog.

9.      Defendant has wrongfully advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that these products contain arsenic or lead, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur.

10.      Defendant's omissions are not only material but also false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendant to market the Contaminated Dog Foods as healthy and safe to induce consumers, such as Plaintiffs, to purchase the products.  For instance, not only did Defendant choose a brand name for its dog food, "Wellness," that in itself suggests a healthy product, it markets the Contaminated Dog Foods by promising "Uncompromising Nutrition" and "Unrivaled Quality Standards":

SECOND AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8



9    11.    Moreover, the Contaminated Dog Foods declare themselves as offering complete

10   health and nothing in excess:

11

12

13

14

15

16

17

18



19

20

21

22

23

24

25

26

27

28



SECOND AMENDED CLASS ACTION COMPLAINT

12.     Using such descriptions and promises makes Defendant's advertising campaign deceptive based on the unsafe and alarming levels of arsenic and lead in the Contaminated Dog Foods.  Defendant's statements, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy and safe.  Moreover, Defendant knew or should have reasonably expected that the presence of arsenic and lead in its Contaminated Dog Foods is something an average consumer would consider in purchasing dog food.  Thus, Defendant's omissions are false, misleading, and reasonably likely to deceive the public.

13.     Moreover, reasonable consumers, such as Plaintiffs and other members of the Class (as defined herein), would have no reason to not expect and anticipate that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess as promised by Defendant.  Non-disclosure and concealment of the toxins in the Contaminated Dog Foods coupled with the partial disclosures and/or misrepresentations that the food provides complete health and is safe by Defendant is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and Class members would not have bought if the true quality and ingredients were disclosed.  As a result of these false statements, omissions, and concealment, Defendant has generated substantial sales of the Contaminated Dog Foods.

14.     Plaintiffs bring this action individually and on behalf of all other similarly situated consumers within the California who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of material and significant levels of arsenic and lead in the Contaminated Dog Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

### THE PRESENCE OF BISPHENOL A ("BPA") IN THE CONTAMINATED DOG FOODS

15.     Moreover, both CORE Ocean and Complete Health Whitefish and Sweet Potato contain material and significant levels of BPA—an industrial chemical that "is an endocrine disruptor. It's an industrial chemical that according to Medical News Today '… interferes with the

1  production, secretion, transport, action, function and elimination of natural hormones.'"[4]  BPA has

2  been linked to various health issues, including reproductive disorders, heart disease, diabetes,

3  cancer, and neurological problems.[5]

4       16.    Despite the presence of this harmful chemical, Defendant prominently warranted,

5  claimed, featured, represented, advertised, or otherwise marketed that CORE Ocean and Complete

6  Health Whitefish and Sweet Potato "natural."  Indeed, each bag states on the front in two different

7  places that they are "natural food":







25  [4]Dr. Karen Beeker, *A Major Heads Up: Don't Feed This to Your Dog,* Healthy Pets (Feb. 13,
26  2017),   https://healthypets.mercola.com/sites/healthypets/archive/2017/02/13/dogs-canned-food-
    dangers.aspx.

27  [5] Christian Nordquist, *Bisphenol A: How Does It Affect Our Health?* Medical News Today (May
28  24, 2017), https://www.medicalnewstoday.com/articles/221205.php.

SECOND AMENDED CLASS ACTION COMPLAINT

17.     Defendant's website also warrants, claims, features, represents, advertises, or otherwise markets that its products, including  CORE Ocean and Complete Health Whitefish and Sweet Potato, are natural. In fact, WellPet's motto according to the  website is "WellPet – The Healthiest Natural Products For Pets:"





18.     In promoting its promise, warranty, claim, representation, advertisement, or otherwise marketing that  CORE Ocean and Complete Health Whitefish and Sweet Potato are safe and pure,  Defendant further assures that:

SECOND AMENDED CLASS ACTION COMPLAINT

1   Our mission is to provide you with ***wholesome, natural pet food that is the best it can be.***

2   Nothing is overlooked in our quest for excellence. We require all suppliers to meet stringent

3   requirements and adhere to the highest standards, ***exceeding even the strictest***

