Rebecca A. Peterson (241858)
Robert K. Shelquist (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
E-mail: rapeterson@locklaw.com
           rkshelquist@locklaw.com
Attorneys for Plaintiff
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLPET LLC, a Delaware corporation,<br><br>Defendant. | Case No. 3:17-cv-04056-WHO<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   November 18, 2020<br>Time:   2:00 p.m.<br>Dept.:  Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 18, 2020 at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 2, 17th Floor, of the U.S. District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Daniel Zeiger will and hereby moves the Court for an order for class certification pursuant to Federal Rules of Civil Procedure Rule 23.  The classes shall be defined as:

*Wellness Class*: All persons in California who, from July 1, 2013, to the present, purchased Wellness Complete Health Adult Dry Whitefish and Sweet Potato dog food for household or business use, and not for resale.

*Wellness Grain-Free Class*: All persons in California who, from July 1, 2013, to the present, purchased Wellness Complete Health Adult Grain Free Whitefish and Menhaden Fish Meal dog food for household or business use, and not for resale.

*Core Class:* All persons in California who, from July 1, 2013, to the present, purchased Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal dog food for household or business use, and not for resale.

Excluded from the classes are persons or entities who purchased the Wellness Food for business use or resale; government entities; WellPet and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives; and members of this Court and its staff.

In the alternative, Plaintiff moves pursuant to Fed. R. Civ. P. 23(c)(4) for certification of a liability-only class or certification of common issues.

This motion is based on this Notice of Motion, Memorandum of Points and Authorities, supporting exhibits, the pleadings and documents on file in this case, and such other evidence as may be presented at or before the hearing on this motion.

i

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: June 29, 2020

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST (*pro hac vice*)
REBECCA A. PETERSON (241858)

*/s/Rebecca A. Peterson*
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
            rapeterson@locklaw.com

ROBBINS LLP
KEVIN A. SEELY
STEVEN M. MCKANY
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsllp.com
            smckany@robbinsllp.com


GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)
RAINA C. BORELLI (*pro hac vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
            rborelli@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA (*pro hac vice*)
KATHERINE VAN DYCK (*pro hac vice*)
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
            kvandyck@cuneolaw.com

ii

LITE DEPALMA GREENBERG, LLC
JOSEPH J. DEPALMA (*pro hac vice*)
SUSANA CRUZ HODGE (*pro hac vice*)
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
        scruzhodge@litedepalma.com

WEXLER WALLACE LLP
Kenneth A. Wexler (*pro hac vice*)
Michelle Perkovic (*pro hac vice*)
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wexlerwallace.com
        mp@wexlerwallace.com

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1

II. SUMMARY OF THE CASE ........................................................................ 1

   A.  WellPet's Wrongful Conduct to the Classes.......................................1

       1.  ████████████████████████
           ██████████████████████████████...........3

       2.  ██████████████████████████████████
           ███████████████████████████████......7

       3.  ████████████████████████....................9

   B.  Plaintiff Is Representative of the Classes............................................10

   C.  Class Definitions ...............................................................................10

III. ARGUMENT ................................................................................................ 11

   A.  Rule 23(a) Requirements ....................................................................11

       1.  Numerosity is Satisfied. .............................................................11

       2.  There Are Numerous Common Issues of Fact and Law................12

       3.  Plaintiff's Claims Are Typical ...................................................13

       4.  Plaintiff and His Counsel Are Adequate ....................................14

   B.  The Requirements of Rule 23(b) Are Satisfied................................15

       1.  Common Issues Predominate .....................................................15

           a.  UCL, FAL, and CLRA claims .............................................16

           b.  Breach of express warranty claim .......................................23

           c.  Breach of implied warranty claim .......................................24

       2.  A Class Action is the Superior Method of Adjudication ..............25

   C.  Damages...............................................................................................26

   D.  Alternative Rule 23(c)(4) Limited Issues Class .................................28

   E.  Plaintiff Meets the Rule 23(b)(2) Requirements.................................30

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

1

IV.    CONCLUSION .................................................................................................. 30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Allen v. Conagra Foods, Inc.*,
331 F.R.D. 641 (N.D. Cal. 2019)................................................................18, 19, 20

*Allen v. Hyland's Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014).........................................................................23

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................11

*Amey v. Cinemark USA Inc.*,
13-cv-05669-WHO, 2018 WL 3956326 (N.D. Cal. Aug. 17, 2018).......................13, 14, 15, 16

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
568 U.S. 455 (2013)...................................................................................11, 21

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S.
499 (2005)......................................................................................................11

*Arthur Young & Co. v. U.S. Dist. Court*,
549 F.2d 686 (9th Cir. 1977) ...............................................................................29

*Avilez v. Pinkerton Gov't Servs., Inc.*,
596 Fed. Appx. 579 (9th Cir. 2015).......................................................................28

*Beck-Ellman v. Kaz USA, Inc.*,
283 F.R.D. 558 (S.D. Cal. 2012) ...........................................................................25

*Bowerman v. Field Asset Servs., Inc.*,
No. 13-CV-00057-WHO, 2015 WL 1321883 (N.D. Cal. Mar. 24, 2015)...........................11, 12

*Broomfield v. Craft Brew All., Inc.*,
No. 17-cv-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ..................15, 18, 27, 30

*Brown v. Hain Celestial Grp., Inc.*,
C 11-03082 LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ........................... passim

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ...............................................................................22

*Chavez v. Blue Sky Nat. Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)....................................................................14, 16

vi

*Collins v. eMachines, Inc.*,
    134 Cal. Rptr. 3d 588 (Ct. App. 2011), *as modified* (Dec. 28, 2011)..........................................20

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ...............................................................................................18

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006), *as modified* (Nov. 8, 2006) ......................................19

*Farar v. Bayer AG*,
    14-CV-04601-WHO, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) .................................12, 13

*Forcellati v. Hyland's, Inc.*,
    CV 12-1983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ......................................................18

*Frlekin v. Apple Inc.*,
    13-03451, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015) .......................................................28, 29

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 .......................................................................................................................17

*Guido v. L'Oreal, USA, Inc.*,
    No. 2:11-cv-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ...............................28

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...........................................................................17, 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338 ..............13

*Hauter v. Zogarts*,
    14 Cal. 3d 104 (1975) ...........................................................................................................24

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)....................................................................................18

*In re Activision Sec. Litig.*,
    621 F. Supp. 415 (N.D. Cal. 1985) .....................................................................................28, 29

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) ...........................................................................................19

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*,
    14-md-02555-JSW, 2020 WL 759388 (N.D. Cal. Feb. 14, 2020)................................13, 19, 22

