Rebecca A. Peterson (241858)
Robert K. Shelquist (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
E-mail: rapeterson@locklaw.com
            rkshelquist@locklaw.com
Attorneys for Plaintiff
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLPET LLC, a Delaware corporation,<br><br>Defendant. | Case No. 3:17-cv-04056-WHO<br><br>CLASS ACTION<br><br>**PLAINTIFF'S REPLY IN SUPPORT TO MOTION FOR CLASS CERTIFICATION**<br><br>Date:    November 18, 2020<br>Time:   2:00 p.m.<br>Dept.:  Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     STATEMENT OF FACTS ............................................................................................1

III.    ARGUMENT ................................................................................................................5

        A.      COMMON ISSUES PREDOMINATE ...........................................................5

                1.      WellPet Made Uniform Material Omissions ......................................5

                2.      The Wellness Statements Were Uniform............................................6

                3.      The Wellness Statements Are Material................................................8

        B.      Plaintiff's Damages Model Ties Directly to His Liability Theory .................9

        C.      Plaintiff is Typical of the Class...................................................................11

        D.      Rule 23(b)(2) Certification is Proper ...........................................................15

        E.      In the Alternative, the Court Should Certify a Rule (c)(4) Class.................16

IV.     CONCLUSION............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alger v. FCA US LLC*,
 334 F.R.D. 415 (E.D. Cal. 2020) ...................................................................6

*Amey v. Cinemark USA Inc.*,
 No. 13-cv-05669, 2018 WL 3956326 (N.D. Cal. Aug. 17, 2018) ...................14

*Astiana v. Kashi Co.*,
 291 F.R.D. 493 (S.D. Cal. 2013) .............................................................13, 14

*Banh v. Am. Honda Motor Co.*,
 No. 19-cv-05984, 2020 WL 4390371 (C.D. Cal. July 28, 2020),
 *appeal filed*, No. 20-80120 (9th Cir. Aug. 12, 2020) ...................................10

*Bennett v. GoDaddy.com LLC*,
 No. 16-cv-03908, 2019 WL 1552911 (D. Ariz. Mar. 15, 2019) ....................14

*Bowerman v. Field Asset Servs.*,
 No. 13-cv-00057, 2015 WL 5569061 (N.D. Cal. Sep. 21, 2015) ..................17

*Broomfield v. Craft Brew All., Inc.*,
 No. 17-cv-01027, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) .................15

*Brown v. Hain Celestial Grp., Inc.*,
 No. 11-cv-03082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ..................13

*Chavez v. Blue Sky Nat. Beverage Co.*,
 268 F.R.D. 365 (N.D. Cal. 2010) .................................................................14

*Contra D.C. ex rel Garter v. Cnty. of San Diego*,
 783 F. App'x 766 (9th Cir. 2019) ...............................................................17

*Daniel v. Ford Motor Co.*,
 806 F.3d 1217 (9th Cir. 2015) ......................................................................6

*Daniel v. Ford Motor Co.*,
 No. 11-cv-02890, 2016 WL 8077932 (E.D. Cal. Sept. 23, 2016) ..................5

*Daugherty v. Am. Honda Motor Co.*,
 144 Cal. App. 4th 824 (2006), *as modified* (Nov. 8, 2006) ...........................14

*Davidson v. Kimberly-Clark Corp.*,
 889 F.3d 956 (9th Cir.), *cert. denied*, 139 S. Ct. 640, 202 L. Ed. 2d 492 (2018) ............................16

ii

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ..................................................................................8

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018) ...........................................................................8

*Grimm v. APN Inc.*,
  No. 17-cv-00356, 2017 WL 6398148 (C.D. Cal. Aug. 31, 2017) ....................................4

*Guido v. L'Oreal, USA, Inc.*,
  284 F.R.D. 468 (C.D. Cal. 2012) ...........................................................................6

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) .............................................................10, 11

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................................13

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17-cv-2335, 2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)........................................9

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  No. 13-ml-2438, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ........................................8

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018), *leave to appeal denied sub nom.*
  *Reyna v. Arris Int'l PLC*, No. 18-80099, 2018 WL 6167340 (9th Cir. Nov. 8, 2018) ..............10, 11

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ............................................................................17

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
  No. 19-cv-1203, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) .....................................10

*Khoday v. Symantec Corp.*,
  No. 11-cv-180, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) .......................................10

*Kirkton v. Daimlerchrysler Corp.*,
  No. B199285, 2008 WL 1947916 (Cal. Ct. App. May 6, 2008) (unpublished) ..........................17

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)................................................................ *passim*

*Krueger v. Wyeth, Inc.*,
  310 F.R.D. 468 (S.D. Cal. 2015) ..........................................................................11

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013) .............................................................................17

iii

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ........................................................................17

*Mannacio v. LG Elecs. U.S.A., Inc.*,
   No. 16-cv-1220, 2020 WL 4676285 (D. Minn. Aug. 12, 2020) .........................10

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (2002) ..............................................................................5

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ...............................................................................10

*Philips v. Ford Motor Co.*,
   No. 14-cv-02989, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016),
   *aff'd*, 726 F. App'x 608 (9th Cir. 2018) ..............................................................16

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
   No. 14-cv-7242, 2016 WL 5920345 (C.D. Cal. June 23, 2016) ...........................8

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ...............................................................................17

*Rahman v. Mott's LLP*,
   693 Fed. Appx. 578 (9th Cir. 2017) .....................................................................17

