LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
       rkshelquist@locklaw.com

Attorneys for Plaintiff

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER, | Case No. 3:17-cv-04056-WHO |
|                    Plaintiff, | CLASS ACTION |
|   v. | **NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| WELLPET LLC, a Delaware corporation, | |
|                    Defendant. | |
| | Hearing Date:  April 20, 2022 |
| | Hearing Time:  2pm |
| | Judge:          Hon. William H. Orrick |
| | Ctrm:            2 |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 23(e)[1] and the Northern District of California's Procedural Guidelines for Class Action Settlements, on April 20, 2022, at 2 p.m. or as soon thereafter as the matter may be heard, in Courtroom 2, 17th Floor, of the U.S. District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Daniel Zeiger ("Plaintiff") moves the Court for an Order:

    a.  certifying the proposed modified class as defined in the Settlement Agreement ("Settlement Class");

    b.  appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel for purposes of the proposed settlement ("Settlement");

    c.  granting final approval of the Settlement as fair, reasonable, and adequate to the Settlement Class;

    d.  awarding the requested fees, costs and a service award for Plaintiff;

    e.  entering Judgment; and

    f.  maintaining jurisdiction over this matter for the purpose of enforcing the Judgment.

Plaintiff's motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Rebecca Peterson, Kevin Seely, Daniel Gustafson, Katherine Van Dyck, Susana Cruz Hodge, and Kenneth Wexler, and all exhibits thereto, including the Settlement Agreement; all prior pleadings and proceedings; and any additional argument and evidence the Court may consider in support of the Motion.

---

[1] Hereinafter, all references to "Rule" will be to the Federal Rules of Civil Procedure unless otherwise stated.

# TABLE OF CONTENTS

ISSUES TO BE DECIDED .................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.  INTRODUCTION ..............................................................................................1

II.  LITIGATION HISTORY ...................................................................................2

    A.  Plaintiff's Claims and Defendant's Motion to Dismiss ...........................2

    B.  Discovery and Class Certification ............................................................2

    C.  Settlement Negotiations and the Settlement Agreement ..........................3

III.  THE SETTLEMENT .........................................................................................3

    A.  Testing and Disclosures ...........................................................................4

    B.  Release .....................................................................................................4

    C.  Fees .........................................................................................................5

    D.  Notice ......................................................................................................5

    E.  Modification of the Settlement Class and Settlement Class Claims........5

IV.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.......5

    A.  The Settlement Class Should be Modified...............................................5

        1.  Rule 23(a) is Satisfied.................................................................6

            a.  The Settlement Class Satisfies the Numerosity Requirement..........6

            b.  This Action Presents Common Questions of Law or Fact..............6

            c.  Plaintiff's Claims are Typical .........................................................7

            d.  Plaintiff and His Counsel Will Fairly and Adequately
               Protect the Interests of the Settlement Class...................................8

        2.  The Requirements of Rule 23(b)(2) are Satisfied .......................9

    B.  The Settlement Requires No Additional Notice .....................................10

V.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .............11

    A.  The Settlement Relief is Adequate ........................................................12

    B.  The Risk of Maintaining Class Action Status Throughout Trial ..........15

    C.  The Benefits Offered in the Settlement are Adequate and Fair .............16

    D.  Extent of Discovery and Stage of Proceedings......................................16

- ii -

E.     The Experience and Views of Counsel support final approval .............................. 17

F.     Notice to Appropriate Government Officials in Lieu of the Presence of a Governmental Participant ......................................................................................... 18

G.     The Settlement is the result of arm's-length, non-collusive negotiations .............. 18

H.     The Settlement Satisfies Rule 23 ........................................................................... 20

VI.    THE COURT SHOULD AWARD REASONABLE ATTORNEYS' FEES AND COSTS AS REQUESTED BY PLAINTIFF'S COUNSEL ............................................. 20

A.     Plaintiff's Counsel's Hourly Rates are Reasonable .............................................. 21

B.     The Number of Hours Claimed is Reasonable ...................................................... 22

C.     The Requested Fee is Particularly Reasonable in Light of the Complex Nature of the Litigation and the Substantial Risks of Nonpayment ..................... 23

D.     Plaintiff's Counsel's Costs are Reasonable and Necessarily Incurred ................. 24

E.     The Requested Fee is Proportionate to the Benefit Conferred on the Settlement Class ..................................................................................................... 24

VII.   THE COURT SHOULD APPROVE THE SERVICE AWARD TO PLAINTIFF .......... 24

VIII.  CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) .............................................................................................16

*Alvarez v. Farmers Ins. Exch.,*
    2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .................................................21, 23, 24, 25

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ...................................................................................................7

*Bee, Denning, Inc. v. Cap. All. Grp.,*
    2016 WL 3952153 (S.D. Cal. 2016) ....................................................................................10

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) .........................................................................................17

*Brown v. Hain Celestial Grp.,*
    2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ..................................................................7, 8

*Ching v. Siemens Indus., Inc.,*
    2014 WL 2926210 (N.D. Cal. June 27, 2014) .....................................................................18

*Churchill Village, LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ..........................................................................................11, 14

*Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.,*
    2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) ....................................................................21

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ..............................................................................................18

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy,*
    305 F.3d 943 (9th Cir. 2002) ................................................................................................22

*Cottle v. Plaid Inc.,*
    2021 WL 5415252 (N.D. Cal. Nov. 19, 2021) ....................................................................11

*Donald v. Xanitos, Inc.,*
    2017 WL 1508675 (N.D. Cal. Apr. 27, 2017) .....................................................................14

*Dyer v. Wells Fargo Bank, N.A.,*
    2014 WL 1900682 (N.D. Cal. May 12, 2014) .....................................................................14

*Edwards v. Nat'l Milk Producers Fed'n,*
    2017 WL 3623734 (N.D. Cal. June 26, 2017) .....................................................................15

*Farar v. Bayer AG,*
    2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ..............................................................7

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
    2017 WL 4685536 (C.D. Cal. May 8, 2017) ..............................................................15

*G. F. v. Contra Costa County,*
    2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ...........................................19, 21, 24

*Garner v. State Farm Mut. Auto. Ins. Co.,*
    2010 WL 1687832 (N.D. Cal. April 22, 2010).........................................................19

*Grace v. Apple, Inc.,*
    2021 WL 1222193 (N.D. Cal. Mar. 31, 2021)..........................................................25

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... *passim*

*Hart v. Colvin,*
    2016 WL 6611002 (N.D. Cal. 2016) .........................................................................10

*Holman v. Experian Info. Sols., Inc.,*
    2014 WL 7186207 (N.D. Cal. Dec. 12, 2014)..........................................................18

*In re Apple Inc. Device Performance Litig.,*
    2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)..........................................................24