4   ***requirements from the FDA.*** We are determined to go further, to do better and to take as

5   many precautions with our pet food, as is taken with food for humans. ***Because at***

6   ***Wellness, we are passionate about providing your pet with safe, uncompromising***

7   ***nutrition.[6]***

8        19.    To this end,  Defendant's website further warrants, claims, features, represents,

9   advertises, or otherwise markets that its products, including  CORE Ocean and Complete Health

10  Whitefish and Sweet Potato, are manufactured in such a way that would prevent BPA forming by

11  closely monitoring temperatures and quality:[7]

12

13  ### Unsurpassed Food Safety Programs

14  During production, rigorous standards and practices are put in place to protect the nutritional integrity of our food. Our

15  processing plant is meticulously sanitized in order to control bacterial growth or pest infestation. In our zeal to provide you

16  with only the highest-quality pet food, we take extra precautions to make sure ingredients are stored properly, temperatures

17  are monitored and products are routinely tested. We believe these measures are absolutely essential to producing the finest

    pet food that can nourish and energize your pet to the core. Our food is carefully handled, carefully prepared and

    undoubtedly safe.

18       20.    Thus, Defendant engaged in deceptive advertising and labeling practice by

19  expressly warranting, claiming, stating, featuring, representing, advertising, or otherwise

20  marketing on the Contaminated Dog Foods' labels and related websites that  the Contaminated

21  Dog Foods are "natural, safe  and pure" when both CORE Ocean and Complete Health Whitefish

22  and Sweet Potato contain significant levels of BPA. Indeed, recent testing has confirmed each

23  contained over  130 ppb of BPA.

24

25

26  [6] https://www.wellnesspetfood.com/our-philosophy/our-standards-our-promise (emphasis added),
    visited Oct. 25, 2017.

27

28  [7] *Id.*

21.     Besides prominently warranting, claiming, stating featuring, representing, advertising, or otherwise marketing that CORE Ocean and Complete Health Whitefish and Sweet Potato are "natural, safe and pure," Defendant charges a premium, knowing that the claimed natural make-up of CORE Ocean and Complete Health Whitefish and Sweet Potato is something an average consumer would consider as a reason in picking a more expensive dog food.  By negligently and/or deceptively representing, marketing, and advertising CORE Ocean and Complete Health Whitefish and Sweet Potato as "natural, safe and pure" Defendant wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for natural food product.

### JURISDICTION AND VENUE

22.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

23.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs reside and suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendant conducts substantial business in this district, Defendant has intentionally availed themselves of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

### INTRADISTRICT ASSIGNMENT

24.     A substantial portion of the transactions and wrongdoings which gave rise to the claims in this action occurred in the County of Marin, and as such, this action is properly assigned to the San Francisco division of this Court.

### THE PARTIES

25.     Plaintiff Daniel Zeiger ("Zeiger") is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Zeiger purchased the Contaminated Dog Foods and fed it to his three-year-old American Bulldog named Mack.  Plaintiff Zeiger started purchasing the

Contaminated Dog Foods in or around October 2014 and continued to purchase approximately one small bag monthly (priced at around $15.00 per bag) until approximately July 2017 when he discovered that the food was contaminated.  Plaintiff purchased the Contaminated Dog Foods from the following places: (1) Pet Club in Corte Madera, CA; (2) Woodlands Pet Food & Treats in Greenbrae, CA; (3) Woodlands Pet Food & Treats in Mill Valley, CA.  Prior to purchasing the Contaminated Dog Foods, Plaintiff Zeiger saw the products at the Bay Area Pet Fair and the Golden Gate Kennel Club Dog Show at Cow Palace in San Francisco.  During the fair and dog show he received samples of the products and saw the nutritional claims, which he relied on in deciding to purchase the Contaminated Dog Foods.  During that time, based on the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or BPA and would not have purchased the food if that was fully disclosed.