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919, 984-85 (C.D. Cal. 2015), *aff'd sub nom. Briseno v.*
   *ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017),
   and *aff'd*, 674 Fed. Appx. 654 (9th Cir. 2017) ...........................................................23, 26, 27

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...........................................................................................11

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...........................................................................................16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...............................................................................................17, 20

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 10-2172, 2012 WL 4904412 (C.D. Cal. Sep. 20, 2012) ...........................................28

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .........................................................................................26

*Kahane v. Jansen*,
   No. A115269, 2008 WL 5077628 (Cal. Ct. App. Dec. 3, 2008) .......................................18

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) .....................................................................................................17

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .........................................................................................17

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) .....................................................................................24

*Kelley v. Microsoft Corp.*,
   395 Fed. Appx. 431 (9th Cir. 2010)..................................................................................16

*Kihn v. Bill Graham Archives, LLC*,
   No. 17-CV-05343-YGR, --- F. Supp. 3d ---, 2020 WL 1820708 (N.D. Cal. Apr. 10, 2020).....30

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020).....................................................................13, 20, 22, 27

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .....................................................................................................22

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014)...........................................................................19, 24, 29

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

*Marsh v. First Bank of Delaware*,
    11-cv-05226-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014).................................25

*Martin v. Monsanto Co.*,
    No. 16-2168(JFW), 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ......................20, 24

*McAdams v. Monier, Inc.*,
    105 Cal. Rptr. 3d 704 (Ct. App. 2010).....................................................................18

*McCowen v. Trimac Transp. Servs. (W.), Inc.*,
    311 F.R.D. 579 (N.D. Cal. 2015).............................................................................20

*Mitchell v. Cate*,
    No. 2:08-CV-01196, 2014 WL 3689287 (E.D. Cal. July 23, 2014)........................15

*Nagrampa v. MailCoups Inc.*,
    No. C03-00208 MJJ, 2007 WL 2221028 (N.D. Cal. July 30, 2007)........................17

*Senne v. Kan. City Royals Baseball Corp.*,
    934 F.3d 918 (9th Cir. 2019) .................................................................................16

*Sidibe v. Sutter Health*,
    333 F.R.D. 463 (N.D. Cal. 2019).............................................................................15

*Slaven v. BP America, Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000).............................................................................28

*Sloan v. Gen. Motors LLC*,
    16-CV-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020).........................24

*Spann v. J.C. Penney Corp.*,
    307 F.R.D. 508 (C.D. Cal. 2015), *modified,* 314 F.R.D. 312 (C.D. Cal. 2016) ......29

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by*
    *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .................................................19, 26

*TV Interactive Data Corp. v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ..................................................................28

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)............................................................................................16

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ............................................................................28, 29

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................12

ix

*Warner Constr. Corp. v. City of Los Angeles*,
    2 Cal. 3d at 294 (1970) ...............................................................................18

*Williams v. Gerber Prods.*,
    552 F.3d 934 (9th Cir. 2008) ......................................................................17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .............................................................22, 25

*Yokoyama v. Midland Nat'l Bank Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ....................................................................19

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................ passim

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ....................................................................25

**RULES**

Fed. R. Civ. P. 23 ......................................................................................... passim

Fed. R. Civ. P. 42(b) ...........................................................................................28

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .....................................................................16, 17

Cal. Bus. & Prof. Code § 17500 .....................................................................16, 17

Cal. Civ. Code § 1770(a) .......................................................................................17

Cal. Civ. Code § 1791.1(a) ....................................................................................24

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ........16

**OTHER AUTHORITIES**

7A Wright & Miller, *Federal Practice and Procedure: Civil* § 1790 (3d ed.)........28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This case exemplifies the power of a product's labeling and packaging. WellPet has sought to capitalize on the ever-growing and lucrative market of health-conscious pet lovers who consider their pets as family. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████████ In order to benefit from the known buying preferences of these pet parents, WellPet uses everything in its arsenal—from its company name (WellPet) and its food brand (Wellness) to various promises and statements—to deceive the consumer and promote that its dog food is high quality, healthy, nutritious, and safe. But customers have no way of knowing that WellPet's foods do not live up to its packaging because there is no disclosure of the presence (or risk thereof) of lead, arsenic, or Bisphenol A ("BPA") in the foods. This is not inconsequential. ████████████████████ ███████████████ Plaintiff's choice-based conjoint analysis, reveal that WellPet's affirmations and omissions are material to the reasonable consumer, and drive up the cost of the dog food.

Plaintiff Zeiger seeks certification of classes of California consumers damaged by WellPet's deceptive labeling and packaging in violation of California's consumer protection laws and common law. This Court and numerous others routinely hold that these claims are appropriate for class treatment because deception is determined by an objective, reasonable consumer standard. Since the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied in this case, class certification is proper.

### II.  SUMMARY OF THE CASE

#### A.  WellPet's Wrongful Conduct to the Classes

---

[1] References to "Ex. __" are exhibits to the Declaration of Rebecca A. Peterson in support of this motion.

-1-

WellPet manufactures and markets Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal, Wellness Complete Health Adult Dry Whitefish and Sweet Potato, and Wellness Complete Health Adult Grain Free Whitefish and Menhaden Fish Meal (collectively, the "Wellness Food") as premium dog food that is natural, healthy and nutritious to consumers ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████, WellPet chose to turn a blind eye to the actual *risks and content* of its Wellness Food and misleadingly marketed the food so it could enjoy the benefits of pet parents' willingness to pay premium prices for perceived high quality healthy, nutritious, and safe pet food.

Throughout the class period (July 1, 2013 to the present), WellPet deceived consumers into purchasing the Wellness Food by using, among others, the following marketing claims: (1) "Uncompromising Nutrition"; (2) "Unrivaled Quality Standards"; (3) "Natural"; (4) "Nothing in excess and everything in balance"; and (5) "Offers complete health" (collectively, the "Wellness Statements"). ¶¶10, 11, 16, 46.[2] It cannot be disputed that these promises relate directly to the desired qualities that ████████████████████████████████████: healthy, nutritious, safe, and natural dog food. *See generally*

---

[2] Unless otherwise noted, all references to "¶" are to the Second Amended Class Action Complaint, Dkt. 95.