*Reitman v. Champion Petfoods USA, Inc.*,
   No. 18-cv-1736, 2019 WL 7169792 (C.D. Cal. Oct. 30, 2019),
   *appeal filed*, No. 19-56467 (9th Cir. Dec. 19, 2019) ...........................................9

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................15

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .............................................................................15

*Sanchez-Knutson v. Ford Motor Co.*,
   181 F. Supp. 3d 988 (S.D. Fla. 2016) ..................................................................10

*Sandoval v. PharmaCare US, Inc.*,
   730 F. App'x 417 (9th Cir. 2018) .........................................................................12

*Shank v. Presidio Brands, Inc.*,
   No. 17-cv-00232, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .........................16

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018), *order clarified*, No. 16-cv-07244,
   2018 WL 1156607 (Mar. 5, 2018) ........................................................................6

iv

*Tait v. BSH Home Appliances Corp.*,
　289 F.R.D. 466 (C.D. Cal. 2012) ................................................................12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
　617 F.3d 1168 (9th Cir. 2010) ....................................................................8

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
　594 F.3d 1087 (9th Cir. 2010) ...........................................................16, 17

**RULES**

Fed. R. Civ. P. 23 .......................................................................... *passim*

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

WellPet minimizes the importance of this case by suggesting it is merely "about dog food." But this case is about more than dog food.  Plaintiffs' claims challenge WellPet's scheme to make millions by misrepresenting the quality of its premium-priced dog food and overcharging California dog lovers. In the end, the packaging promises much and delivers less than promised because it fails to disclose the inclusion or risk of lead, arsenic, or BPA.

WellPet's predominance argument misses the mark. WellPet fails to address why Plaintiff's omissions claims do not satisfy predominance. This is purposeful because its packaging does not disclose any challenged omissions and thus, WellPet cannot point to alleged packaging differences to defeat predominance.  Further, just because WellPet changed the font size or the placement of its misrepresentations on the bags, that does nothing to alter the uniform messaging at issue here. Moreover, each subclass contains a single diet and thus, any questions as to minor packaging variations are common to the subclasses. Nonetheless, the law does not require identical packaging to bring a classwide deceptive marketing claim.

WellPet's other arguments fare no better. Plaintiff's damages model rightly ties the damages to the false and misleading packaging statements and omissions, and Plaintiff is typical of the subclasses because he suffered the same injury as a result of the same deceptive conduct as the subclasses. None of WellPet's other arguments support denial of class certification here.

## II.  STATEMENT OF FACTS

The relevant facts are straightforward and common to every class member.  WellPet's attempt to misdirect the Court with irrelevant minutiae should be ignored. First, WellPet's focus on its history is immaterial to the misleading packaging that is the primary issue in this case:

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

- WellPet targeted consumers who were willing to pay a higher price for quality, healthy, nutritious, and natural dog food. Dkt. 152 at 2, 8-9; Dkt. 152-3 (Ex. 1 at -2480-2483; Ex. 2 at 255:11-14; Ex. 3 at ¶¶ 48-57).

- WellPet chose marketing terms that conveyed those attributes by using the following marketing claims: (1) "Uncompromising Nutrition"; (2) "Unrivaled Quality Standards"; (3) "Natural"; (4) "Nothing in excess and everything in balance"; and (5) "Offers complete health" (collectively, the "Wellness Statements").  It successfully curated this image, causing consumers to pay a premium. Dkt. 152 at 2; Dkt. 152-3 (Ex. 1 at -2480-2482; Ex. 2 at 208:12-15, 209:10-16, 242:14-17; Ex. 3 at ¶¶59, 63-84, 93).

- WellPet sold its dog food at a premium price, including at a super premium price. Dkt. 152-3 (Ex. 1 at -2482; Ex. 2 at 242:14-17; Ex. 3 at ¶93).

- The relevant Wellness Statements were uniformly used for the three subclasses. Dkt. 152-10 (Ex. 32; Ex. 33; Ex. 34); Dkt. 152-3 (Ex. 3 at ¶94).

Second, WellPet's lengthy discourse on the FDA and pet food safety regulations is misleading and misplaced. This action alleges violations of California common law and consumer protection statutes. Dkt. 95 ¶¶79-105. Nonetheless, the record is clear that:

- The FDA does not regulate heavy metals or BPA in dog food. Ex. 1 at 152:12-16 ("Q. …[T]here is no action level or tolerance level as to heavy metals that has been regulated or that been officially adopted to regulation either at the state or federal level. Correct? A: For animals, no."); 88:20-22 ("Q: Is there any regulation by the FDA as to what is a level for pet food [of BPA] that is acceptable? A: No."); 31:3-22 (Dr. Robert Poppenga testifying that the FDA has not established tolerance or action levels of heavy metals).[1]

---

[1] All references to Exhibits are to the Declaration of Rebecca A. Peterson unless otherwise noted.

-2-

- The 2011 Target Animal Safety Review Memorandum is not a regulation, rule, or even official guidance adopted by the FDA. *Id.*; *Id.* at 28:21-29:1.

- The NRC MTLs published in 2006 were based on studies conducted on numerous species decades ago. More recent articles on heavy metals in dog food acknowledge further studies should be done. Exs. 2 at 577; 3 at 4 ('There are few studies measuring the toxic heavy metal contamination of pet foods, and the extent of elemental exposure compared to humans, and the possibility of intoxication from chronic consumption of diets were not evaluated … [and] neither AAFCO nor NRC provides specific standards for these heavy metals since they are not essential nutrients.").