*In re Beef Indus. Antitrust Litig.,*
    607 F.2d 167 (5th Cir. 1979) ...................................................................................12

*In re Bluetooth Headset Products Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) ..................................................................19, 21, 24

*In re High-Tech Employee Antitrust Litig.,*
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...........................................................21

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................................19

*In re Juniper Networks Sec. Litig.,*
    264 F.R.D. 584 (N.D. Cal. 2009)................................................................................7

*In re Lidoderm Antitrust Litig.,*
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .........................................................25

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ...................................................................................16

*In re Pacific Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) .....................................................................................17

- v -

*In re Yahoo Mail Litig.*,
  2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ........................................................................10

*Jordan v. Cnty. Of Los Angeles*,
  669 F.2d 1311 (9th Cir. 1982) ...............................................................................................7

*Kim v. Space Pencil, Inc.*,
  2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ..............................................................20, 21

*Kline v. Dymatize Enters., LLC*,
  2016 WL 6026330 (S.D. Cal. 2016) ......................................................................................10

*Knapp v. Art.*
  *com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) ......................................12, 16, 17, 18

*Krommenhock v. Post Foods, LLC*,
  2020 WL 2322993 (N.D. Cal. May 11, 2020) ......................................................................13

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. Mar. 9, 2020) ............................................................................13

*LaGarde v. Support.com, Inc.*,
  2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ....................................................................12

*Lane v. Brown*,
  166 F. Supp. 3d 1180 (D. Or. 2016) .....................................................................................19

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) ......................................................12, 13, 14, 16

*Lee v. Global Tel*Link Corp.*,
  2017 WL 1338085 (C.D. Cal. Apr. 7, 2017) ........................................................................16

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ....................................................................10

*Lilly v. Jamba Juice Co.*,
  2015 WL 2062858 (N.D. Cal. May 4, 2015) ......................................................20, 21, 22

*Moore v. PetSmart, Inc.*,
  2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ................................................................12, 15

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ...................................................................................................21

*Nat'l Rural Telecomms. Coop. v. DIRECT, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)......................................................................................13, 17

*Navarez v. Forty Niners Football Co.*,
  474 F. Supp. 3d 1041 (N.D. Cal. 2020) ................................................................................25

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................14

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    2016 WL 1255454 (N.D. Cal. Mar. 31, 2016)........................................................22

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................................11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    2020 WL 7626410 (N.D. Cal. Dec. 22, 2020)........................................................23

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .............................................................14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................15, 17, 18

*Rojas v. Zaninovich*,
    2015 WL 3657172 (E.D. Cal. June 11, 2015) .........................................................12

*Satchell v. Federal Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .........................................................19

*Schofield v. Delta Air Lines, Inc.*,
    2019 WL 955288 (N.D. Cal. Feb. 27, 2019) ...........................................................19

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ...........................................................................8, 9

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ..................................................................................23

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................8, 11

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ................................................................................23

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,
    2013 WL 3802807 (N.D. Cal. July 17, 2013)............................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................6, 10

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

**STATUTES**

28 U.S.C. § 1715 ...........................................................................................5, 10, 18, 20

**OTHER AUTHORITIES**

1 Newberg on Class Actions §3.10 ..........................................................................6

4 Newberg on Class Actions §13:1 .........................................................................19

**ISSUES TO BE DECIDED**

Whether the Court should: (1) certify the Settlement Class; (2) appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel for purposes of the Settlement; (3) grant final approval of the Settlement awarding the requested attorney fees, costs and service award; (4) enter Judgment; and (5) maintain jurisdiction over the matter for enforcing the Judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff in this case alleges Defendant failed to disclose the presence of dangerous substances or chemicals, including arsenic and lead, in certain of its dog food products.[2] Following years of hard-fought litigation and months of intensive settlement negotiations, the parties have reached an agreement that will provide substantial benefits to the class in the form of a robust product testing protocol for at least the next four years, a commitment to providing public information about heavy metal in pet food, and a guarantee that no products with certain heavy metal levels will enter the pet food supply. The relief provided will protect Plaintiff and the class from the injury alleged in the complaint, arm the Class with all the information it needs to make informed purchasing decisions, and assure that WellPet's products are safe.

The Settlement was negotiated at arm's length with the assistance of Chief Magistrate Judge Joseph C. Spero. The Settlement requires Defendant to substantially modify its business practices by: (a) testing all its products for lead, arsenic, cadmium, and mercury, (b) destroying any nonconforming products, (c) disclosing the test results on its website, and (d) providing via its website information to educate consumers about heavy metal in dog foods. The injunctive relief required by the Settlement exceeds the parameters of the class previously set by the Court by including all of Defendant's Wellpet recipes and formulas and testing for mercury and cadmium

---

[2] The Settlement is attached as Exhibit 1 to the Declaration of Rebecca Peterson ("RAP Dec."). All references to exhibits are to the RAP Dec. unless otherwise noted.

in addition to lead and arsenic. The Settlement Class includes all persons in the United States who, between July 1, 2013 and September 1, 2021 (the "Class Period"), purchased the products currently manufactured, distributed, or sold by Defendant in the United States, including "all products sold under the Wellness®, Holistic Select®, Old Mother Hubbard®, Eagle Pack®, Sojos®, and WHIMZEES® brand names []" (the "Covered Products").[3]

## II.   LITIGATION HISTORY

### A.   Plaintiff's Claims and Defendant's Motion to Dismiss

Plaintiff filed his initial class complaint in July 2017. [4] (Dkt. 1.) Plaintiff alleged violations of California law, including the California Consumer Legal Remedies Act, the California False Advertising Law, and California's Unfair Competition Law. (*Id.*)[5] Thereafter, the Parties briefed and argued Defendant's motion to dismiss (Dkts. 34, 51, 56, 58), which the Court granted in part and denied in part, on January 17, 2018. (Dkt. 59.)

### B.   Discovery and Class Certification

Discovery was multi-faceted. The Parties conferred and filed joint correspondence regarding discovery disputes, (Dkts. 65, 72, 109, 111, 161, 164), and engaged in other motion practice related to issues that arose during discovery. (Dkts. 100, 105, 114, 118, 122, 130, 132, 134-135, 138). The Parties also retained five experts and conducted nine party and expert witness depositions, and Plaintiff's counsel reviewed 17,279 pages of documents. RAP Dec. at ¶¶6, 10-11.

Plaintiff filed his class certification motion on June 29, 2020. (Dkt. 152.) Defendants filed a *Daubert* motion on September 30, 2020. (Dkt. 163.) On October 14, 2020, Plaintiff filed a motion to strike a declaration Defendant relied on in opposing Plaintiff's class certification motion. (Dkt.