26.	Plaintiff Danz Doggie Daytrips ("Danz Doggie"), is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff Danz Doggie is a dog sitting business that used the Contaminated Dog Foods as one of the primary foods fed to its clients' dogs.  Plaintiff Danz Doggie started purchasing the Contaminated Dog Foods in or around October 2014 and continued to purchase approximately one small bag monthly (priced at around $15.00 per bag) and ceased purchasing in approximately July 2017 upon discovery that the food was contaminated.  Plaintiff purchased the Contaminated Dog Foods from the following places: (1) Pet Club in Corte Madera, CA; (2) Woodlands Pet Food & Treats in Greenbrae, CA; (3) Woodlands Pet Food & Treats in Mill Valley, CA.  Prior to purchasing the Contaminated Dog Foods, Plaintiff saw the products at the Bay Area Pet Fair and the Golden Gate Kennel Club Dog Show at Cow Palace in San Francisco. During that time, based on the false and misleading claims, warranties, representations, advertisements, and otherwise marketing by  Defendant, Plaintiff was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or BPA and would not have purchased the food if that was fully disclosed.

27.	As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price

premium for the Contaminated Dog Foods that did not deliver what it promised.  They paid the above sum on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was healthy, clean, and safe for dogs to ingest, as well as natural and pure.  Plaintiffs would not have paid this money had they known that the Contaminated Dog Foods contained an excessive degree of arsenic, lead, and/or BPA.  Damages can be calculated through expert testimony at trial. Further, should Plaintiffs encounter the Contaminated Dog Foods in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

28.    Defendant WellPet LLC is incorporated in Delaware with its headquarters located at 200 Ames Pond Drive, Tewksbury, Massachusetts.  Defendant WellPet LLC is a subsidiary of Berwind Corporation.  Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Contaminated Dog Foods under the Wellness dog food brand name throughout the United States.  The advertising, labeling, and packaging for the Contaminated Dog Foods, relied upon by Plaintiffs, was prepared, reviewed, and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The marketing, advertising, packaging and labeling for the Contaminated Dog Foods was designed to encourage consumers to purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, i.e., Plaintiffs and the Class, into purchasing the Contaminated Dog Foods.  Defendant owns, manufactures, and distributes the Contaminated Dog Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Dog Foods.

SECOND AMENDED CLASS ACTION COMPLAINT

29.   The Contaminated Dog Foods, at a minimum, include:

(a)      Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal:



(b)      Wellness Complete Health Adult Dry Whitefish and Sweet Potato:



SECOND AMENDED CLASS ACTION COMPLAINT

1
2        (c)        Wellness Complete Health Adult Grain Free Whitefish and Menhaden Fish
3  Meal:
4
5
6
7
8
9
10
11
12
13
14
15

16                                          **FACTUAL ALLEGATIONS**
17
**Both Arsenic and Lead Are Exceptionally Dangerous When Ingested**
18
19        30.      Toxins like arsenic and lead can cause serious illness to humans and animals.  A
20  company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these
21  toxins.
22        31.      Arsenic is a semi-metal element in the periodic table.  It is odorless and tasteless.
23  Arsenic occurs naturally in the environment as an element of the earth's crust; it is found in rocks,
24  soil, water, air, plants, and animals.  Elemental arsenic is combined with other elements such as
25  oxygen, chlorine, and sulfur to form inorganic arsenic compounds.  Historically, arsenic
26  compounds were used in many industries, including: (i) as a preservative in pressure-treated
27  lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening;
28  (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to

enhance junctions in semiconductors.  The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons.  Some of these cancellations were based on voluntary withdrawals by producers.  For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the EPA signed the cancellation order.  In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable."  Arsenic is an element—it does not degrade or disappear.

32.     Inorganic arsenic is a known cause of human cancer.  The association between inorganic arsenic and cancer is well documented.  As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled arsenic.  There is evidence from countries where groundwater is contaminated with arsenic that shows ingested inorganic arsenic, such as that found in contaminated drinking water and food was likely to increase the incidence of several internal cancers.[8]  The scientific link to skin and lung cancers is particularly strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder, kidney, and colon cancers as well.

33.     Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States.  Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health.  Lead poisoning can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately cause death.

---

[8] For example, because the groundwater in Taiwan is contaminated with arsenic, extensive long-term studies have been conducted on the effects of chronic exposure to arsenic.  Other countries where cancer and other adverse health effects have been linked to chronic arsenic exposure include Bangladesh, India, Chile, and China.