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No.: 3:17-cv-04056-WHO

Silverman Report at ¶¶62-80 (Ex. 3); June 29, 2020, Report of Steven Gaskin ¶¶62-63 ("Gaskin Report") (Ex. 4). In the same vein, the Wellness Statements made certain no consumer would question whether WellPet had quality control requirements that would control the risk or inclusion of any chemicals and contaminants, such as arsenic, lead, and BPA. ¶¶12-13, 21. The Wellness Statements and related omissions are false, misleading, and deceptive because the Wellness Food contained (or had a risk of containing) detectable amounts of arsenic, lead, and BPA ███████████████████████████████████████ ███████████. ¶¶2, 45; WLPT00008059 at -8069 (Ex. 5); WLPT00008105 at -8118 to -8128 (Ex. 6); Defendant's Corrected Supplemental Answers to Plaintiffs' First Set of Interrogatories, July 6, 2018, ("Defendants' Answers") at 3 (Ex. 7); *see* generally Silverman Report at ¶¶28, 59, 113-115, 120-121 (Ex. 3); *see* June 29, 2020, Report of Gary Pusillo at p. 14, Appen. B ("Pusillo Report"); June 29, 2020, Report of Sean P. Callan ("Callan Report") (Ex. 35). As discussed below, WellPet knew or should have known that the risk or presence of arsenic, lead, and/or BPA made Wellness Food ███████████████████████ ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No.:  3:17-cv-04056-WHO



as arsenic and lead are not nutritious and are potentially dangerous contaminants that accumulate in dogs and have been linked to various health issues. ¶¶3, 6; Pusillo Report at 14-18 (Ex. 9). while still highlighting the Wellness Statements on its packaging.

caused it to not be able to live up to the promises it made consumers on the Wellness Food's packaging.

-4-



³*Id.*; WLPT00008729 (Ex. 11); WLPT00008731 (Ex. 12); WLPT00008733 (Ex. 13); WLPT00008737 (Ex. 14); WLPT00006785 (Ex. 15); WLPT00008727 (Ex. 16); WLPT00008739 (Ex. 17); WLPT00008742 (Ex. 18); WLPT00008749 (Ex. 19); WLPT00008756 (Ex. 20); WLPT00008759 (Ex. 21); WLPT00008762 (Ex. 22); WLPT00008752 (Ex. 23)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No.:  3:17-cv-04056-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     WellPet took action based on this knowledge and picked the Wellness Statements to communicate healthy, natural, and safe dog food:

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No.:  3:17-cv-04056-WHO

1
2
3
4
5
6
7
8
9
10
11




12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



---

[5] The Wellness Way seal includes both "Uncompromising Nutrition" and "Unrivaled Quality Standards."

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No.:  3:17-cv-04056-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26        **3.**     **WellPet's Knowledge and Failure to Uphold its Duty to Disclose**

27 Common evidence will show

28

1

2

3

4 ████████████████████████████. *See* WLPT00008059 at -8069,

5 -8087 (Ex. 5); *see* Silverman Report at ¶¶59, 113-114, 120-121 (Ex. 3). WellPet had and continues to

6 have exclusive knowledge of the physical and chemical make-up of the Wellness Food, as well as its

7

8 manufacturing practices and its testing protocol for ingredient suppliers. ¶52.

9 **B.     Plaintiff Is Representative of the Classes**

10 Plaintiff purchased the Wellness Food every month from approximately October 2014 until July

11 2017 when he learned that the Wellness Food contained arsenic, lead, and BPA. ¶25; January 11, 2019,

12 Zeiger Dep. at 283:1-5 (Ex. 30). Plaintiff relied upon the Wellness Statements, which along with the

13 omission to any references of arsenic, lead, and BPA, led him to reasonably believe that the Wellness

14 Food did not contain any arsenic, lead, and BPA. ¶25; Zeiger Dep. at 259:17-24; 288:22-291:1; 289:18-

15 23; 292:22-24 (Ex. 30). Plaintiff would not have purchased the Wellness Food had he known that it

16 contained arsenic, lead, and BPA. ¶25, Zeiger Dep. at 304:6-16 (Ex. 30).

17

18 **C.     Class Definitions**

19 Plaintiff proposes the following classes:

20 *Wellness Class*: All persons in California who, from July 1, 2013 to the present, purchased Wellness Complete Health Adult Dry Whitefish and Sweet Potato dog food for household or business use, and not for resale.

21

22

23 *Wellness Grain-Free Class*: All persons in California who, from July 1 2013, to the present, purchased Wellness Complete Health Adult Grain Free Whitefish and Menhaden Fish Meal dog food for household or business use, and not for resale.

24

25

26 *Core Class:* All persons in California who, from July 1, 2013 to the present, purchased Wellness CORE Adult Dry Ocean Whitefish, Herring Meal and Salmon Meal dog food for household or

27

28

-10-

business use, and not for resale.[6]

Excluded from the Class are persons or entities who purchased the Wellness Food for business use or resale; government entities; WellPet and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives; and members of this Court and its staff.

## III.   ARGUMENT

Rule 23 provides courts with broad discretion in determining whether a class should be certified. *See Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Although the Court's analysis "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,'" *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 465-66 (2013), "Rule 23 grants no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 455. Merit questions should only be considered to the extent "that they are relevant to determining whether the Rule 23 prerequisites … are satisfied." *Id.* Finally, courts routinely recognize that consumer protection claims are well-suited for class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006); *Brown v. Hain Celestial Grp., Inc.*, C 11-03082 LB, 2014 WL 6483216, at *15 (N.D. Cal. Nov. 18, 2014) ("California's approach to proving materiality, reliance, and causation in consumer-deception cases makes those questions amenable to common proof.").

### A.   Rule 23(a) Requirements

#### 1.   Numerosity is Satisfied.

"[C]ourts generally find that numerosity is satisfied if the class includes forty or more members." *Bowerman v. Field Asset Servs., Inc.*, No. 13-CV-00057-WHO, 2015 WL 1321883, at *14 (N.D. Cal.

---

[6] Collectively referred to as "Class."

Mar. 24, 2015). Exact numbers are not required. *Id.* ████████████████████████████

████████████████████████. June 29, 2020, Report of Colin Weir at ¶50 ("Weir Report") (Ex. 31).

## 2. There Are Numerous Common Issues of Fact and Law

Commonality requires showing "that the class members have suffered 'the same injury'—which means that the [] claims [] 'depend upon a common contention' [] that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Farar v. Bayer AG*, 14-CV-04601-WHO, 2017 WL 5952876, at *5 (N.D. Cal. Nov. 15, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). "'[E]ven a single common question will do,'" when this single question has "'the capacity of classwide proceedings to generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 564 U.S. at 350, 359).