- There is a health risk associated with heavy metals and BPA, and the FDA tests dog food for heavy metals when investigating pet illness. Dkt. 152-6 at 14-17; Ex. 1 at 40:15-41:5.

- Bioaccumulation of heavy metals can occur in dogs. Dkt. 152-6 at 17; Exs. 3-4 ("Fish protein sources such as tuna are known to bioaccumulate high concentrations of heavy metals, such as mercury" (Atkins 2011); "Arsenic accumulates in the kidney and liver…as a part of chronic exposure, lead also can accumulate in kidneys causing proximal tubular nephropathy... [I]t is conceivable that chronic exposure [of lead] could contribute to diseases that occur in aged dogs eating the same product for many years, particularly lead since other species data suggests that lead exposure of 0.1 mg/kg body weight daily can lead to chronic neuropathy." (Kim et al. 2018)) (both cited in the Poppenga Report);  Ex. 1 at 70:6-25 (Dr. Poppenga confirms bioaccumulation can occur in dogs.)

- Although Dr. Poppenga opined that the NRC MTLs are the "best and most widely used scientific guidance," he later testified "best" is not a scientific term and spoke to no other toxicologists about MTLs. Ex. 1 at 20:15-19 114:7-11.

-3-

- WellPet admits that an animal can develop "an injury or illness from exposure [to heavy metals]" and that it would depend on both "level [] and exposure." Opp. at 4.

- It is not common to distinguish between organic and inorganic arsenic in testing for heavy metals, including the testing done by the FDA, UCD, and WellPet. Ex. 1 at 122:14-25.

- The AAFCO guidelines are not governing law in California. *Grimm v. APN Inc.*, No. 17-cv-00356, 2017 WL 6398148, at *3 (C.D. Cal. Aug. 31, 2017).

Finally, WellPet's spin on its supposed food safety procedures, including heavy metal and BPA testing, Opp. at 6-9, does nothing to address the common evidence supporting the common issues here:

- WellPet *did not* follow its own Quality Manual barring introduction of heavy metals from ingredients received from its suppliers. Ex. 5 at 3; Dkt. 152 at 3-5; 152-5 (Ex. 5);

- WellPet stopped testing for heavy metals in 2015. Ex. 5 at 3; Dkt. 152 at 3-6.

- WellPet's Quality Manual specifically prohibits inclusion of BPA and WellPet did nothing (including testing) to ensure that BPA was not in its dog food. Dkt. 152 at 6; Dkt. 152-5 at -8059.

- WellPet stated in this case that it required suppliers to follow the Quality Manual before reneging to claim it was just a draft. Ex. 5 at 3 ("Given these consistent results, WellPet discontinued this testing in approximately 2015, but requires ingredient suppliers to ensure that heavy metals are not introduced into WellPet's products.") (citing Quality Manual).

- Consumers care about heavy metal and BPA omissions. Dkt. 152-3 (Ex. 3 at ¶¶59, 113-121).

- Testing relied on by WellPet's expert demonstrates that testing at parts per billion detection levels is common in the scientific world. Ex. 1 at 80:11-81:15; 46:16-24.

- WellPet's expert admits it can control the levels of heavy metals in its food by testing the ingredients. *Id.* at 86:1-11 ("Q: Could a pet food manufacturer limit or correct that safety issue

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

by testing its ingredients and seeing what those results are before they make their pet food?
A: Yes Q: Okay. "[C]ould [they] choose which ingredients should be added or not added to
help address bringing the heavy metal levels down in that pet food. Correct? A: Yes. Q: Would
that also be true for BPA?  A: Yes."); Dkt. 152-6 at 20.

- WellPet now tests for heavy metals and BPA. Ex. 6 at 67:25-68:5, 71:7-9; 73:3-11.

## III.    ARGUMENT

### A.    COMMON ISSUES PREDOMINATE

To meet predominance, "Class members' claims 'must depend upon a common contention ... [that
is of] such a nature that it is capable of classwide resolution-which means that determination of its truth
or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"
*Daniel v. Ford Motor Co.*, No. 11-cv-02890, 2016 WL 8077932, at *2 (E.D. Cal. Sept. 23, 2016)
(alteration in original).[2]

#### 1.    WellPet Made Uniform Material Omissions

Questions related to whether WellPet made material omissions necessarily predominate in this
case because the whole of each subclass was undeniably exposed to the vehicle on which WellPet should
have disclosed material information—packaging. WellPet does not dispute that it failed to inform
consumers that its dog food contained (or had the risk of) arsenic, lead, or BPA. WellPet's challenge to
predominance ignores that the class members' uniform exposure to these material omissions, separate
and apart from any affirmative or partial misrepresentations, is a "common question of fact suitable for
treatment in a class action." *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1294 (2002).
This is why courts have repeatedly held that "common issues of law and fact predominate[] in claims

---

[2] All quotations and citations are omitted unless otherwise noted.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

1
2

brought pursuant to the CLRA for failure to disclose" material information. *E.g.*, *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) (alteration in original).

3
4
5
6
7
8
9
10
11
12

Plaintiff alleges material omissions, along with partial disclosures and misrepresentation claims, (Dkt. 95, ¶¶12-13), and a duty to disclose omitted material information separate and apart from one that arises from a partial disclosure. Dkt. 152 at 10-11, 19-20. WellPet's sole argument, focused on the challenged statements, bears no weight on the omissions-related predominance inquiry here. Indeed, "[w]hat matters in an omission case … is whether the plaintiff had an *opportunity* to receive and therefore rely on the omitted information, not whether they actually received some other, irrelevant information." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018), *order clarified*, No. 16-cv-07244, 2018 WL 1156607 (Mar. 5, 2018), *and on reconsideration*, 438 F. Supp. 3d 1017 (2020).