---

[3] Purchases are for those made in the United States for household use and not for resale or distribution.

[4] Plaintiffs Amy Freeborn and Danz Doggie Daytrips were voluntarily dismissed. (Dkts. 74, 106.)

[5] Plaintiff twice amended his complaint. (Dkts. 33, 95.)

171.) On October 30, 2020, Defendant filed its motion for summary judgment. (Dkt. 180.) The Court held a hearing on these four fully briefed motions on January 27, 2021. (Dkt. 199.) On February 26, 2021, the Court issued its order on the motions for class certification, summary judgment, and to exclude experts and strike exhibits. (Dkt. 205.) The motions to exclude and strike and the motion for summary judgment were granted in part and denied in part. (*Id.*) The motion to certify a Rule 23(b)(3) class was denied without prejudice, but the motion to certify a Rule 23(b)(2) class was granted. (*Id.* at 53.) The Court certified three classes, one for each of Defendant's products at issue (the "Wellness Products"). (*Id.* at 39, 50-51.) In addition, the Court permitted Plaintiff to file an amended damages report if certain raised issues could be redressed in a new survey. (*Id.* at 2, 53). Defendant filed a Rule 23(f) petition that was denied by the Ninth Circuit, after full briefing, on May 14, 2021. (Dkts. 207, 220.)

### C.    Settlement Negotiations and the Settlement Agreement

This case was referred to Chief Magistrate Spero for a settlement conference on March 25, 2021.[6] (Dkt. 213.) During a full-day settlement conference on May 4, 2021, with Chief Magistrate Spero and Plaintiff Zeiger, the Parties reached an agreement in principle. (Dkt. 216.)  The Parties continued to work on the settlement terms for several months thereafter, including attending a second settlement conference with Chief Magistrate Spero on August 17, 2021. (Dkt. 234). In November 2021, the Parties, with the guidance from Chief Magistrate Spero, were able to reach a mutually agreeable settlement as memorialized in the Settlement. (Dkt. 238); Ex. 1.

## III.    THE SETTLEMENT

The Settlement memorializes significant changes to Defendant's business practices relating to Plaintiff's allegations regarding the inclusion of arsenic and lead in the Wellness

---

[6] The Parties also had a private mediation session on July 30, 2019, before Judge James Warren.

Products. It has four distinct components: testing and disclosures, the release, fees, and notice. It also modifies the classes previously certified by the Court.

## A.      Testing and Disclosures

Defendant has agreed to substantial injunctive relief in the form of (1) recurring testing of the Covered Products for the presence of arsenic, cadmium, mercury, and lead for at least a four-year period (the "Testing Period"), and (2) disclosing the test results on Defendant's public website. Ex. 1 at 5-7.  The Covered Products subject to such testing go beyond the three Wellness Products included in the Court's Class Certification Order. (Dkt. 205.) Defendant has agreed to test (and disclose the test results for) "all products currently manufactured, distributed, or sold by WellPet in the United States, including, without limitation, all products sold under the Wellness®, Holistic Select®, Old Mother Hubbard®, Eagle Pack®, Sojos®, and WHIMZEES® brand names." Ex. 1 at 3, 5-7. Moreover, the Settlement affirms that Defendant will destroy any products that contain an amount of heavy metals in excess of certain levels. *Id.* at 6. And not only will Defendant disclose the test results, but Defendant, through its website, to educate consumers about heavy metals in dog foods to equip them to make more informed purchasing decisions. *Id.*

## B.      Release

In exchange for the foregoing consideration, Plaintiff will release all his individual claims which have been or could have been asserted that arise out of or relate to (1) the facts alleged or the claims asserted (or that could have been asserted) in this litigation, or (2) the labeling, marketing, advertising, promotion, or distribution of the products at any time during the Class Period. Ex. 1 at 9-10. The Settlement Class will be enjoined during the Testing Period from bringing any new injunctive relief claim(s) against Defendant based on purchases of product(s) that arise out of, are based upon, or are substantially similar to, the claims asserted by Plaintiff. *Id.* No member of the Settlement Class, besides Plaintiff, will be releasing damages claims. *Id.*

### C. Fees

The Settlement leaves the issue of the award of attorneys' fees and costs (including approving a service award to Plaintiff) to the Court. The Settlement provides that Plaintiff's counsel will apply for a fee and service award of up to $2,050,000 for attorneys' fees (including $545,080.89 in costs and the $7,000 service award). *Id.* at 7-8. The attorneys' fees and costs represent a negative lodestar multiplier. *See* Section VI, *infra*. The service award will be paid to Plaintiff for the time and effort he invested in this litigation and for the benefits his efforts have provided to the Settlement Class. *See* Section VII, *infra*.

### D. Notice

Defendant will serve notice of the Settlement, in a form and manner that comports with the requirements of the Class Action Fairness Act ("CAFA"). 28 U.S.C. §1715. The costs will be paid by Defendant. Other than the CAFA notice, the Parties agree that notice to the Settlement Class is unnecessary because the Settlement is purely injunctive under Rule 23(b)(2), no damages claims are being released (apart from Plaintiff's claims), and Defendant has agreed to publicly present and publish its testing results on its public website. Ex. 1 at 8; Section III.A and B, *supra*.

### E. Modification of the Settlement Class and Settlement Class Claims

The Parties agree that, for settlement purposes only, the 23(b)(2) class certified by the Court should exceed the parameters previously set so to include all current product brands of Defendant (i.e., the Covered Products) and consumers nationwide. The Parties also agree that the released class claims are injunctive-only claims that relate to the allegations in this case or that could have been brought in this case ("Settlement Class Claims").

## IV. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

### A. The Settlement Class Should be Modified

The Parties propose that for purposes of this Motion and the Settlement, the classes certified by the Court on February 26, 2021, (Dkt. 205), should be modified to:

- 5 -

*All persons in the United States who, between July 1, 2013, and September 1, 2021 (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one of the Covered Products[.]*

Ex. 1 at 2.[7] Modifying the class to include additional products and class members does not materially change the analysis for class certification for injunctive and declaratory relief pursuant to Rule 23(a) and Rule 23(b)(2).  Accordingly, for the same reasons the Court previously granted Rule 23(b)(2) certification, the Settlement Class also meets the requirement of Rule 23(a) and Rule 23(b)(2).

### 1.      Rule 23(a) is Satisfied

#### a.      The Settlement Class Satisfies the Numerosity Requirement

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts canvassing the precedent have concluded that the numerosity requirement is usually satisfied where the class comprises 40 or more members[.]" *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013).[8] Here, the Settlement Class has been modified to include all current WellPet recipes or formulas compared to the three Wellness Products covered in the classes the Court already found to have met the numerosity requirement. (Dkt. 205 at 40.) Moreover, it is a Nationwide class, not just a California class, thus inviting more members to its ranks. The Settlement Class meets the numerosity requirement.