SECOND AMENDED CLASS ACTION COMPLAINT

34.     The State of California has included arsenic and lead as a known carcinogen and developmental toxin on the Proposition 65 list, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986.

35.     The FDA has set standards that regulate the maximum parts per billion of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic.  *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

**Defendant Falsely Advertise the Contaminated Dog Foods as Healthy While Omitting Any Mention of Arsenic or Lead, as Well as Claim CORE Ocean and Complete Health Whitefish and Sweet Potato are Natural, Pure and Safe Despite the Inclusion of the Industrial Chemical BPA**

36.     Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Wellness lines of dry and wet pet food products in California and across the United States.

37.     Based on Defendant's decision to warrant, claim, state, represent, advertise, label, and market its Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health, it had a duty to ensure these statements were true.  As such, Defendant knew or should have known that the Contaminated Dog Foods included concerning and higher levels of arsenic and lead.

38.     Likewise, by warranting, claiming, stating featuring, representing, advertising or otherwise marketing that the Contaminated Dog Foods are natural, safe, and pure, Defendant had a known duty to ensure that there were no chemicals included in the Contaminated Dog Foods. In fact, Defendant offered further assurances by representing that the quality control over the manufacturing of its Wellness dog food products was a rigid process that monitored temperature. As such, Defendant knew or should have known that higher temperatures coupled with the type of containers used in manufacturing create a real risk of significant levels of BPA in its products.

39.     The Contaminated Dog Foods are available at numerous retail and online outlets.

40.     The Contaminated Dog Foods are widely advertised and WellPet LLC includes a Vice President of Marketing as part of its advertised leadership team.

- 15 -
SECOND AMENDED CLASS ACTION COMPLAINT

41.     The official Wellness Pet Food website displays the Contaminated Dog Foods' descriptions and full lists of ingredients for the Contaminated Dog Foods and includes the following promise:

# Our Standards. Our Promise.

At Wellness, your pet's health is at the core of all we do. That's why we have developed an extensive quality assurance program, guaranteeing that all of our products are safe, pure and balanced.

42.     The Defendant's webpages again and again repeat the false and misleading claims, warranties, representations, advertisements, and other marketing about the Contaminated Dog Foods benefits, quality, purity, and natural make-up, without any mention of the arsenic, lead, or BPA they contain.  This is not surprising given that natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years.[9]



43.     Moreover, WellPet LLC has itself acknowledged the importance to quality dog food to the reasonable consumer: "People are increasingly concerned with what they eat and where their food comes from, and this concern has influenced the pet food space as well," agrees Carly White, digital marketing specialist at WellPet LLC, makers of Wellness pet foods.  "More and

---

[9] Statista, *Natural and Organic Pet Food Sales in the U.S. from 2009 to 2019,* The Statistics Portal (accessed Oct. 25, 2017).  https://www.statista.com/statistics/548957/us-sales-of-natural-and-organic-pet-food/

SECOND AMENDED CLASS ACTION COMPLAINT

1  more, pet parents are taking an active role in their pet's nutrition, with a focus on quality ingredients

2  that are [conscientiously] sourced."[10]

3      44.    As a result of Defendant's omissions, a reasonable consumer would have no reason

4  to suspect the presence of arsenic and lead or BPA in the Contaminated Dog Foods without

5  conducting his or her own scientific tests, or reviewing third-party scientific testing of these

6  products.

7      45.    That is exactly what Plaintiffs did here.  Plaintiffs' testing of the Contaminated Dog

8  Foods showed that CORE Ocean consistently contained over 1,000 ppb of arsenic and close to 200

9  ppb of lead and that Complete Health Whitefish and Sweet Potato consistently contained over

10 1,000 ppb of arsenic and over 200 ppb of lead.  Additionally, the testing revealed that the CORE

11 Ocean and Complete Health Whitefish and Sweet Potato each contained over 130 ppb of BPA.

12 Morever, recently a public news report showed that Complete Health Whitefish and Menhaden

13 consistently contained more than 1,400 ppb of arsenic and 200 ppb of lead.[11]

14 **DEFENDANT'S STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

15     46.    California law is designed to ensure that a company's claims about its products are

16 truthful and accurate.  Defendant violated California law by negligently, recklessly, and/or

17 intentionally incorrectly claiming that the Contaminated Dog Foods are pure, healthy, and safe for

18 consumption and by not accurately detailing that the products contain the toxins arsenic and lead.