While one common issue is sufficient, this case presents numerous common issues of law or fact:

a) Are the Wellness Statements false, deceptive, or misleading?

b) Are the Wellness Statements representations material?

c) Did WellPet know the Wellness Statements were misleading?

d) ██████████████████████████████████████████████████████████

e) Did WellPet target consumers who want healthy, nutritious and safe dog food?

f) Did WellPet conceal that the Wellness Food contained or was at risk of containing heavy metals and/or BPA, and/or that any of the Wellness Statements were false?

g) Would a reasonable consumer be expected to rely on the following information in deciding whether to purchase the Dog Food:

  i. The existence or risk of existence of heavy metals and/or BPA;

  ii. ██████████████████████████████████████████████

h) Are the Wellness Statements and/or WellPet's omissions regarding heavy metals and/or BPA likely to deceive a reasonable consumer?

i) Did WellPet have a duty to disclose that the Wellness Food has a risk of containing heavy

-12-

metals and/or BPA, and/or that the foods did not meet the Wellness Statements?

j)      Did WellPet breach the express warranties created by the Wellness Statements?

k)      Does the Wellness Food conform to the promises and affirmations of fact WellPet made on the label or packaging?

l)      Is WellPet liable for punitive damages based on its active concealment of the risk of heavy metals and/or inclusion or risk of BPA in the Wellness Food?

As these common issues demonstrate, Plaintiff's claims rise and fall on WellPet's actions that uniformly applied to all Class members, including whether the WellPet omitted and concealed material information and whether the Wellness Statements are misleading. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative...."), *overruled on other grounds by Dukes*, 564 U.S. 338. This Court has found such issues sufficient to satisfy commonality in similar labeling cases, supporting the same finding here. *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562-63 (N.D. Cal. 2020); *Farar*, 2017 WL 5952876, at *5; *see also In re Coca-Cola Prods. Mktg. & Sales Practices Litig.* (*"Coca-Cola"*), 14-md-02555-JSW, 2020 WL 759388, at *9-10 (N.D. Cal. Feb. 14, 2020) ("In food labeling cases such as this, courts have concluded that a plaintiff will satisfy the commonality requirement based the question of whether the label would be deceptive to a reasonable consumer.").

### 3.      Plaintiff's Claims Are Typical

Typicality tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *Amey v. Cinemark USA Inc.*, 13-cv-05669-WHO, 2018 WL 3956326, at *4 (N.D. Cal. Aug. 17, 2018). Typicality is satisfied if the claims are "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d

-13-

at 1020. Neither "varying motives" for purchasing a consumer product nor "reli[ance] on something other than [the Wellness Statements]" defeat typicality. *Brown*, 2014 WL 6483216, at *12.[7] The same is true of any variance between what Plaintiff and other class members paid for the Wellness Food. *Id.* (differences in prices paid "is not a breakdown in typicality; it is a question of individual damages…[that] need not destroy class cohesion.").

Plaintiff is typical of the Class because "[he] suffered the same type of injury from [WellPet's] conduct as other class members." *Amey*, 2018 WL 3956326, at *5. The fundamental claim of this action is that the members of the Class, including Plaintiff, were deceived into purchasing WellPet's dog food based on the Wellness Statements, when the products contain undisclosed contaminants contrary to those promises.  ¶¶2-13. The type of resulting injury, paying a price premium for the dog food, is also identical among Plaintiff and the members of the class because the injury stems from WellPet's uniform misrepresentations and material omissions. WLPT00000021 (Ex. 32); WLPT00000026 (Ex. 33); WLPT00014986 (Ex. 34); *see* generally Silverman Report at ¶¶94, 96, 113-114, 120-121 (Ex. 3). *See Brown*, 2014 WL 6483216, at *13 (finding typicality where "the acts of alleged 'deception,' the labels, are uniform—insofar as they are said to violate California law by wrongly making the uniform [challenged statements] … [a]nd the named plaintiffs do allege that the whole class was exposed to that claim."); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (typicality met where "Plaintiff's claims here arise out of the allegedly false statement, worded in several variations, made on every [label] …, and therefore arise from the same facts and legal theory.").

### 4.    Plaintiff and His Counsel Are Adequate

---

[7] As explained in Section III.B.2, the reason these issues do not defeat typicality is because "[l]ooking at the wider doctrinal context, under the relevant California law, an inference of common reliance arises if representations are material and materiality is judged by an objective standard rather than by any understandings specific to the individual consumer." *Id.* (internal quotation marks omitted).

Rule 23(a)(4)'s adequacy "inquiry turns on: (i) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (ii) whether the named plaintiff and class counsel can vigorously prosecute the action on behalf of the class." *Amey*, 2018 WL 3956326, at *6. But perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. *Mitchell v. Cate*, No. 2:08-CV-01196, 2014 WL 3689287, at *8 (E.D. Cal. July 23, 2014). Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the adequacy requirement. *Id.*; *Sidibe v. Sutter Health*, 333 F.R.D. 463, 488 (N.D. Cal. 2019).

In answer to the first question, Plaintiff's "individual claims and class claims arise from the same course of allegedly deceptive conduct for which [he] seek[s] remedies applicable to and beneficial to the class." *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2018 WL 4952519, at *7 (N.D. Cal. Sept. 25, 2018). In answer to the second, Plaintiff has taken an active role in this litigation from the start. He regularly communicates with counsel, produced documents to Defendant, and sat for two depositions. Peterson Dec. ¶36. Plaintiff has satisfied his duties as class representative and understands his responsibilities as a representative of the Class he wishes to represent. Zeiger Dep. at 317:22-318:10 (Ex. 30).

Putative class Counsel are qualified lawyers experienced in the successful prosecution of class actions, and submit their firm resumes setting forth their experience and expertise in the management and leadership of class action litigation. *See* Firm Resumes (Exs. 36-41).   These firms have already undertaken substantial work in this litigation and will continue to devote the resources necessary to see this case through to a successful outcome. Rule 23(a)'s adequacy requirement is satisfied.

**B.    The Requirements of Rule 23(b) Are Satisfied**

**1.    Common Issues Predominate**

Predominance "ask[s] 'whether the common, aggregation-enabling issues in the case are more

prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). This inquiry "begins, of course, with the elements of the underlying cause of action." *Amey*, 2018 WL 3956326, at *6. Any elements that raise individual issues, however, should not be considered in a vacuum. In carrying out its duty to perform a rigorous analysis, a court is tasked with balancing the issues requiring individualized proof against the common questions of law or fact. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (the "predominance inquiry is mainly concerned with 'the balance between individual and common issues.'"); *Kelley v. Microsoft Corp.*, 395 Fed. Appx. 431, 432 (9th Cir. 2010) (finding reversible error because the district court failed to analyze whether other elements of a claim present a common question of law of fact to class members).