13
14
15
16
17
18
19
20
21
22
23

WellPet also failed to rebut common evidence of the materiality of these omissions, allowing classwide inference of reliance. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). First, its own documents show that the inclusion (or risk) of heavy metals and BPA is material because it created requirements for suppliers that would exclude their presence in the dog food, Dkt. 152 at 3-7, and it targeted pet parents that wanted nutritious, safe, natural, healthy, and high-quality dog food, Dkt. 152 at 7-10. Second, Plaintiff's survey demonstrated the materiality of these nondisclosures. Dkt. 152 at 20-22. This common evidence will show the "effect on the class [of the omissions], … what [WellPet] knew and disclosed, and what [WellPet] knew and did not disclose." *Alger v. FCA US LLC,* 334 F.R.D. 415, 426 (E.D. Cal. 2020). "These questions predominate over any individual concerns …." *Id.*

24

### 2.    The Wellness Statements Were Uniform

25
26
27
28

"The relevant analysis under California law does not consider whether each class member saw and relied on each of the [misrepresentations] and in what combination, but instead whether the [misrepresentations] were used consistently through the Class Period, supporting an inference of

-6-

classwide exposure, and whether the [misrepresentations] would be material to a reasonable consumer." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-64 (N.D. Cal. 2020). Whether there is variation in the placement or font size of the same misrepresentations, Opp. at 11-14, is irrelevant to predominance because "the majority of [misrepresentations] were made consistently (or consistently enough) throughout the relevant timeframes on the Products' packages." *Id.* at 565.

*The Core Class*: WellPet admits that "uncompromising nutrition" was on the packaging throughout the Class Period. Opp, at 12.[3] It makes no challenges to the natural claim appearing on the packaging. *Id.* And as to "with nothing in excess and everything in balance" and "Unrivaled quality standards," it admits either one or the other was on the package at some point during the Class Period, and Plaintiff's damages model reflects a near exact price premium for each. Thus, there is no need to split the subclass to create two class periods. Opp. at 12-13; Dkt. 152-4 at 29.

*The Wellness Class*: WellPet admits that "uncompromising nutrition" was on the Complete Health Sweet Potato packaging throughout the Class Period and makes no challenges to the natural claim on the packaging. Opp. at 12. It also makes no challenges to the "offers complete health" statement. WellPet further states the "Unrivaled quality standards" did not appear until 2016, but the earlier seal states, "Highest quality standards." WellPet does not explain how this defeats a uniform message.[4] Opp. at 13.

---

[3] WellPet's reliance on the Marseglia Declaration is misplaced as Ms. Marseglia testified she could not confirm if any of packaging at issue here was subject to her statements about the general process at WellPet. Opp. at 12 n. 16, 14; Ex. 9 at 25:23-30:14; 38:8-41:8; 46:10-49:1. She further confirmed she reviewed no documents or spoke to any WellPet employees in drafting the declaration. *Id.* at 14:12-15:17.

[4] That certain diets did not have a specific Wellness Statement is irrelevant as the diets are subclassed.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*The Wellness Grain-Free Class*: WellPet again makes no challenge to the "natural" or "offering complete health" statements on the Complete Health Menhaden packaging. It instead focuses on the font size of two of the challenged statements. *Id*.[5]

These manufactured distinctions without a difference do not defeat predominance. The Wellness Statements relevant to each subclass were sufficiently uniform. Therefore, "[w]here, as here, there is evidence that the representation was consistently made on a product's label, the only question is whether it was objectively material to a reasonable consumer." *Krommenhock,* 334 F.R.D. at 565.[6]

### 3.    The Wellness Statements Are Material

Materiality "'does not require that class members have a uniform understanding of the meaning of' the challenged representation." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) ("[T]he California consumer protection statutes are governed by the 'reasonable consumer' test. Under this standard, Plaintiff must 'show that "members of the public are likely to be deceived."'").[7] Plaintiff has shown materiality through WellPet's documents and a survey of consumers who purchased WellPet products.

WellPet improperly seeks to have the Court make factual and merit calls on common evidence that will be used to answer the liability questions. That is improper at this stage. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (arguments relating to the merits of the claims

---

[5] WellPet's claim that further subclasses are "not workable" should be rejected as it relies on the "general process" at WellPet. It cannot be verified that this process or timeline applied to the diets at issue during the Class Period. Ex. 9 at 25:23-30:14; 38:8-41:8; 46:10-49:1.

[6] This Court previously rejected the argument that text placement or context defeats predominance in *Krommenhock*, which is equally applicable here. 334 F.R.D. at 564-65.

[7] WellPet neither claims that the Wellness Statements are vague nor offers evidence as to consumer purchasing decisions, so its cited cases are inapplicable. *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. 13-ml-2438, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017); *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, No. 14-cv-7242, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016).

-8-

do not defeat class certification). It asks this Court to hold that the Wellness Statements cannot be related to the omissions claims, despite an expert report to the contrary,[8] based on irrelevant context. But the presence of "other phrases" or "other 'possible influences'… go[es] to the weight" of the evidence. *Krommenhock*, 334 F.R.D. at 580.