#### b.      This Action Presents Common Questions of Law or Fact

Rule 23(a)(2) requires one or more questions common to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, (2011); 1 Newberg on Class Actions §3.10; *Wal-Mart Stores, Inc.* v.

---

[7] This modified class provides more relief to consumers since the heavy metal testing and related disclosures will apply to additional products included in the Settlement Class definition.

[8] All internal citations and quotations are deemed omitted unless otherwise noted.

*Dukes*, 564 U.S. 338, 349-350 (2011). "'[E]ven a single common question will do,'" when this single question has "'the capacity of classwide proceedings to generate common answers apt to drive the resolution of the litigation.'" *Farar v. Bayer AG*, 2017 WL 5952876, at *5 (N.D. Cal. Nov. 15, 2017). Including more products and class members in the Settlement Class does not change the questions the Court already found common to the initial class: "whether reasonable consumers would be misled by the actionable … [s]tatements and omissions; the level and danger of arsenic and lead in the [p]roducts; and whether [Defendant] actively concealed its purported knowledge of the inclusion of arsenic, lead, []." (Dkt. 205 at 41.) These common questions still apply to the modified Settlement Class, which Defendant does not contest. The only change would be the addition of mercury and cadmium to the list of toxins. The Settlement Class meets the commonality requirement.

### c.     Plaintiff's Claims are Typical

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Typicality is satisfied if the claims are "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) (same); *Jordan v. Cnty. Of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982) (typicality is met so long as the plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory."). Typicality does not require total identity between representative plaintiffs and class members. *Armstrong v. Davis*, 275 F.3d 849, 868-869 (9th Cir. 2001). Moreover, neither "varying motives" for purchasing a consumer product nor "reli[ance] on something other than [representations on the Covered Products]" defeat typicality. *Brown v. Hain Celestial Grp.*, 2014 WL 6483216, at *12 (N.D. Cal. Nov. 18, 2014). The same is true of any variance between the price Plaintiff and the Settlement

Class paid for the Covered Products. *Id.* (differences in prices paid "is not a breakdown in typicality; it is a question of individual damages…[that] need not destroy class cohesion.").

Here, Plaintiff's claims regarding the alleged presence of heavy metals in the Covered Products are typical because they arise from the same common course of conduct as the claims of the Settlement Class and are derived from the same legal theory. The Court already found Plaintiff's claims to be typical of the initial class. (Dkt. 205 at 41-42.) Including all current WellPet recipes or formulas and consumers nationwide does not change the typicality of Plaintiff's claims since all relate to the testing and nondisclosure of the same heavy metals in products they feed to their dogs. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 321 (C.D. Cal. 2016). Defendant has agreed to this Settlement Class definition.

### d. Plaintiff and His Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Representative plaintiffs must "fairly and adequately" protect the interests of the class. Rule 23(a)(4). The two-prong test asks: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members?; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020. Both prongs are satisfied here.

Plaintiff's interests are aligned with, and not antagonistic to, the interests of the Settlement Class. The Court has already held this with regards to the initial class. (Dkt. 205 at 42.) Plaintiff and the Settlement Class are still equally concerned about the undisclosed presence of heavy metals in the Covered Products, and they are interested in ensuring that Defendant's dog foods are tested for heavy metals and the presence of any heavy metals are disclosed to consumers. *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each…plaintiff has the same problem"). Plaintiff will fairly and adequately protect the interests of all members of the Settlement Class and should be appointed Class Representative.

Plaintiff's counsel are well-qualified to represent the Settlement Class. Counsel for Plaintiff and their firms have extensive experience litigating and settling class actions, including consumer cases. RAP Dec. at ¶¶4-5, Ex. 2; Seely Dec. at ¶3, Ex. 1; Gustafson Dec. at ¶3, Ex. 1; Van Dyck Dec. at ¶3, Ex. 1; Cruz Hodge Dec. at ¶3, Ex. 1; and Wexler Dec. at ¶2, Ex. 1. Plaintiff and his Counsel have vigorously litigated this action in order to protect the interests of the Settlement Class and negotiated both testing and disclosure for all members of the Settlement Class, both of which were not a business practice by Defendant.[9] Ex. 1 at 5-7. Finally, Plaintiff's counsel's extensive settlement negotiations with the guidance of Chief Magistrate Spero further evidences that Rule 23(a)(4)'s adequacy requirement remains satisfied and warrants appointment as Class Counsel.

## 2.     The Requirements of Rule 23(b)(2) are Satisfied

The Settlement Class satisfies Rule 23(b)(2), which permits a class action if the Court finds that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

This Court's previous reasoning for certifying a Rule 23(b)(2) class, i.e., "prevention of future consumer protection violations through injunctive relief[,]" (Dkt. 205 at 51), also applies to the Settlement Class. Granting injunctive relief to a modified class as defined in the Settlement only further reinforces California's intent to prevent future consumer protection violations. *See Spann*, 314 F.R.D. at 326 (in certifying modified class that exceeded the definition previously set, the court stated "settlement promotes consumer protection" where defendant will implement a compliance program to ensure compliance with state price comparison laws). Injunctive relief is

---

[9] In fact, the disclosure of heavy metal testing is a rare practice by any dog food company and it is a significant benefit for consumers to understand what they are feeding to their pets.

still appropriate as issues common to the initial class are common to the Settlement Class, "including whether reasonable consumers would be misled by the actionable [ ] Statements and omissions; the level and danger of arsenic and lead in the [ ] Products; and whether [Defendant] actively concealed its purported knowledge of the inclusion of arsenic, lead...." (Dkt. 205 at 41.) Thus, the Settlement Class satisfies Rule 23(b)(2)'s commonality requirement, which Defendant does not dispute.

### B.   The Settlement Requires No Additional Notice

Defendant will serve the CAFA notice of the Settlement on the appropriate federal and state officials within ten (10) days of this filing. Ex. 1 at 8. *See* 28 U.S.C. § 1715(b). No additional notice is required for a Rule 23(b)(2) settlement, nor was one required after the Court's order certifying the class pursuant to Rule 23(b)(2).  Notice should not be required as part of the purely injunctive Settlement here for the same reasons there is no release of any damages claims for the Settlement Class. *See Wal-Mart Stores*, 564 U.S. at 362-363 ; *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015) ("[E]ven if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, [therefore] the Court concludes that class notice is not necessary."); *In re Yahoo Mail Litig.*, 2016 WL 4474612, at *5 (N.D. Cal. Aug. 25, 2016) ("[B]ecause Rule 23(b)(2) provides only injunctive and declaratory relief, 'notice to the class is not required.'"); *Hart v. Colvin*, 2016 WL 6611002, at *9 (N.D. Cal. 2016); *Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, at *6 (S.D. Cal. 2016); *Bee, Denning, Inc. v. Cap. All. Grp.*, 2016 WL 3952153, at *9 (S.D. Cal. 2016). Therefore, beyond the CAFA notice no other notice is required.[10]

---

[10] Under the terms of the Settlement Agreement, Defendant has the right to opt-out of the Settlement if further notice is ordered by the Court.