19 Instead, Defendant represented that the Contaminated Dog Foods are made up of

20 "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and

21 offer complete health Defendant further violated California law by negligently, recklessly, and/or

22 intentionally incorrectly claiming that CORE Ocean and Complete Health Whitefish and Sweet

23 Potato are natural, pure, and safe when they contain BPA.

24

25

26 [10] Melissa Breau, *Pet Food Evolution*, Pet Business (Oct. 16, 2015), (alteration in original)
   http://www.petbusiness.com/Pet-Food-Evolution/

27

28 [11] http://wjla.com/features/7-on-your-side/pet-food-heavy-metals.

SECOND AMENDED CLASS ACTION COMPLAINT

47.      Defendant's marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiffs to plead relying upon each advertised misrepresentation.

48.      Defendant has engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients, such as arsenic and lead. Likewise, Defendant has engaged in this long-term advertising campaign to convince potential customers that CORE Ocean and Complete Health Whitefish and Sweet Potato are natural, pure, and safe despite the presence of BPA in the food.

**PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT**

49.      Plaintiffs reasonably relied on Defendant's own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Dog Foods.

50.      Plaintiffs read and relied upon the labels and packaging of the Contaminated Dog Foods in making their purchasing decisions.

51.      A reasonable consumer would consider the labeling of a product when deciding whether to purchase. Here, Plaintiffs relied on the specific statements and misrepresentations by Defendant that the Contaminated Dog Foods were healthy and made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health with no disclosure of the inclusion of arsenic or lead.

**DEFENDANT'S KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES**

52.      Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods. Moreover, Defendant was put on notice by the Clean Label Project on the inclusion of heavy metals in its dog food products.

**PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS**

53.    Defendant knew that consumers such as Plaintiffs and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of its advertising and statements.

54.    Defendant intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiffs and the proposed Class.

55.    Defendant directly marketed to Plaintiffs and the proposed Class through statements on its website, labeling, advertising, and packaging.

56.    Plaintiffs and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

**CLASS ACTION ALLEGATIONS**

57.    Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in California who, from July 1, 2013, to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Class").

58.    Plaintiffs also bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

> All persons in California who are citizens of the United States who, from July 1, 2013 to the present, purchased CORE Ocean CORE Ocean and Complete Health Whitefish and Sweet Potato for household or business use, and not for resale (the "Natural Claims Class").[12]

59.    Excluded from the Classes are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

60.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

---

[12] All classes collectively are referred to as the "Classes."

SECOND AMENDED CLASS ACTION COMPLAINT

61.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes members in a single action will provide substantial benefits to the parties and Court.

62.     Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

(a)     whether Defendant owed a duty of care;

(b)     whether Defendant knew or should have known that the Contaminated Dog Foods contained higher levels of arsenic and/or lead;

(c)     whether Defendant knew or should have known that CORE Ocean and Complete Health Whitefish and Sweet Potato CORE Ocean contained BPA;

(d)     whether Defendant represented and continue to represent that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health;

(e)     whether Defendant represented and continue to represent that the Contaminated Dog Foods are pure, healthy, and safe for consumption;

(f)     whether Defendant represented and continue to represent that the CORE Ocean and Complete Health Whitefish and Sweet Potato are natural dog foods;

(g)     whether Defendants represented and continue to represent that the Contaminated Dog Foods are pure ;

(h)     whether Defendant represented and continue to represent that the manufacturing of its Wellness dog food products is subjected to rigorous standards, including those standards related to temperature;

(i)     whether Defendant failed to disclose that the Contaminated Dog Foods contained arsenic, lead, and/or BPA;

(j)     whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(k)     whether those representations are likely to deceive a reasonable consumer;

SECOND AMENDED CLASS ACTION COMPLAINT

(l)    whether Defendant had knowledge that those representations were false, deceptive, and misleading;