Here, balancing the common issues against any purported individual issues demonstrates that the common issues predominate. *See Chavez*, 268 F.R.D. at 378-79 (where plaintiffs allege defendant falsely represented the geographic origin of a beverage on the label, "class issues … predominate over individual issues" in part because for FAL, UCL, and CLRA claims, "relief is available without individual showing of reliance.").[8] Further, Defendant's core defenses that its Wellness Food is safe, its labeling is not false, and the misrepresentations or omissions are not material to a reasonable consumer rely upon common proof applicable to all Class members, further demonstrating predominance is satisfied. *See Amey*, 2018 WL 3956326, at *7 (predominance is met where a defendant is "attacking a common issue with common proof").

### a.     UCL, FAL, and CLRA claims

---

[8]  "UCL" refers to the California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*; "FAL" refers to the California False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.*, and "CLRA" refers to the California Consumer Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*

The "CLRA and FAL prohibit false or misleading advertising, and the UCL creates a cause of action for business practices that are unlawful, unfair, or fraudulent." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 850 (N.D. Cal. 2018) (citing Cal. Bus. & Prof. Code §17500, Cal. Civ. Code §1770(a), and Cal. Bus. & Prof. Code §17200).[9] "The California Supreme Court has recognized that 'these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Zeiger*, 304 F. Supp. 3d at 850-51 (alteration in original) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). These claims are often given class treatment because the core issues of materiality, reliance, and causation "make up the bulk and engine," making them "amenable to common proof." *Brown,* 2014 WL 6483216, at *15.

FAL, UCL, and CLRA claims are often intertwined. *Zeiger*, 304 F. Supp. 3d at 850-51 (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1089 (N.D. Cal. 2018) and *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008)). All use the reasonable consumer standard in determining liability for a "deceptive or misleading" business practice. *Id.*[10] Further, CLRA and FAL violations may create liability "under the UCL's 'unlawful' prong." *Zeiger*, 304 F. Supp. 3d at 852. Thus, courts generally

---

[9] Each prong of the UCL is "a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). "A business practice is 'unfair' if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 481. An 'unlawful' practice is any practice forbidden by law, and false advertising, as alleged here, "can never be a lawful business practice." *Id.* "To succeed under the 'fraudulent' prong, plaintiffs 'need only show that members of the public are likely to be deceived' by the advertising or marketing campaign, which can be demonstrated by the effect the advertisement has on 'the reasonable consumer.'" *Id.*

[10] Under UCL's "unfair" prong, Plaintiff need only show that WellPet's conduct is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Nagrampa v. MailCoups Inc.*, No. C03-00208 MJJ, 2007 WL 2221028, at *2 (N.D. Cal. July 30, 2007). The UCL "focus[es] on the defendant's conduct, rather than the plaintiff's damages..." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Whether WellPet's conduct violated the "unfair" prong of the UCL would be applicable to the Class.

consider the UCL, FAL, and CLRA together in evaluating predominance. *See Brown,* 2014 WL 6483216, at *15; *see also Broomfield*, 2018 WL 4952519, at *10 ("For the purposes of class certification, Plaintiffs' CLRA, UCL, and FAL claims are 'materially indistinguishable ….'") (quoting *Forcellati v. Hyland's, Inc.*, CV 12-1983, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014)).

Plaintiff's allegations concerning "WellPet's knowledge that they should have known of the presence of contaminants in their [Wellness Food] based on their affirmative representations" sufficiently support Plaintiff's omissions-based claims. *Zeiger*, 304 F. Supp. 3d at 852; *see also id.* at 846-47 ("plaintiffs' claims in this matter are not solely based on the theory that defendants' Products are unsafe due to the presence of arsenic, lead, and BPA, but also that those products omit on their labeling their presence altogether."); *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) ("A partial representation claim may arise when 'the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead.'") (quoting *Warner Constr. Corp. v. City of Los Angeles,* 2 Cal. 3d at 294 (1970)); *McAdams v. Monier, Inc.,* 105 Cal. Rptr. 3d 704, 712 (Ct. App. 2010) ("Here, plaintiff has alleged affirmative representations by Monier regarding its roof tiles … that were likely to mislead consumers by failing to disclose the known fact that the color composition of Monier's roof tiles erodes to bare concrete …."); *Kahane v. Jansen,* No. A115269, 2008 WL 5077628, at *17 (Cal. Ct. App. Dec. 3, 2008) (stating that "[t]o the contrary, the claims of concealment and affirmative misrepresentation are not necessarily mutually exclusive, but can be mirror images of the same conduct."). In connection to the CLRA, FAL, and UCL Claims, the "[q]uestions of materiality and reliance are determined based upon the reasonable consumer standard… and a showing of materiality is sufficient to raise an inference of classwide reliance." *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 658 (N.D. Cal. 2019) (decertification of non-California classes); *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225 (9th Cir. 2015) ("That one would have behaved differently can be

-18-

1   presumed, or at least inferred, when the omission is material."); *see also Stearns v. Ticketmaster Corp.*,

2   655 F.3d 1013, 1022 (9th Cir. 2011) (presumption of reliance applies where omission or failure to

3   disclose are "material"), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)

4   ; *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014) ("an inference of common reliance

5   arises if representations are material"); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 365

6   (N.D. Cal. 2018) ("UCL, CLRA, and FAL claims that rely on a theory of fraudulent omission are …

7   susceptible to classwide proof … reliance can be inferred when an omission is material" and materiality

8   "is determined using a 'reasonable consumer' standard.").

9           Thus, Plaintiff can and will "show that members of the public are likely to be deceived," *Zeiger*,

10  304 F. Supp. 3d at 850, "without individualized proof by establishing (with, for example, market

11  research) that the statements would be material to a reasonable member of the … class." *Allen v. Conagra*

12  *Foods, Inc.,* 331 F.R.D. at 658; *Yokoyama v. Midland Nat'l Bank Ins. Co.,* 594 F.3d 1087, 1093 (9th Cir.

13  2010) (Because Hawaii uses an objective test for reliance, "[t]he jury will not have to determine whether

14  each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those

15  omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.");

16  *Coca-Cola*, 2020 WL 759388, at *10 ("To establish a label is misleading under each of these statutes,

17  Plaintiffs must satisfy the 'reasonable consumer' standard.").

18          CLRA, FAL, and UCL "fraudulent" claims based on omissions require a showing that "the

19  omission [is] contrary to a representation actually made by the defendant, or an omission of a fact the

20  defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835

21  (2006), *as modified* (Nov. 8, 2006). A duty to disclose arises if a defendant (1) "has exclusive knowledge

22  of material facts not known or reasonably accessible to the plaintiff," (2) "actively conceals a material

23  fact," or (3) "makes partial representations that are misleading because some other material fact has not

-19-

been disclosed." *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593 (Ct. App. 2011), *as modified* (Dec. 28, 2011).