> The jury will consider the context of the Challenged Statements on the Products' labels, as well as relevant [WellPet] documents that impacted [WellPet]'s decisions to use certain statements or how to place them, in order to determine whether "a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action. '"

*Id*. Even if the Court finds context relevant, the alleged context is identical for each subclass, so the fact-finder can resolve the issue classwide. *Contra Reitman v. Champion Petfoods USA, Inc.*, No. 18-cv-1736, 2019 WL 7169792, at *9 (C.D. Cal. Oct. 30, 2019), *appeal filed*, No. 19-56467 (9th Cir. Dec. 19, 2019).

## B.   Plaintiff's Damages Model Ties Directly to His Liability Theory

WellPet treats the *Comcast* and *Daubert* standards as interchangeable. It makes only a fleeting statement that Plaintiff's damages model "fails" the *Comcast* test before turning to its chief argument, that the methodologies employed by damages experts Steve Gaskin and Colin Weir are irrelevant and unreliable.[9] Opp. at 18-19. But "[t]he questions of whether there is the required fit under *Comcast* and whether an expert's opinion should be excluded under *Daubert* are distinct." *Krommenhock*, 334 F.R.D. at 575 n.18. For class certification, "what matters is … whether it is sufficiently linked to the theory of damages and is capable of identifying damages on a class-wide basis." *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-cv-2335, 2018 WL 6300479, at *14 (S.D. Cal. Nov. 29, 2018). "[W]hether Gaskin's proposed conjoint analysis is sufficiently reliable from a methodological standpoint—and

---

[8] An expert report that WellPet has not sought to exclude. It also chose not to depose Dr. Silverman.

[9] The reliability and relevance arguments are addressed in Plaintiff's opposition to WellPet's motion to strike Gaskin and Weir filed simultaneously as this reply.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

1    therefore admissible under *Daubert*—is a different issue …." *Hadley v. Kellogg Sales Co.*, 324 F. Supp.

2    3d 1084, 1106 (N.D. Cal. 2018). The Court "must now determine whether [Plaintiff's] damages model

3    flows from his theory of liability." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019).

4    "Calculations[] need not be exact," *Krommenhock*, 334 F.R.D. at 575, and "[c]lass wide damages

5    calculations under the ... CLRA are particularly *forgiving*. California law 'requires only that some

6    reasonable basis of computation of damages be used, and the damages may be computed even if the result

7    reached is an approximation.'" *Nguyen*, 932 F.3d at 818.

8

9         This Court well knows "that the 'price premium attributable to' an alleged misrepresentation on

10   product labeling or packaging is a valid measure of damages in a mislabeling case under the FAL, CLRA,

11   and UCL." *In re Arris Cable Modem Consumer Litig.* ("*Arris*"), 327 F.R.D. 334, 373 (N.D. Cal. 2018),

12   *leave to appeal denied sub nom. Reyna v. Arris Int'l PLC*, No. 18-80099, 2018 WL 6167340 (9th Cir.

13   Nov. 8, 2018); *Hadley*, 324 F. Supp. 3d at 1104. And it, along with other courts, has repeatedly accepted

14   the methodologies used by Gaskin and Weir in false labeling cases. *Krommenhock*, 334 F.R.D. at 567,

15   573-78; *Hadley*, 324 F. Supp. 3d at 1103-10; *Kaupelis v. Harbor Freight Tools USA, Inc.*, No. 19-cv-

16   1203, 2020 WL 5901116, at \*5-6 (C.D. Cal. Sept. 23, 2020); *Mannacio v. LG Elecs. U.S.A., Inc.*, No.

17   16-cv-1220, 2020 WL 4676285, at \*8 (D. Minn. Aug. 12, 2020); *Banh v. Am. Honda Motor Co.*, No. 19-

18   cv-05984, 2020 WL 4390371, at \*18-19 (C.D. Cal. July 28, 2020), *appeal filed*, No. 20-80120 (9th Cir.

19   Aug. 12, 2020); *Arris*, 327 F.R.D. at 373; *Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988, 996

20   (S.D. Fla. 2016); *Khoday v. Symantec Corp.*, No. 11-cv-180, 2014 WL 1281600, at \*33 (D. Minn. Mar.

21   13, 2014). WellPet offers no reason why the result should differ here. It does not explain how arguments

22   about bias, overstating damages, or supply-side factors relate to the standards set forth in *Comcast*, likely

23   because WellPet knows they do not. These are "merits argument[s] about the proper amount of damages,

24   not a mismatch between [Plaintiff's] damages model and theory of liability." *Arris*, 327 F.R.D. at 370.

-10-

1    They do "not result in a failure to show that damages can be calculated on a classwide basis, nor would

2    it result in individual damages issues predominating." *Id.*; *Hadley*, 324 F. Supp. 3d at 1106.

3           "The general idea behind conjoint analysis is that the market value for a particular product is

4    driven by features, or descriptions of features, embodied in the product." Dkt. 152-4; ¶7. Gaskin explains

5    that it is therefore "possible to calculate the reduction in market value as the price reduction needed to

6    compensate for the loss of a feature or a change to a worse level of a feature." *Id.* ¶24. The features at

7    issue here are (1) four representations made on the Wellness Food labels and (2) omissions regarding the

8    presence of arsenic, lead, and BPA in that Wellness Food. *Id.* ¶¶8-11. Gaskin measured "the difference

9    in the market value of the Wellness Food with the omissions and misrepresentations compared to the

10   value of the Wellness Food without [them]." *Id.* ¶6. "[T]here is no possibility in this case that damages

11   could be attributed to [WellPet's] acts that are ***not*** challenged on a class-wide basis because all members

12   of the current class attribute their damages to the [misrepresentations and omission]." *Krueger v. Wyeth,*

13   *Inc.*, 310 F.R.D. 468, 482 (S.D. Cal. 2015). *Comcast* is satisfied. *Krommenhock*, 334 F.R.D. at 575.