## V.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The law favors the compromise and settlement of class actions. *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Evaluating a proposed settlement requires a court to determine whether the proposed settlement is fair, reasonable, and adequate. *Staton*, 327 F.3d at 952. The following factors should be considered: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the benefits offered in the settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *Churchill Village, L.L.C.*, 361 F.3d at 575. The considerations below should be also part of the inquiry:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3) [made in connection with the proposed settlement]; and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Finally, the court should determine whether the settlement is a product of collusion among parties. *See Cottle v. Plaid Inc.,* 2021 WL 5415252, at *7-8 (N.D. Cal. Nov. 19, 2021). Application of these factors here shows that the Settlement is fair, reasonable, and adequate and should be approved.

1

### A.    The Settlement Relief is Adequate

In reviewing a proposed settlement, a court first "balance[s] the risks of continued litigation, including the strengths and weaknesses of plaintiffs case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013). "In determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, 'the district court's determination is [often] nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *5 (N.D. Cal. Aug. 4, 2015), *aff'd,* 728 F. App'x 671 (9th Cir. 2018) ("There is no particular formula by which that outcome must be tested."). Given "all the normal perils of litigation as well as the additional uncertainties inherent in complex class action," *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-180 (5th Cir. 1979), "unless [a proposed] settlement is clearly inadequate," a court should normally find "its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp*, 283 F. Supp. 3d at 832; *see also Rojas v. Zaninovich*, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (courts consider, among other things, the "normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, [and] the lengthy process of establishing specific damages").

In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation, trial, and likely appeals is uncertain and could add years to already prolonged litigation. Plaintiff believes he has a case for liability and has the evidence to prove that Defendant made material omissions and misleading and false statements on its dog food product labels. Nonetheless, he acknowledges that he "would face significant risks should the case proceed through litigation." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014). Success is not guaranteed.

- 12 -

1    Defendant has "vigorously denied liability and challenged all of [ ] [Plaintiffs' claims." *Id*.

2   Defendant argued that Plaintiff did not allege affirmative misrepresentations and omissions

3   sufficient to support his claims. (Dkt. 23 at 24-29.) Defendant also had numerous arguments for

4   why it would be difficult or impossible for Plaintiff to reliably prove any amount of damages,

5   including fundamental and numerous methodological challenges to Plaintiff's damages models.

6   (Dkt. 162 at 24-30.) Defendant also challenged the credibility of Plaintiff's liability expert and

7   whether the presence of heavy metals is even material to any reasonable consumer. (*See* Dkts. 162

8   at 23-24; 180 at 19.)

9

10    Litigating this case through trial and any appeals would be expensive and time-consuming

11   and present risk to both parties. *See Nat'l Rural Telecomms. Coop. v. DIRECT, Inc*., 221 F.R.D.

12   523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the

13   significance of immediate recovery by way of the compromise to the mere possibility of relief in

14   the future, after protracted and expensive litigation."). This would necessarily be "a complex case

15   to prove [at trial] given its breadth and scope," requiring "pro[of] that reasonable consumers would

16   be misled by each particular label used for each Product during the class period." *Krommenhock*

17   *v. Post Foods, LLC*, 334 F.R.D. 552, 566 (N.D. Cal. Mar. 9, 2020); *see also Krommenhock v. Post*

18   *Foods, LLC*, 2020 WL 2322993, at *3 (N.D. Cal. May 11, 2020) (noting that "the expert work and

19   trial in this case will be extensive and complex"). If the Parties proceeded toward trial, Defendant

20   would be represented by highly skilled counsel who would continue to vigorously defend their

21   client. The parties would engage in another round of class certification and likely *Daubert* briefing

22   (relating to a Rule 23(b)(3) class) and either party could then file another Rule 23(f) appeal.

23   Defendant could file a motion to decertify the Class(es), another motion for summary judgment,

24   and motions in limine.

25    This case would have presented a costly, expert-intensive, and technically complicated

26   jury trial that would have spanned weeks and necessitated extensive and costly trial preparation.

- 13 -

Regardless of who prevailed, appeal would have followed and potentially involved class certification, scientific expert testimony, Plaintiff's damages model, and the sufficiency of challenged label claims, adding further delay and costs. (*See*, *e.g.*, Dkts. 34, 162, 180, 220.)

The Settlement, by contrast, "achieves a definite and certain result for the benefit of the Settlement Class[]," making it "preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay, and cost." *See Donald v. Xanitos, Inc.*, 2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017). In light of "the significant risks that lie ahead... [at] trial, it is reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results." *Larsen*, 2014 WL 3404531, at *4. Because "[t]he settlement avoids the risks that the [P]laintiffs would not succeed in demonstrating that [Defendant] failed to comply with state consumer protection laws," "this factor weighs in favor of final approval of the settlement." *Id.; see also Rieckborn v. Velti PLC*, 2015 WL 468329, at *4-5 (N.D. Cal. Feb. 3, 2015) (the "first two [*Churchill*] factors weigh in favor of approval" where "Plaintiffs contend that their claims have significant merit but acknowledge a number of risks and uncertainties should they proceed," including that "Defendants have adamantly denied liability. …"); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (*Churchill* factors met where, "although [the plaintiffs'] claims were quite strong," there were challenges facing them at trial, including "challenges [with] [ ] damages").

For a release of injunctive claims only, Defendant has agreed to implement new regular testing for heavy metals, to disclose the test results to consumers on its website, to destroy any nonconforming products, and to educate consumers on the presence of heavy metals in dog foods so they can make more informed purchasing decisions. Ex. 1 at 5-7. These terms are a fair and adequate resolution of Plaintiff's claims given the risk of trial and the inevitable appeals, along with the injunctive relief addressing the bases for the claims here. *Dyer v. Wells Fargo Bank, N.A.*,

- 14 -

2014 WL 1900682, at *6 (N.D. Cal. May 12, 2014) ("The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class."); *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). These factors favor approval of the Settlement.