(m)    whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(n)    whether a representation that a product is healthy and safe for consumption and does not contain arsenic and/or lead is material to a reasonable consumer;

(o)    whether Defendant's representations and descriptions on the labeling of the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(p)    whether Defendant violated California Business & Professions Code sections 17200, *et seq.*;

(q)    whether Defendant violated California Business & Professions Code sections 17500, *et seq.*;

(r)    whether Defendant violated California Civil Code sections 1750, *et seq.*;

(s)    whether Plaintiffs and the members of the Classes are entitled to actual, statutory, and punitive damages;

(t)    whether Plaintiffs and the members of the Classes are entitled to declaratory and injunctive relief.

63.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

64.    Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

65.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

66.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

67.     Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

68.     As a result of the foregoing, class treatment is appropriate.

## COUNT I

### (Negligent Misrepresentation Against Defendant on Behalf of the Classes)

69.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

70.     Plaintiffs reasonably placed their trust and reliance in Defendant's representations that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health.

71.     Plaintiffs reasonably placed their trust and reliance in Defendant that the Contaminated Dog Foods warranted, represented, marketed, packaged, labeled and advertised to them and the Classes were healthy and safe for consumption and did not contain arsenic and lead.

72.     Plaintiffs reasonably placed their trust and reliance in Defendant that CORE Ocean and Complete Health Whitefish and Sweet Potato products  warranted, represented, marketed, packaged, labeled, and advertised to them and the Classes were natural, pure, and safe and did not contain BPA.

73.     Because of the relationship between the parties, the Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of arsenic, lead, and BPA in the Contaminated Dog Foods or, based upon its superior knowledge, having spoken, to say enough to not be misleading.

74.     Defendant breached its duty to Plaintiffs and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Contaminated Dog Foods.

75.     Plaintiffs and the Classes reasonably and justifiably relied upon the information supplied to them by the Defendant.  A reasonable consumer would have relied on Defendant's own

- 22 -

warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the Contaminated Dog Foods.  Defendant themselves admitted that consumers now "focus on quality ingredients…" when purchasing dog food. [13]

76.     As a result of these misrepresentations, Plaintiffs and the Classes purchased the Contaminated Dog Foods at a premium.

77.     Defendant failed to use reasonable care in its communications and representations to Plaintiffs and the Classes, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing the Contaminated Dog Foods.

78.     By virtue of Defendant's negligent misrepresentations, Plaintiffs and the Classes have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## **COUNT II**

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendant on Behalf of the Classes)**

79.     Plaintiffs  incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

80.     Plaintiffs and each proposed Classes member is a "consumer," as that term is defined in California Civil Code section 1761(d).

81.     The Contaminated Dog Foods are "goods," as that term is defined in California Civil Code section 1761(a).

82.     Defendant is a  "person" as that term is defined in California Civil Code section 1761(c).

83.     Plaintiffs and each proposed Classes member's purchase of Defendant's products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

---

[13]  Melissa Breau, *Pet Food Evolution*, Pet Business (Oct. 16, 2015), (alteration in original) http://www.petbusiness.com/Pet-Food-Evolution/

SECOND AMENDED CLASS ACTION COMPLAINT

84.     Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)     California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are healthy and safe for consumption and by failing to make any mention of arsenic and lead in the Contaminated Dog Foods;

(b)     California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are natural, pure and safe and by failing to make any mention of BPA in CORE Ocean or Complete Health Whitefish and Sweet Potato;

(c)     California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods were of a particular standard, quality, or grade, when they were of another;

(d)     California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Contaminated Dog Foods with intent not to sell them as advertised; and

(e)     California Civil Code section 1770(a)(16), by representing that the Contaminated Dog Foods have been supplied in accordance with previous representations when they have not.

85.     As a direct and proximate result of these violations, Plaintiffs and the Classes have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Dog Foods.

86.     On July 19, 2017, counsel for Plaintiffs and the  Classes sent Defendant written notice (via U.S. certified mail, return receipt requested) that its conduct is in violation of the CLRA concerning the arsenic and lead omissions.