Plaintiff's CLRA, FAL, and UCL claims are amenable to class treatment because as this Court has recognized with respect to California's consumer protection statutes,

> [t]he relevant analysis under California law does not consider whether each class member saw and relied on each of the Challenged Statements and in what combination, but instead whether the Challenged Statements were used consistently through the Class Period, supporting an inference of classwide exposure, and whether the Challenged Statements would be material to a reasonable consumer.

*Krommenhock*, 334 F.R.D. at 563-64 (citing *Hadley*, 324 F. Supp. 3d at 1095 (N.D. Cal. 2018)). *See also Allen*, 331 F.R.D. at 666, 670 (granting class treatment of UCL, CLRA, and FAL claims because they are premised on the reasonable consumer standard and recognizing they are routinely certified); *Martin v. Monsanto Co.*, No. 16-2168(JFW), 2017 WL 1115167, at *6 (C.D. Cal. Mar. 24, 2017) ("Under both the UCL and FAL, relief is available without individualized proof of deception, reliance, and injury.") (citing *In re Tobacco II Cases*, 46 Cal. 4th at 320).

Furthermore, Plaintiff's claims here will stand or fall with respect to the entire Class, rather than succeed as to some members of the Class but not to others. *See, e.g.*, *McCowen v. Trimac Transp. Servs. (W.), Inc.*, 311 F.R.D. 579, 588 (N.D. Cal. 2015) ("class-wide legal questions predominate because the legality of the ABP system, which applied uniformly to drivers, lies at the foundation of each of the wage claims"). Specifically, common evidence will be used to answer, on a class-wide basis, whether (1) WellPet made uniform misrepresentations on, and omissions from, its packaging of the Wellness Food; (2) ███████████████████████████████████████████████████████; (3) the misrepresentations and omissions are material or likely to deceive a reasonable consumer, and (4)

-20-

WellPet had a duty to disclose, can all be resolved by common evidence.[11] For example, Plaintiff can establish that WellPet made uniform misrepresentations and omissions ██████████████ ████████████████████████████████████████████████████ WLPT00000021 (Ex. 32); WLPT00000026 (Ex. 33); WLPT00014986 (Ex. 34); *see* generally Silverman Report at ¶94 (Ex. 3). Plaintiff will also establish materiality through common evidence such as the expert opinions of Bruce G. Silverman and Steven Gaskin, which show WellPet's representations and omissions are material to the reasonable consumer. *See* generally Silverman Report at ¶¶59, 96, 113-114, 120-121 (Ex. 3); Gaskin Report (Ex. 4). ████████████████████████████

---

[11] Materiality is to be "addressed at trial or in a ruling on a summary-judgment motion [and] should not be resolved in deciding whether to certify a proposed class." *Amgen*, 568 U.S. 455 at 470.

-21-

1

2

3

4

5

6   ████████████████. This evidence sufficiently demonstrates that Plaintiff has "met [his] burden to

7   show a fact-finder would be able to answer the question of whether the statements are material to a

8   reasonable consumer on a class-wide basis." *Coca-Cola*, 2020 WL 759388, at *14; *see also*

9   *Krommenhock*, 334 F.R.D. at 565-66 (finding plaintiff's marketing expert and defendants' own

10  documents ample common proof of materiality).

11

12          This same common evidence is relevant to WellPet's duty to disclose as it shows (1) uniform

13  partial representations (the Wellness Statements) are misleading because WellPet failed to disclose

14  material facts (the risk of and/or inclusion of heavy metals and/or BPA), and (2) WellPet had and

15  continues to have exclusive knowledge of the physical and chemical make-up of the Wellness Food, as

16  well as its manufacturing practices and policies, and its testing protocol for ingredient suppliers. ¶52.

17  This is sufficient common evidence for a classwide determination on a duty to disclose. *See Wolin v.*

18  *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (defendant's "duty to disclose its

19  knowledge" was a common issue predominating statutory consumer fraud claims); *Chamberlan v. Ford*

20  *Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (class certification proper where "a common nucleus of

21  facts and potential legal remedies dominate this litigation, such as … whether Ford had a duty to disclose

22  its knowledge and failed to do so.").

23

24

25          Once Plaintiff proves these core issues, he can prove the resultant injury across the Class. *Kwikset*

26  *Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and

27  accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is

28

-22-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the same: the consumer has purchased a product that he or she ***paid more for*** than he or she otherwise might have been willing to pay if the product had been labeled accurately."). Predominance is satisfied.

### b.      Breach of express warranty claim

"In order to plead a breach of express warranty claim, plaintiffs must allege facts sufficient to show that '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Zeiger*, 304 F. Supp. 3d at 853. The Court already recognized that "[j]udges in this district have found that statements on a food label can create an express warranty" and that the Wellness Statements "are sufficient under California law to constitute express warranties." *Id.*

The remaining elements are subject to common proof because "[p]roof of reliance on specific promises or ***representations*** is not required," and Plaintiff must simply "demonstrate that the alleged misrepresentation would have been material to a reasonable consumer." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984-85 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and *aff'd*, 674 Fed. Appx. 654 (9th Cir. 2017). As a result, "[c]ourts have found that breach of express warranty claims are appropriate for class treatment where whether defendant misrepresented its product and whether such misrepresentation breached warranties are issues common to members of the putative class" and "plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer." *Id.* at 985. *See also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 666-69 (C.D. Cal. 2014) (certifying class with respect to CLRA, UCL, FAL, and express warranty claims).

Those are precisely the factors at play here. The only questions remaining are whether WellPet's express warranties are material, and whether it breached the warranties. These issues predominate and will be proven through the same common evidence used to support Plaintiff's UCL, CLRA, and FAL

-23-

claims. *See Lilly*, 308 F.R.D. at 242 (finding common issues predominate plaintiffs' CLRA and FAL claim, and " proving the 'unfair' and 'unlawful' prongs of the UCL also do not depend upon any issues specific to individual consumers, and neither does the breach of warranty claim."); *Brown*, 2014 WL 6483216, at *1, *15-20 (certifying classes pursuing UCL, CLRA, and breach of express warranties claims); *Martin*, 2017 WL 1115167, at *7-8 (predominance met because "[w]hether … a statement constitutes an express warranty, whether that warranty was breached, and whether that statement was likely to deceive a reasonable consumer are issues subject to common and generalized proof.").