14          **C.    Plaintiff is Typical of the Class**

15          To manufacture atypicality, WellPet twists Plaintiff's testimony and improperly cherry picks

16   soundbites. When presented in context, the testimony demonstrates that Plaintiff satisfies typicality.

17          Individual reliance is not required here because reliance is inferred classwide by a showing of

18   materiality. *See supra* Section III.A.3. Nonetheless, Plaintiff *repeatedly* responded that his purchasing

19   decisions were based on the Wellness Statements and other quality claims.[10] *See* Ex. 7 at 234:2-3

---

[10] Zeiger did not remember the exact names of all the Wellness products he purchased, Ex. 8 at 2-3, but he recalled buying at least the three products at issue. He purchased the "ocean fish one" and the "two different fish flavored ones," Ex. 7 at 19:7-15, as well as another food that contained salmon, *id.* at 158:6-7; *see also id.* at 17:19-25 (testifying that he bought "the plain one," "the whitefish," and "the other fish."). He also still had the last package of CORE Ocean (produced to WellPet for inspection), *id.* at 18:16-20, and he remembered purchasing Complete Health WhiteFish & Menhaden Fish Meal, *id.* at

-11-

(WellPet "stood out" because it "preach[ed] wellness and pure ingredients"); 235:10-14 (Plaintiff "started buying" Wellness Foods because they were "wholesome" and contained "natural ingredients"); 246:9-247:11 (Plaintiff recalled "paragraphs all over the bag" that went to "quality," "highest grade," and "best nutrition."); 250:9-22 (Plaintiff understood that "complete health" meant "optimal thinking, health, and performing" and was concerned the food did not live up that label);[11] 271:11-24 (all of the claims on the packaging gave him the impression that the food was "all natural, from the earth, [] better quality than you can get from regular dog food."); 288:17-289:1 (Plaintiff saw "healthy" on all of the foods he purchased); 289:18-23, 290:8-23 (Plaintiff saw "uncompromising nutrition" on the back of Wellness products). This is, unlike in *Sandoval v. PharmaCare US, Inc.*, 730 F. App'x 417, 419 (9th Cir. 2018), "sufficient evidence that [Plaintiff] viewed and relied" on the Wellness Statements.[12]

Plaintiff's actual testimony about the "natural" claims also supports typicality. He testified that, in general, he looks for products with ingredients "you can pronounce that ha[ve] healthier ingredients … something more natural, healthier alternative…." Ex. 7 at 145:24-146:2. And when asked "what led to [his] purchasing decision in the first place," Plaintiff responded that he seeks "the healthier, more natural version of anything. And so Wellness stood out after the samples they gave me, and probably their whole packaging, their display in the store." *Id.* at 235:21-236:3. Plaintiff also *repeatedly* testified that WellPet's natural claim was one of the reasons he purchased the Wellness Foods. *See id.* 235:10-14 (Plaintiff "started buying" Wellness Foods because they were "wholesome" and contained "natural

---

266:17-19. Plaintiff also generally described the packaging of the three products. *Id.* at 228:11-22.

[11] Wellpet never inquired, but it is not plausible that Plaintiff did not see the "Complete Health" claim as he testified several times that he purchased at least one "Complete Health" product. Ex. 7 at 266:17-19.

[12] WellPet's veiled lack of exposure argument "has no relevance to the present case, where [the] theory is that [alleged] **omissions** violated the UCL, FAL, and CLRA and that partial representations **on the product itself** are misleading." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 482 (C.D. Cal. 2012).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

1
2
3
4

ingredients"); 271:11-23 (Plaintiff purchased Wellness Foods because the claims on the packaging gave him the impression that the food was "all natural, from the earth."); 268:19-23 (WellPet's packaging "touted everything. It's—on the bag it says only the finest ingredients. … [I]t's all natural, highest quality. Everything you want to hear when you're looking to feed your loved animal.").[13]

5
6
7
8
9
10
11
12
13
14

Plaintiff never testified that he "does not have any issue with the use of 'natural' on the Wellness packages." Opp. at 25. WellPet takes Plaintiff's testimony out of context, relying on a line of questioning involving whether the foods contained preservatives or manmade alternations. Ex. 7 at 278:25-279:15. None of this questioning related to the actual basis of Plaintiff's "natural" claim—the risk of or actual inclusion of BPA. Had WellPet directly asked whether the "natural" claim is deceptive in light of BPA, Plaintiff would have testified in the affirmative given his testimony that BPA is "toxic" and "not good for us," and agreement that "a manufacturer should disclose the fact that there may be BPA" in a product. *Id.* at 218-23; 253-18-19; 257:5-7.

15
16
17
18
19
20

The "varying motives" for Plaintiff's purchases, e.g. the food smelled fresh or was grain-free, does not make him atypical. *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082, 2014 WL 6483216, at *12 (N.D. Cal. Nov. 18, 2014); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013). Further, the testimony WellPet cites relates to food purchased in 2010, well outside the class period and irrelevant to his claims. Ex. 7 at 88:3-21; 99:3-22; 135:14-136:7.