### B.      The Risk of Maintaining Class Action Status Throughout Trial

Defendant vigorously opposed Plaintiff's motion for class certification. (*See* Dkts. 162, 205.) It also filed a 23(f) petition to appeal certification, which was denied. (Dkts. 207, 220.) In keeping with Defendant's previous vigor, Plaintiff thinks it likely that Defendant may have pursued a motion for decertification prior to trial. Although Plaintiff is confident that a motion to decertify the class would not be successful, he also recognizes that maintaining the Settlement Class through trial is far from guaranteed. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *4 (C.D. Cal. May 8, 2017). Consequently, the risk of losing class certification, although deemed relatively low, still weighs in favor of the Settlement. *See Moore*, 2015 WL 5439000, at *6 ("the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of settlement."); *Flo & Eddie, Inc.* 2017 WL 4685536, at *4 ("the risk that Defendant may prove successful in attacking class certification, ... favors final approval of the Settlement Agreement."); *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *7 (N.D. Cal. June 26, 2017) ("Although plaintiffs are confident the class would remain certified through trial, the risk 'was not so minimal that this factor could not weigh in favor of the settlement.'"). Thus, this factor favors approval of the Settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   The Benefits Offered in the Settlement are Adequate and Fair

"This factor examines the benefits to class members." *Larsen*, 2014 WL 3404531, at *4. For a 23(b)(2) settlement, it is important to consider the fact that class members choosing to continue to do business with the defendant can benefit from the injunctive relief. *Knapp*, 283 F. Supp. 3d at 833.

Here, the Settlement includes significant injunctive relief for the Settlement Class with substantive changes to Defendant's manufacturing and business practices. Ex. 1 at 5-7. The relief achieved by the Settlement is fair, adequate, and meaningful in that it introduces a new way of doing business for Defendant that will provide meaningful, non-monetary policy changes to the benefit of the Settlement Class into the future. Members of the Settlement Class who choose to continue to purchase Defendant's WellPet products will benefit from the Defendant's heavy metal testing of the Covered Products and Defendant's disclosure of the test results on its public website, as well as the assurance that Defendant will destroy any nonconforming products. *Id.* At the same time, the release in the Settlement Agreement is adequately and appropriately tailored so that no member of the Settlement Class, with the exception of Plaintiff, will release his or her claim to monetary damages or relief. *Id.* at 9-10. As such, the release "adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending th[e] litigation with finality." *Lee v. Global Tel*Link Corp.*, 2017 WL 1338085, at *7 (C.D. Cal. Apr. 7, 2017). This factor favors approval of the Settlement.

### D.   Extent of Discovery and Stage of Proceedings

Courts use this factor to evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (for the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value."). "A

- 16 -

settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV, Inc.*, 221 F.R.D. at 528.

The Parties negotiated the Settlement on a developed record at an advanced stage of litigation, after this Court had certified a Rule 23(b)(2) class. *See* Section II, *supra*. They engaged in extensive discovery and motions practice, including the exchange of hundreds of pages of written discovery requests and responses and the production of 17,279 pages of documents and nine party and expert witness depositions. RAP Dec. at ¶¶6, 10-11. They also engaged in countless informal conferences and discussions and committed hundreds of hours to reviewing discovery and conducting research. Clearly, the Parties were able to negotiate the Settlement on a fully informed basis and with a thorough understanding of the merits and value of the parties' respective positions. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (factor supported approval where parties litigated multiple motions to dismiss, engaged in formal and informal discovery, produced and analyzed thousands of pages of documents, prepared detailed mediation briefs, and participated in mediation); *Knapp*, 283 F. Supp. 3d at 833 (finding this factor supporting settlement where "significant investigation and discovery preceded the parties' respective motions, and the plaintiff had retained two experts to support this case and where at the time of settlement, the parties had been litigation for nearly nine months"). Accordingly, the extent of discovery completed and the stage of the proceedings weigh strongly in favor of final approval of the Settlement. *DIRECTV, Inc.*, 221 F.R.D. at 528 ("the proposed settlement was reached only after the parties had exhaustively examined the factual and legal bases of the disputed claims" and "[t]his fact strongly militates in favor of the Court's approval of the settlement.").

### E.    The Experience and Views of Counsel support final approval

The Ninth Circuit has noted that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th

Cir. 1995) (same). As such, [a] district court is 'entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* RAP Dec. at ¶¶4-5; Seely Dec. at ¶3; Gustafson Dec. at ¶3; Van Dyck Dec. at ¶3; Cruz Hodge Dec. at ¶3; and Wexler Dec. at ¶2.  Based on their collective experience and their analyses of the risks, burdens, and expense of continued litigation, Plaintiff's counsel believe the Settlement is fair, adequate, reasonable, and in the best interest of the Settlement Class. In addition, the willingness of Defendant's counsel, whom also have extensive experience in consumer class action litigation, to agree to the Settlement demonstrates their view that the Settlement is fair, reasonable, and adequate. This factor favors approval of the Settlement.

### F.       Notice to Appropriate Government Officials in Lieu of the Presence of a Governmental Participant

While no governmental entity is a party to this litigation, notice will be issued to the appropriate federal and state officials in accordance with 28 U.S.C. §1715. Because Defendant will "notif[y] officials of the proposed settlement pursuant to CAFA ... [if] and no government entity has raised an objection" by the time of the hearing this factor will "favor[] settlement." *Knapp*, 283 F. Supp. 3d at 833; *Holman v. Experian Info. Sols., Inc.*, 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014).

### G.       The Settlement is the result of arm's-length, non-collusive negotiations

The Court "must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992); *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-

collusive." *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288, at *6 (N.D. Cal. Feb. 27, 2019).

Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a

reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State*

*Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. April 22, 2010).

The Parties' negotiation process favors approval of the Settlement. The Parties negotiated

at arm's length over the course of several months. *See* 4 Newberg on Class Actions §13:1; Fed.

R. Civ. P. 23(e)(2)(B). The benefit of mature discovery and motion practice underscores the fact

that the Settlement is fair. *Lane v. Brown,* 166 F. Supp. 3d 1180, 1190 (D. Or. 2016). Additionally,

the Parties' negotiations were guided by the assistance of Chief Magistrate Spero in two mediation

sessions, on May 4, 2021 and August 17, 2021. (Dkts. 216, 234.) The Parties also exchanged

correspondence with Chief Magistrate Spero, who reviewed drafts of the Settlement more than

once.  His involvement belies any suggestion that the Settlement is a product of collusion. *In re*

*Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007); *Satchell v. Federal*

*Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Importantly, none of the "red flags" the Ninth Circuit identified as potentially suggesting

collusion—when counsel receive a disproportionate portion of the settlement, a "clear sailing"

arrangement providing for the payment of attorneys' fees separate and apart from class funds, or a

reversion of any funds to the defendant—are present here. *In re Bluetooth Headset Products Liab.*

*Litig.* 654 F.3d 935, 947 (9th Cir. 2011). Moreover, the discussion of attorney fees occurred only

after the Parties reached settlement on the key issues of testing and disclosure. *See G. F. v. Contra*

*Costa County*, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (finding no collusion where

"the parties only negotiated attorneys' fees after agreement was reached on the key merits issues").