87.     On November 13, 2017, counsel for Plaintiffs and the Classes sent Defendant written notice (via U.S. certified mail, return receipt requested) that its conduct is in violation of the CLRA concerning the inclusion of BPA in the Contaminated Dog Foods.

SECOND AMENDED CLASS ACTION COMPLAINT

88.     Defendant failed to provide appropriate relief for its violations of CLRA sections 1770(a)(5), (7), (9), and (16) within thirty days of receipt of Plaintiffs' July 19, 2017, or November 13, 2017, notifications.   In accordance with CLRA section 1782(b), Plaintiffs and the Classes are entitled, under CLRA section 1780, to recover and obtain the following relief for Defendant's violations of CLRA sections 1770(a)(5),(7), (9) and (16):

        (a)     actual damages under CLRA section 1780(a)(1);

        (b)     restitution of property under CLRA section 1780(a)(3);

        (c)     punitive damages under CLRA section 1780(a)(4) and because Defendant has engaged in fraud, malice, or oppression; and

        (d)     any other relief the Court deems proper under CLRA section 1780(a)(5).

89.     Plaintiffs seek an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT III
### (Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Classes)

90.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

91.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

92.     As set forth herein, Defendant's claims that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public.  Likewise, Defendant's statements that  CORE Ocean and Complete Health Whitefish and Sweet Potato are natural, pure, and safe are false and likely to deceive the public.

93.     Defendant's claims that the Contaminated Dog Foods are healthy and safe for consumption are untrue or misleading, as is failing to make any mention of arsenic and lead in the Contaminated Dog Foods.  Likewise, Defendant's statements that CORE Ocean and Complete Health Whitefish and Sweet Potato are natural, pure, and safe are untrue or misleading, as failing to disclose the presence of BPA in the dog food.

94.     Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

95.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that, so long as the Contaminated Dog Foods are, as advertised, healthy and safe for consumption and do not contain arsenic, lead, or BPA.

96.     Plaintiffs and members of the Classes are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Dog Foods.

## COUNT IV

### (Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendant on Behalf of the Classes)

97.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

98.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

99.     Defendant's statements that the Contaminated Dog Foods are pure, natural, and healthy, and safe for consumption are literally false and likely to deceive the public, as is Defendant's failing to make any mention of arsenic, lead, and BPA in the Contaminated Dog Foods.

**Unlawful**

100.     As alleged herein, Defendant has advertised the Contaminated Dog Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

•     The CLRA, California Business & Professions Code sections 1750, *et seq*.; and

•     The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

SECOND AMENDED CLASS ACTION COMPLAINT

101.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

102.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

103.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

104.    In accordance with California Business & Professions Code section 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

105.    On behalf of themselves and the Classes, Plaintiffs also seek an order for the restitution of all monies from the sale the Contaminated Dog Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V

**(Breach of Express Warranty, California Commercial Code §2313, Against Defendant on Behalf of the Classes)**

106.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

107.    As set forth herein, Defendant made express representations to Plaintiffs and the Class that the Contaminated Dog Foods as made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health.

108.   Defendant also made express representations to Plaintiffs and the Classes that the Contaminated Dog Foods were natural, pure, healthy, and safe for consumption.

109.   Defendants likewise made express representations to Plaintiffs and the Natural Claims Class that CORE Ocean and Complete Health Whitefish and Sweet Potato were natural, pure, and safe.

110.   These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

111.   There was a sale of goods from Defendant to Plaintiffs and the Class members.

112.   On the basis of these express warranties, Defendant sold to Plaintiffs and the Class the Contaminated Dog Foods.

113.   Defendant knowingly breached the express warranties by including arsenic, lead, and BPA in the Contaminated Dog Foods.

114.   Defendant was on notice of this breach as it was aware of the included arsenic, lead, and BPA in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed its dog food products as unhealthy.

115.   Privity exists because Defendant expressly warranted to Plaintiffs and the Classes that the Contaminated Dog Foods were healthy, safe for consumption, natural, and/or pure.

116.   Plaintiffs and the Classes reasonably relied on the express warranties by Defendant.

117.   As a result of Defendant's breaches of its express warranties, Plaintiffs and the Classes sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendant represented.