### c. *Breach of implied warranty claim*

An implied warranty of merchantability guarantees that goods "(1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.'" Cal. Civ. Code §1791.1(a). As this Court recognized, Plaintiff is "proceed[ing] under the theory that WellPet's Products are not merchantable because they fail to '[c]onform to the promises or affirmations of fact made on the container or label if any.'" *Zeiger*, 304 F. Supp. 3d at 854-55 (second alteration in original); *see also Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975) ("Merchantability has several meanings ... [such as] the product must conform to the promises or affirmations of fact made on the container or label.") (internal quotation marks and alterations omitted).

Whether the Wellness Food conforms to the labels' promises and affirmations of fact is a common issue of fact that will be proven using the same common evidence detailed above for the express warranty claim. The breach of implied warranty claim is therefore well-suited for class treatment. *See Sloan v. Gen. Motors LLC*, 16-CV-07244-EMC, 2020 WL 1955643, at *53 (N.D. Cal. Apr. 23, 2020) (granting class treatment of breach of implied warranty claim); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 537 (C.D. Cal. 2012) (breach of implied warranty claim "susceptible of common proof");

-24-

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568-69 (S.D. Cal. 2012).

### 2.     A Class Action is the Superior Method of Adjudication

"In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). The first factor requires analyzes "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). When individual damages are small, this factor weighs in favor of certification. *Zinser*, 253 F.3d at 1190. The small amount of individual damages for members of the Class here demonstrates that individual actions would undoubtedly result in negative value propositions based on the cost of obtaining the type of evidence (including expert evidence) necessary to litigate this case. As a result, no reasonable consumer would bring such an action. Accordingly, this factor weighs in favor of class certification. *See Wolin*, 617 F.3d at 1175-76; *see also Marsh v. First Bank of Delaware*, 11-cv-05226-WHO, 2014 WL 554553, at *15 (N.D. Cal. Feb. 7, 2014) (finding superiority where "each proposed class members' recovery is likely to be too low for that person to bring an individual action.").

The second factor requires a court to determine "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). This factor is also met as there are no other pending actions against WellPet. *See Marsh*, 2014 WL 554553, at *15 (finding superiority where "there is no evidence before the Court of any other private actions against any of the defendants alleging the same misconduct or that any likely class member has an interest in prosecuting a separate action.").

The third factor examines "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This factor also weighs in favor of class certification because Plaintiff is a citizen of this District, and there is no other more desirable forum in which to litigate his claims. Finally, the Court must consider "the likely difficulties in managing a class

-25-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

action." Fed. R. Civ. P. 23(b)(3)(D). This case does not present any manageability concerns because it involves only California law and is premised upon uniform misrepresentations and omissions on the packaging of three pet food products. However, should the Court find otherwise, it should not refuse to certify a class on the basis of manageability alone "given the variety of procedural tools courts can use to manage the administrative burdens of class litigation." *Briseno*, 844 F.3d at 1128. This factor weighs in favor of class certification.

### C.    Damages

At the class certification stage, "Plaintiff[] need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017); *see also Comcast*, 569 U.S. at 35. Plaintiff will present evidence supporting a price premium damages theory for the Class, which is consistent with Plaintiff's liability theories and provide the common method this Circuit and *Comcast* require.

Plaintiff's damages model directly tracks his theory of the case. Plaintiff's expert, Steven P. Gaskin, conducted a choice-based conjoint ("CBC") study "to determine the relative market values of a product with and without a particular product feature or claim on the label, or given the disclosure or non-disclosure of a product defect feature at the time and point of first purchase." *See* Gaskin Report at ¶13 (Ex. 4). In a CBC study, "consumers are shown sets of product profiles made up of varying features ("choice sets") and asked, as part of a series of 'choice tasks,' to indicate their preferred product profile among those shown…." *Id.* ¶15 (Ex. 4). [T]he analysis is based on choices respondents make among alternative product profiles like those shown in the choice tasks described in [Gaskin's] report." *Id.* ¶17 (Ex. 4). "The general idea behind conjoint analysis is that the market value for a particular product is driven by features, or descriptions of features, embodied in that product." *Id.* ¶16 (Ex. 4). "The conjoint analysis uses data from the survey on the feature levels of the product profiles shown, and the resulting choices of respondents, to generate partial contributions of these feature levels ("partworths") to overall

-26-

product utility." *Id.* ¶20 (Ex. 4).

Here, Mr. Gaskin designed and implemented a scientifically valid CBC study to determine the market value attributable to the Wellness Statements and related omissions. *Id.* at ¶¶10-12, 48. This CBC took into account relevant economic considerations. *See* Weir Report at ¶¶24-40 (Ex. 31). Mr. Gaskin's CBC study surveyed 442 respondents (27 of whom were based in California) to "determine the market price premium for the Wellness Foods (measured in dollars and/or percentage terms) with the omissions and misrepresentations, compared to the value of these Wellness Foods without the omissions and misrepresentations." *Id.* ¶20 (Ex. 31). The CBC study found a market price premium associated with each of the Wellness Statements and each of the omissions. *Id.* ¶62 (Ex. 31). That is, the misrepresentations and omissions proved to be material, resulting in significant price premiums for the Wellness Statements and omissions. *Id.* ¶¶62-63 (Ex. 31).

This model is precisely what the Court accepted in *Krommenhock*. 334 F.R.D. at 574-75. It properly measures "only those damages attributable" to Plaintiff's theory of liability—WellPet's misrepresentations and omissions regarding the risk of heavy metals and BPA in its Wellness Food—resulting in a finding that each misrepresentation and omission carries a price premium. *Krommenhock*, 334 F.R.D. at 575; Weir Report at ¶¶52-54, 62 (Ex. 31). This price premium is common to each member of the Class and can be used, and was used by Plaintiff's' expert, to calculate the economic loss the Class suffered due to WellPet's deceptive labeling. *See* Weir Report at ¶¶46-50 (Ex. 31).

Other courts in this District, as well as others, have also accepted class-wide damages models based on surveys. *See*, *e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1023-32 (holding that the proposed survey analysis was "sufficiently reliable to be used in calculating class-wide damages," and, therefore, satisfied *Comcast* as part of a hybrid damages methodology); *Broomfield*, 2018 WL 4952519, at *14 ("The price-premium results of this [choice-based conjoint] analysis can then be used to determine

-27-

1   the amount of restitution owed to each class member …."); *Guido v. L'Oreal, USA, Inc.*, No. 2:11-cv-

2   01067-CAS (JCx), 2014 WL 6603730, at *5, *14 (C.D. Cal. July 24, 2014) (finding a survey

3   methodology to be an admissible way to calculate class-wide damages); *TV Interactive Data Corp. v.*

4   *Sony Corp.*, 929 F. Supp. 2d 1006, 1019-20 (N.D. Cal. 2013); *In re Toyota Motor Corp. Hybrid Brake*

5   *Mktg., Sales Practices & Prods. Liab. Litig.*, No. 10-2172, 2012 WL 4904412, at *3-4 (C.D. Cal. Sep.