21
22
23
24
25
26

Nor does Plaintiff's alleged "sophistication" make him atypical. First, while Plaintiff testified that he "believe[s]" he is "a sophisticated purchaser of food," that general statement was unrelated to his knowledge of heavy metals, BPA, or any expertise in marketing or labeling of food. *Id.* at 241:1-25. Second, this is not a unique defense relevant to the merits because deception is measured by the

27
28

---

[13] Plaintiff's reliance on the "natural" claim conveys standing. "It is plausible that a reasonable consumer would expect that an 'All Natural' product contains only natural ingredients," and BPA is not a natural ingredient. *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1194 (N.D. Cal. 2014).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

reasonable consumer standard. *Astiana*, 291 F.R.D. at 502; *Bennett v. GoDaddy.com LLC*, No. 16-cv-03908, 2019 WL 1552911, at *5 (D. Ariz. Mar. 15, 2019). Further, actual deception is not required for the claims here. *Astiana*, 291 F.R.D.at 502, 504; *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006), *as modified* (Nov. 8, 2006). Third, to the extent Plaintiff is somehow a sophisticated consumer because he knows arsenic is naturally occurring, he made that statement in response to a question regarding whether *another* manufacturer's food contained arsenic. Ex. 7 at 82:25-83:24. Plaintiff also testified that heavy metals were naturally occurring only *after* being confronted with test results, and upon review, testified WellPet's results were "unusually high." *Id.* at 165:1-170:17. Finally, other testimony demonstrates Plaintiff is actually *not* a sophisticated consumer at all. Plaintiff testified that (1) he did not know if it was possible to manufacture pet food without heavy metals but that "it's something to strive for," *Id.* at 262:4-9, and (2) did not know if other foods contained BPA, *id.* 215:9-216:7; *see also id.* at 253:18 (knows of BPA in a "generic sense").

Ultimately, Plaintiff is typical of the class because the conduct upon which he bases his claims (false and deceptive labeling) is not unique. They "arise out of the allegedly false statement[s], worded in several variations, made on every [label]." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010). He has the same injury as the putative class (premium pricing) that results from WellPet's common conduct (deceptive labeling). [14] *Amey v. Cinemark USA Inc.*, No. 13-cv-05669, 2018 WL 3956326, at *4 (N.D. Cal. Aug. 17, 2018). Plaintiff purchased the Wellness Foods based on the Wellness Statements and testified that the levels of heavy metals and BPA in the food concerned him.

---

[14] Plaintiff did not testify that his damages are hypothetical. He expressed a desire to not feed food with high levels of heavy metals to his pets "day in and day out." Ex. 7 at 303:12-304:1. When asked if he had been *financially* damaged, Plaintiff testified that he "could have bought food at half the price" given that it did not live up to its labeling. *Id.* at 304:6-13. And Plaintiff's damages model supports this. Dkt. 152-4, ¶62. The fact that he also purchased products for his pet business is of no moment, as he is only seeking recovery for the food he purchased for *personal* use. Dkt. 95, ¶25.

-14-

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.:  3:17-cv-04056-WHO

1    Ex. 7 at 263:13-21, 253:16-19.[15] He also testified that, given the option, he would purchase pet food that

2    did not contain heavy metals, *id.* at 261:13-262:2, and that he would not have purchased the Wellness

3    Foods had WellPet disclosed the level of heavy metals and BPA they contained, *id.* at 264:2-12. WellPet's

4    manufactured arguments fail to show otherwise, and Plaintiff satisfies the "permissive" typicality

5    standard. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

6    **D.    Rule 23(b)(2) Certification is Proper**

7    WellPet's arguments as to Rule 23(b)(2) fail. There is no bar to simultaneous certification of Rule

8    23(b)(2) and (b)(3) classes. Instead, a class seeking certification under Rule 23(b)(2) alone cannot seek

9

10    monetary damages unless they are incidental because Rule 23(b)(2) "lacks Rule 23(b)(3)'s notice and

11    opt-out requirements." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012). But

12    the injunction sought by Plaintiff is the primary form of relief under the CLRA. *Broomfield v. Craft Brew*

13    *All., Inc.*, No. 17-cv-01027, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018). It is separate from the

14

15    monetary relief sought by the Rule 23(b)(3) subclasses. Thus, "whether the damages claims are incidental

16    to the injunctive relief the plaintiff[] seek[s] is irrelevant, because the plaintiff[] [is] not seeking to recover

17    damages for the proposed Rule 23(b)(2) class." *Id.* And Plaintiff satisfies Rule 23(b)(2) because he

18    "claim[s] that [WellPet] has a uniform policy and practice of misrepresenting on its packaging" and

19

20    "[e]njoining those alleged misrepresentations would provide relief to the class as a whole." *Id*. Certifying

21

22

23    _____

[15] Plaintiff's testimony is not at odds with Dr. Pusillo. Opp. at 7, 26. When asked if he found it "reasonable
24    for pet food manufacturers to rely on safe levels identified by government agencies," Plaintiff replied that
25    it's better to have "a standard versus no standard, but there's always room for improvement." Ex. 7 at
148:16-23. And when asked if *he* would rely on the FDA, he stated only that it would give "some basis to
26    make judgments on, somewhere to start," *id*. at 162:25-163:8, and that he "would hope" to be able to rely
on the FDA for "what parts per billion of arsenic would be considered an issue," *id*. at 213:23-24. But the
27    FDA does not test at that detection level. Opp. at 7. Finally, Plaintiff's testimony that he would rely "for
the most part" on the FDA was in response to a question on whether he would rely on the FDA "to keep
28    monitoring appropriate levels of arsenic and lead in pet food," Ex. 7 at 214:5-9, but the FDA does not
regulate or monitor pet food beyond investigating and assisting with recalls, Opp. at 26.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

this class, along with a Rule 23(b)(3) class, is therefore proper. *See id.* at *21 (certifying monetary and injunctive classes); *Krommenhock*, 334 F.R.D. at 567.