Although not a finding or admission of liability by Defendant, the Settlement commits Defendant

to testing for heavy metals in its products and disclosing the results to consumers. Ex. 1 at 5-7.

The Settlement is the result of serious, informed, non-collusive arms-length negotiations involving experienced counsel familiar with the legal and factual issues of this case, and it was made with the assistance and supervision of a mediator, Chief Magistrate Spero. It meets all applicable requirements of law, including Rule 23 and CAFA, and merits approval.

## H.    The Settlement Satisfies Rule 23

The proposed class representatives and class counsel have adequately represented the class, and the Settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A), (B); *see also* Sections IV.A.1.d, V.E, *supra*. The relief to the Settlement Class is likewise adequate, taking into account the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also* Section V.A, *supra*. Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(C)(iii) are not relevant here as this action relates to an injunctive relief only class. Rule 23(e)(2)(C)(iv) does not apply as the Parties did not make any agreements in connection with the Settlement.

The Settlement satisfies the remaining factor, Rule 23(e)(2)(D), in that the Settlement treats the Settlement Class equitably relative to each other. All members of the Settlement Class will have access to information about any presence of heavy metals in the Covered Products, allowing the Settlement Class to make informed and confident purchasing decisions. Ex. 1 at 5-7. This relief does not preferentially treat any member of the Settlement Class. Thus, this factor favors approval.

## VI.    THE COURT SHOULD AWARD REASONABLE ATTORNEYS' FEES AND COSTS AS REQUESTED BY PLAINTIFF'S COUNSEL

Courts in the Ninth Circuit properly use the lodestar multiplier method to award fees in injunctive relief class action settlements. *Lilly v. Jamba Juice Co.* ("*Lilly II*"), 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015); *Kim v. Space Pencil, Inc.,* 2012 WL 5948951, at *7 (N.D. Cal. Nov. 28, 2012). "Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent

representation or quality of work." *Lilly II*, 2015 WL 2062858, at *5. "[T]he lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Kim*, 2012 WL 5948951, at *7; *In re Bluetooth*, 654 F.3d at 941-942. It may be adjusted by use of a multiplier to account for "'the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Kim*, 2012 WL 5948951, at *7. "There is a strong presumption that the lodestar figure represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363-364, n.8 (9th Cir. 1996). And the request from the party seeking fees may be supported with "documentation and other evidence, including their own affidavits or rates counsel has received in comparable cases, that their hourly rate is consistent with similarly experienced attorneys in the relevant community." *Lilly II*, 2015 WL 2062858, at *5.

## A.     Plaintiff's Counsel's Hourly Rates are Reasonable

Hourly rates are reasonable if they are within the range of those charged by attorneys of comparable experience, reputation, and ability for similar litigation in the relevant community. *Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *4 (N.D. Cal. Jan. 18, 2017). Plaintiff's counsel "are experienced in complex class action litigation and regularly litigate cases in California federal and state courts. [They] have an extensive history of successfully litigating complex class action cases." *Alvarez*, 2017 WL 2214585, at *4. The hourly rates for Plaintiff's counsel are well within the range of rates billed by comparable attorneys in the Northern District. *See Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (finding hourly rates ranging from $360 to $900 for attorneys and $225 for paralegals "in line with the market rates charged … in the Northern District of California"); *G.F.*, 2015 WL 7571789, at *13-14 (approving hourly rates up to $975 and approving requested fees for injunctive relief only settlement); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015). (approving hourly from about $310 to $975 as reasonable).

- 21 -

### B.   The Number of Hours Claimed is Reasonable

Counsel need not provide "extensive detail about how an attorney or paralegal spends their time" and should identify the general subject matter of their time in supporting affidavits. *Lilly II*, 2015 WL 2062858, at *5. Plaintiff's counsel hours are reasonable, and the billing summaries attached to their declarations sufficiently document and support the claimed fees. Over the course of this litigation, the Parties engaged in substantial discovery, including the production of 17,279 pages of documents and conducted nine party and expert witness depositions. *See* Section II, *supra*. Plaintiff's counsel spent 6,053.50 attorney hours in prosecuting the litigation through April 2021. RAP Dec. at ¶6; Seely Dec. at ¶4; Gustafson Dec. at ¶4; Van Dyck Dec. at ¶4; Cruz Hodge Dec. at ¶4; and Wexler Dec. at ¶3. These hours do not reflect time that appeared duplicative or unnecessary and they are justified by the over four year litigation history and the results obtained.

The Parties also engaged in extensive motion practice, including a motion to dismiss (Dkts. 34, 50, 56, 58), a motion for class certification (Dkts. 152, 162, 172), a motion for summary judgment (Dkts. 180, 189, 193), and multiple *Daubert* motions. (Dkts. 163, 174, 179.) Plaintiff successfully defeated most of the motions brought by Defendant, including complex and technical summary judgment and *Daubert* motions. (Dkts. 59, 205.) Plaintiff also obtained certification of a Rule 23(b)(2) class and defeated Defendant's petition for interlocutory appeal of that decision. (Dkts. 205, 220.) Although the Court did not grant certification of the 23(b)(3) Class, the Court need not reduce the requested fee award by excluding time spent on those claims.  *See Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) ("[E]ven if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims."); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1255454, at *4 (N.D. Cal. Mar. 31, 2016) (approving the full fee award when the court denied plaintiffs' request to certify a damages class in an injunctive relief settlement and noting that "the finding of liability and the remaining injunctive relief are together an excellent result").

Every firm representing Plaintiff has audited their lodestar hours. The time submitted reflects both the intensity and magnitude of the work that was required in this litigation. Considering the time required to litigate this case for over four years, the time Plaintiff's counsel submits was "reasonable and necessary to the litigation of the case." *Alvarez*, 2017 WL 2214585, at *5. In fact, the attorneys' fees Plaintiff's counsel requests—approximately $1.5 million after subtracting costs—represent almost 50% of the lodestar they actually spent on this matter. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2020 WL 7626410, at *7 (N.D. Cal. Dec. 22, 2020) (a 25% reduction in lodestar was adequate). It also excludes fees incurred after April 2021 during time spent on months-long settlement negotiations and drafting of settlement papers. In light of this reduction and the result obtained for the Settlement Class, the time submitted is objectively reasonable. *Alvarez*, 2017 WL 2214585, at *5.