118.   Plaintiffs, on behalf of themselves and the Classes, seek actual damages for Defendant's breach of warranty.

## **COUNT VI**

### **(Breach of Implied Warranty, California Commercial Code §2314, Against Defendant on Behalf of the Classes)**

119.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

120.    As set forth herein, Defendant made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiffs and the Classes that the Contaminated Dog Foods are made up of "Uncompromising Nutrition" and "Unrivaled Quality Standards" that have nothing in excess and offer complete health.

121.    Defendant also made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiffs and the Class that the Contaminated Dog Foods were pure, healthy, and safe for consumption and did not contain arsenic or lead.

122.    The Contaminated Dog Foods did not conform to these affirmations and promises as they contained arsenic and lead at alarming and unsafe levels.

123.    Defendant also made affirmations of fact on the CORE Ocean's and Complete Health Whitefish and Sweet Potato's  labels to Plaintiff and the Natural Claims Class that  CORE Ocean and Complete Health Whitefish and Sweet Potato were natural dog food and did not contain the chemical BPA.

124.    CORE Ocean and Complete Health Whitefish and Sweet Potato did not conform to these affirmations and promises as they contain the industrial chemical BPA.

125.    These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

126.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the members of the Classes

127.    There was a sale of goods from Defendant to Plaintiffs and the members of the Classes.

128.    Defendant breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained arsenic, lead, and/or BPA.

129.    Defendant was on notice of this breach as it was aware of the arsenic, lead, and BPA included in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed its dog food products as unhealthy.

SECOND AMENDED CLASS ACTION COMPLAINT

130.     Privity exists because Defendant impliedly warranted to Plaintiffs and the Classes through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods were pure, healthy, natural, and safe and by failing to make any mention of arsenic, lead and BPA.

131.     As a result of Defendant's breach of its implied warranties of merchantability, Plaintiffs and the Classes sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendant represented.

132.     Plaintiffs, on behalf of themselves and the Classes, seek actual damages for Defendant's breach of warranty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

B.     An order enjoining Defendant from selling the Contaminated Dog Foods until the higher and/or unsafe levels of arsenic, lead, and BPA are removed;

C.     An order enjoining Defendant from selling the Contaminated Dog Foods in any manner suggesting or implying that they are healthy and safe for consumption;

D.     An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.     An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest thereon;

1        G.     An order requiring Defendant to disgorge or return all monies, revenues, and profits

2   obtained by means of any wrongful or unlawful act or practice;

3        H.     An order requiring Defendant to pay all actual and statutory damages permitted

4   under the counts alleged herein;

5        I.     An order requiring Defendant to pay punitive damages on any count so allowable;

6        J.     An order awarding attorneys' fees and costs to Plaintiffs, the Classes  and

7        K.     An order providing for all other such equitable relief as may be just and proper.

8   **<u>JURY DEMAND</u>**

9        Plaintiffs hereby demand a trial by jury on all issues so triable.

10  Dated:  July 2, 2018          LOCKRIDGE GRINDAL NAUEN P.L.L.P.

11                      ROBERT K. SHELQUIST
                        REBECCA A. PETERSON

12                      By:  s/  Rebecca A. Peterson

13                      100 Washington Avenue South, Suite 2200

14                      Minneapolis, MN 55401
                        Telephone: (612) 339-6900

15                      Facsimile: (612) 339-0981
                        E-mail: rkshelquist@locklaw.com

16                                rapeterson@locklaw.com

17                      ROBBINS ARROYO LLP

18                      BRIAN J. ROBBINS
                        KEVIN A. SEELY

19                      ASHLEY R. RIFKIN
                        STEVEN M. MCKANY

20                      600 B Street, Suite 1900
                        San Diego, CA 92101

21                      Telephone: (619) 525-3990
                        Facsimile: (619) 525-3991

22                      E-mail: brobbins@robbinsarroyo.com
                              kseely@robbinsarroyo.com

23                            arifkin@robbinsarroyo.com
                              smckany@robbinsarroyo.com

24

25

26

27

28

- 31 -

SECOND AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
         kgluek@gustafsongluek.com

Attorneys for Plaintiffs

1193575

- 32 -