6   20, 2012). Plaintiff's model supports class certification.

7

8      **D.  Alternative Rule 23(c)(4) Limited Issues Class**

9      Rule 23(c)(4) provides that, "[w]hen appropriate[,] 'an action may be brought or maintained as a

10   class action with respect to particular issues.'" *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1229

11   n.3, 1234 (9th Cir. 1996) (citing Fed. R. Civ. P. 23(c)(4)(A)).[12] In fact, Rule 23(c)(4) has been recognized

12   as a "management device[]" that "imposes a duty on the court and gives it ample power to treat common

13   things in common and to distinguish the distinguishable." *In re Activision Sec. Litig.*, 621 F. Supp. 415,

14   438 (N.D. Cal. 1985). In order to obtain Rule 23(c)(4) issue certification, Plaintiff need not meet the

15   predominance requirement. *See Avilez v. Pinkerton Gov't Servs., Inc.*, 596 Fed. Appx. 579, 579-80 (9th

16   Cir. 2015). "Courts have applied subdivision (c)(4)(A) to allow a partial class action to go forward,

17   leaving questions of reliance, damages, and other issues to be adjudicated on an individual basis." 7A

18   Wright & Miller, *Federal Practice and Procedure: Civil* §1790 (3d ed.). Issue certification can be

19   employed "even if only one common issue can be identified as appropriate for class treatment, that is

20   enough to justify the application of the provision as long as the other Rule 23 requirements are met." *Id.;*

21   *see also Frlekin v. Apple Inc.*, 13-03451, 2015 WL 6851424, at *2 (N.D. Cal. Nov. 7, 2015).

22

23      It is well-established that the standard upon which to judge Rule 23(c)(4) certification is whether

24

25

26

27   ---

[12] Likewise, "Rule 42(b) permits a court to divide up a single action into separate trials, thereby treating

28   individual claims in phases, rather than en masse." *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 658
(C.D. Cal. 2000).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"the adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency." *Valentino,* 97 F.3d at 1229. Here, it is indisputable that certifying all issues related to liability or even core liability issues—like whether WellPet (1) made material misrepresentations and omissions, (2) was aware of the falsity of its representations and that it was making material omissions, (3) had a duty to disclose, and (4) that these omissions had the likelihood or capacity to deceive a reasonable consumer—would significantly advance the resolution and economize judicial resources, and provide a more efficient mechanism that relitigating these issues time and again.

Accordingly, if the Court rejects Plaintiff's damages model, it can and should grant issue certification as to liability for his claims. *Lilly*, 308 F.R.D. at 244 (rejecting full refund damages model, but certifying "the proposed class solely for purposes of determining liability" pursuant to Rule 23(c)(4) because common issues predominated plaintiff's express warranty, CLRA, FAL, and UCL claims); *Spann v. J.C. Penney Corp.,* 307 F.R.D. 508, 533 (C.D. Cal. 2015), *modified,* 314 F.R.D. 312 (C.D. Cal. 2016) ("court can, in the alternative, bifurcate under Rule 23(c)(4) and a certify a liability-only class, eliminating the need to address at this time any issues relating to restitution or damages.").

Alternatively, the Court should certify certain or all issues identified in Section III.A.2 because interests of judicial economy and efficiency call for adjudicating these issues in one as opposed to hundreds or thousands of separate individual trials given that the same witnesses and evidence would be presented at each trial. *See Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977) (affirming certification of whether misrepresentations and omissions were made and their materiality, and excluding other issues like reliance and causation); *Frlekin*, 2015 WL 6851424, at *2 (certifying class on the single issue of whether "Apple had to compensate its employees for time spent waiting for bag searches to be completed"); *In re Activision Sec. Litig.*, 621 F. Supp. at 438 (finding "it both appropriate and desirable to certify a defendant class of underwriters to litigate the single issue under §

-29-

12(2) of material misrepresentations and omissions in the offering materials.").

### E.     Plaintiff Meets the Rule 23(b)(2) Requirements

Plaintiff seeks Rule 23(b)(2) certification to prohibit the future sale of misbranded dog food. "Class certification is appropriate under Rule 23(b)(2) when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Kihn v. Bill Graham Archives, LLC*, No. 17-CV-05343-YGR, --- F. Supp. 3d ---, 2020 WL 1820708, at *22 (N.D. Cal. Apr. 10, 2020). Rule 23(b)(2) certification is warranted here because "Plaintiffs claim that [WellPet] has a uniform policy and practice of misrepresenting on its packaging…" and "[e]njoining those alleged misrepresentations would provide relief to the class as a whole." *Broomfield*, 2018 WL 4952519, at *8. Further, "injunctive relief is the 'primary form of relief' available under the consumer protection laws." *Id*. "And in any event, 'whether the damages claims are incidental to the injunctive relief the plaintiffs seek is irrelevant, because the plaintiffs are not seeking to recover damages for the proposed Rule 23(b)(2) class.'" *Id*.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for class certification pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), or 23(c)(4). In the alternative, Plaintiff respectfully requests an opportunity to renew this motion to cure any deficiencies identified by the Court, including but not limited to modifying the definitions of any of the proposed classes and substituting Plaintiff with a different class representative.

Dated: June 29, 2020

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST (*pro hac vice*)
REBECCA A. PETERSON (241858)

*/s/Rebecca A. Peterson*
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
         rapeterson@locklaw.com

ROBBINS LLP
KEVIN A. SEELY
STEVEN M. MCKANY
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
         kseely@robbinsllp.com
         arifkin@robbinsllp.com
         smckany@robbinsllp.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)
RAINA C. BORELLI (*pro hac vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
         rborelli@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA (*pro hac vice*)
KATHERINE VAN DYCK (*pro hac vice*)
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
         kvandyck@cuneolaw.com

-31-

1
2
3
4
5

LITE DEPALMA GREENBERG, LLC
JOSEPH J. DEPALMA (*pro hac vice*)
SUSANA CRUZ HODGE (*pro hac vice*)
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
       scruzhodge@litedepalma.com

6
7
8
9
10
11

WEXLER WALLACE LLP
Kenneth A. Wexler (*pro hac vice*)
Michelle Perkovic (*pro hac vice*)
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wexlerwallace.com
       mp@wexlerwallace.com

12

*Attorneys for Plaintiff*

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum of Law in Support of Plaintiff's Motion for Class Certification
Case No.:  3:17-cv-04056-WHO