WellPet's standing argument has also been rejected by the Ninth Circuit. "[A] previously deceived plaintiff may have standing to seek injunctive relief." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir.), *cert. denied*, 139 S. Ct. 640, 202 L. Ed. 2d 492 (2018). "[T]he threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70. As this Court has observed, "A material representation injures the consumer not only when it is untrue, but also when it is *unclear* whether or not it is true." *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232, 2018 WL 1948830, at *4 (N.D. Cal. Apr. 25, 2018). This is precisely Plaintiff's situation: he might purchase the Wellness Food again.[16] But Plaintiff has no way to confirm, outside of expensive laboratory testing, whether the food contains arsenic, lead, or BPA. Nor does the packaging reveal anything about testing procedures. And, "[w]ere injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, California's consumer protection laws would be effectively gutted." *Id.* (alteration in original). Plaintiff has standing under *Davidson*.[17]

### E.    In the Alternative, the Court Should Certify a Rule (c)(4) Class

The Ninth Circuit has rejected that individualized damages defeats class certification and has repeatedly reaffirmed that holding. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th

---

[16] WellPet makes conflicting arguments that Plaintiff testified he would (1) be "open" to buying Wellness Food again and (2) never purchase them again. Opp. at 28. In fact, Plaintiff testified, "If [WellPet] put out the original product that I believed in and if they could—you know, they proved it and put it out there, I wouldn't say no." Dkt. 162-16 at 113:17-20.

[17] *Philips v. Ford Motor Co.* involved "alternative forms of relief" rather than the monetary relief for the price premium paid and injunctive packaging changes sought here. No. 14-cv-02989, 2016 WL 7428810, at *24 (N.D. Cal. Dec. 22, 2016), *aff'd*, 726 F. App'x 608 (9th Cir. 2018). Since these two forms of relief can coexist without duplicative recovery, the "adequate remedy" doctrine has no application.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cir. 2010); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (collecting cases). Regardless, the argument has no relevancy to UCL, FAL, or CLRA claims that provide independent injunctive relief. Further, unlike *Rahman v. Mott's LLP*, 693 Fed. Appx. 578, 580 (9th Cir. 2017), Plaintiff specifically enumerated the issues that would "significantly advance the resolution and economize judicial resources." Dkt. 152 at 40. With reliance, causation, materiality, and warranty breach resolved in one trial, only formulaic damages will remain, and the very purpose of Rule 23(c)(4) will be realized. *Contra D.C. ex rel Garter v. Cnty. of San Diego*, 783 F. App'x 766 (Mem), 767-68 (9th Cir. 2019) (individual damages cannot be "efficiently calculated" when they require analyzing "emotional distress, humiliation, and loss of 'human dignity'"). And Plaintiff has argued how interests of judicial economy and efficiency call for certification of even one common issue, and provided examples. Dkt. 152 at 40. And while it is true the district court in *Rahman* stated it would not be reasonable or efficient to allow small individual damages to proceed, Opp. at 30, this is at odds with *Yokoyama*, *Leyva*, and *Pulaski*, and eviscerates the purpose of Rule 23.[18]

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for class certification.

---

[18] The Ninth Circuit's affirmance of *Rahman* aligns with its precedent because it recognized that individual damages alone do not defeat certification, but found plaintiff was given "ample opportunity" in the form of "supplemental briefing" to address resolution of damages. 693 F. App'x at 579-80. Plaintiff here can provide supplemental briefing on proving individual class member damages. *See Kirkton v. Daimlerchrysler Corp.*, No. B199285, 2008 WL 1947916, at *3-4 (Cal. Ct. App. May 6, 2008) (unpublished) ("Plaintiff's testimony [is] sufficient to allow the jury to determine his damages."); *Bowerman v. Field Asset Servs.*, No. 13-cv-00057, 2015 WL 5569061, at *3 (N.D. Cal. Sep. 21, 2015) (damages can "be addressed … though 'individual hearings without any aggregate calculation or expert testimony. '"). But that exercise is premature. "Some of the difficulties in determining individual damages may fall away after liability is determined, depending upon which claims (if any) are successful, and which type or relief the class is entitled to." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) ("Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability").

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO

Dated: October 19, 2020

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST (*pro hac vice*)
REBECCA A. PETERSON (241858)

*/s/   Rebecca A. Peterson*

REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
        rapeterson@locklaw.com

ROBBINS LLP
KEVIN A. SEELY
STEVEN M. MCKANY
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail:
        kseely@robbinsllp.com
        smckany@robbinsllp.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)
RAINA C. BORELLI (*pro hac vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
        rborelli@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA (*pro hac vice*)
KATHERINE VAN DYCK (*pro hac vice*)
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
        kvandyck@cuneolaw.com

-18-

LITE DEPALMA GREENBERG, LLC
JOSEPH J. DEPALMA (*pro hac vice*)
SUSANA CRUZ HODGE (*pro hac vice*)
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
        scruzhodge@litedepalma.com

WEXLER WALLACE LLP
Kenneth A. Wexler (*pro hac vice*)
Michelle Perkovic (*pro hac vice*)
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wexlerwallace.com
        mp@wexlerwallace.com

*Attorneys for Plaintiff*

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 3:17-cv-04056-WHO