### C. The Requested Fee is Particularly Reasonable in Light of the Complex Nature of the Litigation and the Substantial Risks of Nonpayment

The fact is that success is never guaranteed. Thus, counsel retained on a contingency fee basis are often entitled to a premium to compensate for both the risks and the delay in payment. *See*, *e.g.*, *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (courts "must apply a risk multiplier" in class actions to "incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis"); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (same). Plaintiff's counsel pursued difficult claims and presented them with skill, all on a contingent basis. The risk of non-payment in this case was particularly high considering that Plaintiff's counsel advanced more than $545,080.89 in out-of-pocket costs. In the end, Plaintiff's counsel voluntarily accepted a substantial near-50% reduction in fees to facilitate the Settlement even though the contingent recovery, difficulty of issues, and the skill in presenting those issues would support a multiplier. Plaintiff's counsel displayed tenacity and creativity in pursuing litigation for years against a well-funded Defendant that employed experienced counsel

- 23 -

1   to mount an aggressive defense. The result achieved for the Settlement Class supports at least the

2   amount requested, which is below the lodestar and does not include a multiplier.

3       **D.      Plaintiff's Counsel's Costs are Reasonable and Necessarily Incurred**

4       "'Class counsel is entitled to reimbursement of reasonable expenses.'" *Alvarez*, 2017 WL

5   2214585, at *5. The incurred costs include court fees, copying fees, courier charges, expert fees,

6   telephone/facsimile fees, travel costs, postage fees, and other related costs. RAP Dec. at ¶9, Ex. 4;

7   Seely Dec. at ¶¶8-9, Ex. 3; Gustafson Dec. at ¶¶8-9, Ex. 3; Van Dyck Dec. at ¶¶8-9, Ex. 3; Cruz

8   Hodge Dec. at ¶¶8-9, Ex. 3; and Wexler Dec. at ¶¶7-8, Ex. 3. The total incurred costs are

9   $545,080.89, including $375,098.99 in expert related costs. RAP Dec. at ¶¶9-12. These costs

10  "were reasonable and necessary to the successful prosecution of this case" and should be approved.

11  *Alvarez*, 2017 WL 2214585, at *5.

12      **E.      The Requested Fee is Proportionate to the Benefit Conferred on the Settlement
               Class**

13      Plaintiff's counsel are requesting a significantly discounted amount in attorneys' fees,

14  demonstrating counsel did not "bargain[ ] away a benefit to the class in exchange for their own

15  interests." *In re Bluetooth*, 654 F.3d at 938. In return, Plaintiff has "extended a substantial benefit"

16  to the Settlement Class: transparency about the presence of heavy metals in the Covered Products

17  and the ability to make a more informed choice. *Id.* at 941. Plaintiff's counsel did not negotiate

18  their attorneys' fees and costs until after agreeing to the key aspects of the injunctive relief (all

19  with the guidance of Chief Magistrate Spero). They "did not allow their attorneys' fees to interfere

20  with injunctive relief sought for the class," and the fee should be approved. *G.F.*, 2015 WL

21  7571789, at *11.

22  **VII.   THE COURT SHOULD APPROVE THE SERVICE AWARD TO PLAINTIFF**

23      Ninth Circuit precedent supports the distribution of service awards. *In re Apple Inc. Device

24  Performance Litig.*, 2021 WL 1022866, at *11 (N.D. Cal. Mar. 17, 2021) ("[S]ervice awards 'have

- 24 -

long been approved in the Ninth Circuit.'"). They "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Grace v. Apple, Inc.*, 2021 WL 1222193, at *7 (N.D. Cal. Mar. 31, 2021). Courts consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... ." *Alvarez*, 2017 WL 2214585, at *1. The Ninth Circuit considers "the number of named plaintiffs receiving incentive payment, the proportion of the payments relative to the settlement amount, and the size of each payment." *Navarez v. Forty Niners Football Co.*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020).

Plaintiff's counsel are requesting a $7,000 service award for the only proposed Class Representative in this litigation. The amount would be distributed to Plaintiff in a lump sum and represents 0.3% of the $2,050,000 set aside for fees, costs, and service awards. Plaintiff has provided significant contributions to this enduring lawsuit by responding to discovery requests, producing documents, preparing and sitting for two depositions; and participating in an all-day settlement conference with Chief Magistrate Spero. *See* RAP Dec. at ¶14. The service award of $7,000 is reasonable. *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (service awards representing .086% of total value of the settlements); *Alvarez*, 2017 WL 2214585, at *1 (service awards representing 1.8% of the value of the settlement).

## VIII.   CONCLUSION

The Settlement is the product of arms-length negotiations after thorough investigation and litigation, with the assistance of an experienced mediator and without a trace of collusion. For all of the reasons discussed herein, the Settlement Class should be certified for settlement purposes and the Settlement should be approved as fair, adequate, reasonable, and in the best interests of the Settlement Class.

1

2  Dated: December 15, 2021

3

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST (*pro hac vice*)
REBECCA A. PETERSON (241858)

4

*s/ Rebecca A. Peterson*
REBECCA A. PETERSON

5

6  100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

7  Telephone: (612) 339-6900
Facsimile: (612) 339-0981

8  E-mail: rkshelquist@locklaw.com
            rapeterson@locklaw.com

9

10  ROBBINS LLP
BRIAN J. ROBBINS

11  KEVIN A. SEELY

12  5040 Shoreham Place
San Diego, CA 92122

13  Telephone: (619) 525-3990
Facsimile: (619) 525-3991

14  E-mail: brobbins@robbinsllp.com
            kseely@robbinsllp.com

15

16  GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON (*pro hac vice*)

17  DANIEL J. NORDIN (*pro hac vice*)
CATHERINE K. SMITH (*pro hac vice*)

18  Canadian Pacific Plaza

19  120 South 6th Street, Suite 2600
Minneapolis, MN 55402

20  Telephone: (612) 333-8844
Facsimile: (612) 339-6622

21  E-mail: dgustafson@gustafsongluek.com
            dnordin@gustafsongluek.com

22            csmith@ gustafsongluek.com

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA (*pro hac vice*)
KATHERINE VAN DYCK (*pro hac vice*)
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
        charles@cuneolaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
JOSEPH J. DEPALMA (*pro hac vice*)
SUSANA CRUZ HODGE (*pro hac vice*)
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
        scruzhodge@litedepalma.com

WEXLER BOLEY & ELGERSMA LLP
Kenneth A. Wexler (*pro hac vice*)
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wbe-llp.com

WEXLER BOLEY & ELGERSMA LLP
Mark J. Tamblyn
333 University Avenue, Suite 200
Sacramento, CA 95825
Telephone:  (916) 565-7692
E-mail: mjt@wbe-llp.com

**Attorneys for Plaintiff**