LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST(*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
        rkshelquist@locklaw.com

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL ZEIGER, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:17-CV-04056-WHO |
| Plaintiff, | |
| v. | **DECLARATION OF REBECCA A. PETERSON IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |
| WELLPET LLC, a Delaware corporation, | |
| Defendant. | Judge: Hon. William H. Orrick |

I, Rebecca A. Peterson, declare as follows:

1.      I am a partner with the firm of Lockridge Grindal Nauen P.L.L.P. ("LGN") and I am one of the attorneys representing Plaintiff in the above-entitled action. I submit this declaration in support of the motion for an award of attorneys' fees and expenses.

2.      Attached as Exhibit 1 is a true and correct copy of the class action settlement agreement in the matter of *Zeiger v. Wellpet LLC*, No. 3:17-cv-04056-WHO (N.D. Cal.).

3.      I am a member in good standing of the State Bar of Minnesota and California and I have never been the subject of any type of disciplinary proceeding.

4.      I was admitted to the State Bar of California in 2006 and the State Bar of Minnesota in 2011. Since 2014, my practice has been devoted to the prosecution of class actions on behalf of Plaintiffs.  I have served as counsel in numerous class action cases.

5.      Attached as Exhibit 2 is a true and correct copy of LGN's firm resume, including those attorneys who worked on this litigation.

6.      Attached as Exhibit 3 is a true and correct copy of a summary of time spent by the attorneys and other professional staff at LGN in this litigation. The summary was prepared from contemporaneous daily time records maintained by LGN and are available at the request of the Court. The total number of audited hours expended on this litigation by the attorneys and other professional staff at LGN from its inception through April 30, 2021, a period of almost four years, is 2,413.5 hours. The total lodestar for LGN, based on my firm's historical (usual and customary) class action rates throughout this case, is $1,294,007.50. The tasks undertaken by LGN in this litigation included: Engaged in investigation and factual research, prepared and participated in written discovery; researched and drafted briefs and pretrial motions; provided litigation strategy and case management; retained and worked with experts; prepared for and attended various

hearing and depositions; and prepared for and attended multiple mediation sessions and worked on case settlement.

7.     Document review in this litigation (which included review of 17,279 pages of documents produced by Defendant and third parties), was capped at $400.00 per hour.

8.     Similar rates charged by the attorneys and other professionals at LGN have been approved by other courts including:

       a.     *In re Syngenta Litig.*, No. 27-cv-15-3785 (Henn. Co. Dist. Ct., Minn.); and

       b.     *D&M Farms et al. v. Birdsong Corporation, et al.,* No. 2:19-cv-00463, (E.D. Va).

9.     Attached as Exhibit 4 is a true and correct copy of a summary of expenses paid by LGN, totaling $93,550.90, which were necessary in relation to this litigation. The expenses pertaining to this litigation included court fees, copying fees, courier charges, expert fees, telephone/facsimile fees, travel costs, postage fees, and other related costs. The expenses are reflected in the books and records of LGN. These books and records are prepared from expenses, vouchers, check records and other documents, and are an accurate record of the expenses.

10.     Plaintiff paid $375,098.99 in expert fees and costs during the prosecution of this action.

11.     Both parties retained experts, including Plaintiff's experts, Steven Gaskin, Dr. Gary Pusillo, BS, MS, Ph.D., PAS, ACAN; Dr. Sean Callan, Ph.D; Bruce Silverman; and Colin Weir and Defendant's experts, Jesse David, Ph.D. and Dr. Robert Poppenga, DVM, Ph.D., DABVT.

12.     Throughout this litigation, the parties collectively conducted nine depositions, including Plaintiff (who was deposed twice); WellPet employees (Digvijay Gurung, Lisa Laich,

DECLARATION OF REBECCA A. PETERSON IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No. 3:17-CV-04056-WHO

Lisa Marseglia, and Clark Reinhard); a 30(b)(6) deposition (Greg Kean); and Defendant's experts (Jesse David, Ph.D and Dr. Robert Poppenga, DVM, Ph.D., DABVT).

13.     After the first settlement conference on May 4, 2021, the parties continued to negotiate the settlement terms, including exchanging drafts of the settlement agreement in anticipation of the second settlement conference on August 17, 2021.

14.     Plaintiff was actively involved in this litigation, which included responding to discovery requests, preparing and sitting for two depositions; and participating in an all-day settlement conference with his counsel, Defendant's counsel, and Chief Magistrate Judge Joseph C. Spero.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of December, 2021.


                            s/   Rebecca A. Peterson
                            REBECCA A. PETERSON
                            *Attorney for Plaintiff*

# EXHIBIT 1

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement and Release ("Agreement"), effective upon the date of the signatures below, is made by and between WellPet LLC ("WellPet") and the Class Representative Daniel Zeiger ("Plaintiff"), individually and on behalf of the Class (defined below) (collectively, the "Parties"), in the matter of *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO (N.D. Cal.) (the "Action").

**WHEREAS**, on July 19, 2017, Plaintiff commenced the Action for alleged violations of California law in the United States District Court for the Northern District of California;

**WHEREAS**, WellPet denies the allegations contained in the Action;

**WHEREAS**, on February 26, 2021, Judge William H. Orrick granted in-part and denied in-part Plaintiff's motion for class certification and certified an injunctive relief class of consumers who purchased the following WellPet products during the Class Period: (1) Complete Health Adult Whitefish & Sweet Potato; (2) Complete Health Grain Free Adult Whitefish & Menhaden Fish Meal; and (3) CORE Ocean (with Whitefish, Herring Meal, and Salmon Meal) pursuant to Federal Rule of Civil Procedure 23(b)(2); and denied Plaintiff's motion to certify any damages class under Federal Rule of Civil Procedure 23(b)(3);

**WHEREAS**, on May 4, 2021, the Parties engaged in a Settlement Conference before the Honorable Joseph C. Spero and came to an agreement in principle to settle the Plaintiff's claims as well as the injunctive relief claims of the Settlement Class;

**WHEREAS**, on August 17, 2021, the Parties engaged in a further Settlement Conference before the Honorable Joseph C. Spero;

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

**WHEREAS**, WellPet and Plaintiff, individually and on behalf of the Settlement Class, by this Agreement, intend to fully, finally and forever compromise, settle, release, resolve, and dismiss the Action; and

**NOW THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

1.     **DEFINITIONS.**

As used in this Agreement, the following capitalized terms have the meanings specified below.

**"Action"** means the matter of *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO (N.D. Cal.).

**"Agreement"** or **"Settlement Agreement"** means this Class Action Settlement Agreement.

**"Class"** or **"Settlement Class"** means all persons in the United States who, between July 1, 2013, and September 1, 2021 (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one of the Covered Products, as defined below.

**"Class Counsel"** means the following attorneys of record for the Class Representative and Class in the Action, unless otherwise modified by the Court:

Rebecca A. Peterson
Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Phone: (612) 339-6900

Charles LaDuca
Katherine Van Dyck
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960

Brian J. Robbins
Kevin A. Seely
Trevor S. Locko

- 2 -

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

ROBBINS LLP
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990

Daniel E. Gustafson
GUSTAFSON GLUEK, PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Joseph J. DePalma
Susana Cruz Hodge
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000

Kenneth A. Wexler
Michelle Perkovic
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222

**"Class Member"** means each person who is a member of the Settlement Class.

**"Class Period"** means July 1, 2013 to September 1, 2021.

**"Class Representative"** means named plaintiff Daniel Zeiger.

**"Court"** means the Northern District of California, the Honorable William H. Orrick presiding, or any judge who will succeed him as the Judge in this Action.

**"Covered Products"** means all products currently manufactured, distributed, or sold by WellPet in the United States, including, without limitation, all products sold under the Wellness®, Holistic Select®, Old Mother Hubbard®, Eagle Pack®, Sojos®, and WHIMZEES® brand names.

**"Days"** means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included. Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday. All calculations of days and times may be adjusted with the consent of all parties

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

to permit compliance by WellPet with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1711-1715, including the notifications of appropriate regulators under 28 U.S.C. §1715(b) and expiration of the 90-day review period in 28 U.S.C. § 1715 before the Final Approval Hearing is held to review and approve the Agreement.

**"Effective Date"** means the date on which the Judgment becomes final. For purposes of this definition, the Judgment shall become final: (a) if no appeal from the Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date of such affirmance or dismissal; or (c) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (d) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

**"Fee Award"** means the amount of attorneys' fees and reimbursement of expenses and costs awarded by the Court to Class Counsel.

**"Final Approval Hearing"** means the hearing to be conducted by the Court to determine whether to finally approve the Settlement and to enter Judgment.

**"Final Approval Order"** means the order to be submitted to the Court in connection with a Motion for Final Approval and the Final Approval Hearing, substantially in the form attached hereto as Exhibit 1.

**"Judgment"** means the Court's act of entering a final judgment on the docket as described in Federal Rule of Civil Procedure 58.

 **"Objection Deadline"** means the date by which Class Members shall file with the Court a written statement objecting to any terms of the Settlement or to Class Counsel's request for fees or expenses, which shall be sixty (60) Days after the Parties file the proposed Agreement with the Court.

**"Party"** or **"Parties"** means the Class Representative, individually and on behalf of the Settlement Class, and WellPet.

**"Person"** means any individual, corporation, partnership, association, or any other legal entity.

**"Plaintiff"** means the Class Representative, either individually or on behalf of the Settlement Class.

 **"Released Claims"** means, collectively, Plaintiff's claims and the Settlement Class Claims released pursuant to Section 6 below.

**"Released Parties"** means WellPet together with its current, former, and future direct and indirect parents, predecessors, successors, affiliates, assigns, subsidiaries, divisions, or related corporate entities, and all of their respective current, future, and former employees,

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

officers, directors, shareholders, partners, members, assigns, agents, trustees, administrators, executors, insurers, attorneys, and customers.

**"Service Award"** means any award approved by the Court that is payable to the Class Representative.

**"Settlement"** means the resolution of the Action embodied in the terms of this Agreement.

**"Settlement Class Claims"** means all causes of action, suits, claims, liens, demands, judgments, and obligations, whether arising out of any state, local, or federal statute, ordinance, regulation, claim, or law, at common law or equity, whether past or present, known or unknown, asserted or unasserted, that arise out of or relate to any and all past or present claims for injunctive relief that the Settlement Class has or may have against WellPet or any other Released Party arising out of or relating to allegations made or that could have been made in the Action regarding Covered Products including, without limitation, regarding any alleged dangerous substances or chemicals in the Covered Products.

**"Testing Period"** means the period during which WellPet shall comply with the testing and disclosure obligations described in this Agreement, which period shall, at a minimum, run from January 3, 2022 until January 2, 2026; provided that, if WellPet continues to comply with such obligations beyond January 2, 2026, such period shall extend until January 2, 2030 or until WellPet no longer complies with such obligations, whichever is shorter.

**"WellPet"** or **"Defendant"** means WellPet LLC, the defendant in the Action.

## 2.    INJUNCTIVE RELIEF.

### 2.1.    Testing.

2.1.1.  Recurring at least every four months during the Testing Period, WellPet shall arrange for an appropriate Representative Sample, as generally defined herein, of the Covered Products to be sufficiently and adequately tested for the presence of arsenic, cadmium, mercury, and lead. A "Representative Sample" shall include at least one product from the Covered Products offered for sale by WellPet at the time of the testing. The products included in a Representative Sample shall be chosen at random, except that WellPet shall ensure that a sample of each recipe comprising any of the Covered Products is tested at least once each calendar year. More testing will be conducted (and disclosed on its website as discussed below) if WellPet deems more testing to be appropriate based on its monitoring of the heavy metals as described herein.

2.1.2.  WellPet shall ensure that the testing methodology employed to test the Representative Samples is capable of reliably detecting the presence of arsenic, cadmium, and lead to a level of one part per million, and mercury to a level of one-tenth of one part per million. Nothing in this Agreement shall preclude WellPet from using a third-party laboratory or consultant the testing facilities of its suppliers to perform this testing, provided that the testing methodology meets the above criteria and that such details are disclosed on its website as discussed below.

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

2.1.3.   Public safety organizations, such as the National Research Council ("NRC") have set forth the following maximum tolerable limits ("MTL") for arsenic, cadmium, lead, and mercury that were published by the NRC as set forth in the June 15, 2011 Target Animal Review Memorandum:

- Arsenic – maximum tolerable limit of 12.5 mg/kg (ppm)
- Cadmium – maximum tolerable limit of 10.0 mg/kg (ppm)
- Lead – maximum tolerable limit of 10.0 mg/kg (ppm)
- Mercury – maximum tolerable limit of 0.27 mg/kg (ppm)

The Parties also acknowledge, in addition to the NRC MTLs listed above, that more recent studies on heavy metals are also available and that consumers will be encouraged by WellPet, through its website, to conduct additional research on the presence of heavy metals in dog food.

2.1.4.   WellPet shall retain the data it receives from the testing (the "Test Results") for a period of at least one year from the date of testing. This information will be disclosed on WellPet's website, as discussed below.

2.1.5.   In the event that any Test Results show that a product contains arsenic, cadmium, lead, and mercury in an amount in excess of the NRC MTL levels, consistent with its existing policies, WellPet will destroy the entire batch or lot associated with that product. Plaintiff may make a written request to WellPet for the test results. In response, within thirty (30) days of Plaintiff's written request, WellPet will provide the Test Results.

## 2.2.   Disclosure of Test Results.

2.2.1.   Within one month of receiving the Test Results, WellPet shall post a summary of the Test Results on its Website (a publicly accessible portion of its website, www.wellpet.com, or any successor website). In addition, WellPet shall also include on its Website, language that encourages its consumers to conduct their own research on heavy metal exposure, to determine for themselves the appropriate level of heavy metals for their pets. WellPet's summary of Test Results shall be posted in the following format:

| Maximum Tolerable Levels (MTL) measured in mg/kg | | | |
|---|---|---|---|
| The MTL represents the most restrictive maximum tolerable limit from the Target Animal Review Memorandum dated June 15, 2011, based on NRC guidelines. | | | |
| Arsenic (As) | Cadmium (Cd) | Lead (Pb) | Mercury (Hg) |
| 12.50 mg/kg | 10.00 mg/kg | 10.00 mg/kg | 0.27 mg/kg |

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

| Product Description | Test Date | As mg/kg | % below limit | Cd mg/kg | % below limit | Pb mg/kg | % below limit | Hg mg/kg | % below limit |
|---|---|---|---|---|---|---|---|---|---|
| [Name] | [Month, Year] | [Data] | [Data/MTL] | [Data] | [Data/MTL] | [Data] | [Data/MTL] | [Data] | [Data/MTL] |

The information in the above table shall be referred to as the "Test Results Summary." The "Test Results Summary" shall also include reference to who, or what entity, conducted the heavy metal testing.

2.2.2.  WellPet shall maintain the Test Results Summary on its Website for a period of at least one year from the date it is first posted to its Website; and WellPet will disclose as such on its Website.

2.2.3.  Nothing in this Agreement shall preclude WellPet from also claiming on its Website, in connection with the Test Results Summaries or otherwise, that WellPet's products are safe, that any trace amounts of arsenic, cadmium, lead, or mercury in WellPet's products are naturally occurring, and/or that the public safety organizations, including the NRC have set acceptable exposure levels for certain heavy metals in pet food. WellPet shall include a link to the Test Results Summaries when explaining the above topics on its website. WellPet shall also include language that encourages its consumers to conduct their own research on heavy metal exposure, in addition to the NRC, and that consumers may want to solicit information from companies regarding the heavy metal content in pet food products before purchasing.

**2.3.    Efficacy of Injunctive Relief.** Plaintiff and Class Counsel, as representatives of the Settlement Class, hereby agree that the terms of this Agreement, including the injunctive relief set forth above, fully resolves and releases the Released Claims.

3.    **ATTORNEYS' FEES, COSTS, AND SERVICE AWARD.**

**Application for Attorneys' Fees and Costs and Service Award.** Class Counsel and Class Representative shall file a motion, set for hearing on the same date as the Final Approval Hearing, requesting a Fee Award and Service Award, collectively, in the amount of $2,050,000.

**Distribution of Attorneys' Fees and Costs.** WellPet will cause to be paid to Lockridge Grindal Nauen P.L.L.P., as agent for Class Counsel, the amount of attorneys' fees and costs awarded by the Court within fourteen (14) Days after entry of Judgment, notwithstanding the filing of any appeals, or any other proceedings that may delay the Effective Date of the Settlement or a final Judgment in the case. Lockridge Grindal Nauen P.L.L.P., as agent for Class Counsel, shall provide wire instructions and W-9 forms for each recipient to WellPet. After transfer of the funds, Lockridge Grindal Nauen P.L.L.P will distribute the attorneys' fees and costs among Class Counsel. Notwithstanding the foregoing, if for any reason, the Fee Award is overturned, reduced, vacated, or otherwise modified, Class Counsel shall be obligated to return to WellPet any difference between the amount of the original award and

- 7 -

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

any reduced award within thirty (30) Days. For the avoidance of doubt, if the Fee Award is vacated in its entirety, Class Counsel shall be obligated to return the entire amount of the original award within thirty (30) days.

**Distribution of Service Award.** Class Counsel will pay any Service Award approved by the Court to the Class Representative, and WellPet shall have no liability to pay such amount.

**Settlement Independent of Amounts Awarded for Fee Award and Service Award.** The awards of attorneys' fees and costs, and payment to the Class Representative are subject to and dependent upon the Court's approval. However, this Settlement is not dependent or conditioned upon the Court's approving Class Counsel's and Class Representative' requests for such payments or awarding the particular amounts sought by Class Counsel and Class Representative. In the event the Court declines Class Counsel's or Class Representative' requests or awards in any amounts sought, this Settlement will continue to be effective and enforceable by the Parties, provided, however, that the Class Representative and Class Counsel retain the right to appeal the amount of the Fee Award, even if the Settlement is otherwise approved by the Court.

4.    **NOTICE AND OBJECTIONS.**

**Role of Class Counsel.** Class Counsel shall assist with various administrative tasks including answering inquiries from Class Members and otherwise assisting with the implementation and administration of the Settlement.

**Notice.** Pursuant to CAFA, Counsel for WellPet, on behalf of WellPet, will serve notice of the Settlement upon the appropriate federal and state officials within ten (10) Days after the Parties file the proposed Agreement with the Court. *See* 28 U.S.C. § 1715(b). The costs of such CAFA notice will be paid by WellPet. Other than CAFA notice, the Parties agree that notice to the Settlement Class is unnecessary because, *inter alia*, this Agreement is a purely injunctive settlement under Rule 23(b)(2), no individual damages claims are being released (apart from Plaintiff Zeiger's claims), and Defendant has agreed to publicly present and publish its Testing Results on Defendant's public Website (*see* Section 2.2 above). Should the Court nonetheless require formal class notice, Defendant shall have ten (10) days to notify Plaintiff's counsel and the Court that Defendant cannot proceed with Settlement on that basis, whereby this Agreement and the parties' related application to the Court for approval shall have no further force or effect.

5.    **COURT APPROVAL.**

**Final Approval.** After executing this Agreement, Class Counsel will submit to the Court this Agreement, file a memorandum of points and authorities in support of the Final Approval and request that the Court enter the Final Approval Order in substantially similar form as the proposed order attached as Exhibit 1. In general, the Motion for Final Approval, will include a request that the Court: (1) grant approval of the proposed Settlement; (2) maintain the certified Settlement Class for settlement purposes and appoint Class Counsel; (3) make a determination that no notice is required under Rule 23 of the Federal Rules of

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

Civil Procedure; and (4) schedule a Final Approval Hearing to determine: (a) whether the Settlement should be granted final approval; (b) whether an application for attorneys' fees and costs should be granted; and (c) whether an application for service award should be granted.

**Failure to Obtain Approval.** If this Agreement is not given final approval in its entirety (except as noted in Section 3.4), or if an appellate court reverses final approval of the Agreement, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force or effect and the Parties' rights and defenses will be restored, without prejudice, to their respective positions as if this Agreement had never been executed.

6.   **RELEASE AND DISMISSAL WITH PREJUDICE.**

**Release of WellPet and Related Persons By Plaintiff.** Upon the Effective Date, Plaintiff in his individual capacity and his attorneys, assignees, or other representatives will be deemed to have and by operation of the Judgment will have fully, finally, unconditionally, irrevocably, and forever released the Released Parties from any and all causes of action, suits, claims, liens, demands, judgments, costs, damages, obligations, attorneys' fees (except as provided in this Agreement), and all other legal responsibilities in any form or nature, including but not limited to, all claims arising out of any state, local, or federal statute, ordinance, regulation, or law, at common law or equity, whether past, present, or future, known or unknown, asserted or unasserted, that arise out of or relate to (i) the facts alleged or the claims asserted (or that could have been asserted) in any of the complaints filed in the Action, or (ii) the labeling, marketing, advertising, promotion, or distribution of the Covered Products at any time during the Class Period.

The release of known or unknown and suspected or unsuspected claims includes waiver of all rights under Section 1542 of the California Civil Code (or any other state equivalent), which reads as follows:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

**Release of WellPet and Related Persons By Class.** Upon the Effective Date, each Class Member and his, her or its agents, attorneys, assigns, or other representatives will be deemed to have, and by operation of the Judgment will have fully, finally, unconditionally, irrevocably, and forever released the Released Parties from the Settlement Class Claims, and will be enjoined during the Testing Period from bringing any new injunctive relief claim(s) against any Released Parties based on purchases of Covered Product(s) during that period that arise out of, are based upon, or are substantially similar to, the Settlement Class Claims.

The release of known or unknown and suspected or unsuspected claims includes waiver of all rights to bring new injunctive claims against WellPet or any other Released Parties as

- 9 -

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

described in Section 6.2 during the Testing Period under Section 1542 of the California Civil Code (or any other state equivalent), which reads as follows:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

This release is intended to cover the full scope allowed by *Hesse v. Sprint Corporation*, 598 F.3d 581 (9th Cir. 2010), but is not intended to go beyond that scope.

      **6.3**    **Covenant Not to Sue.** Plaintiff agrees and covenants, and each Class Member will be deemed to have agreed and covenanted, not to sue any of the Released Parties, with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

      **6.4**    **Dismissal with Prejudice**. The Parties agree that this Action shall be dismissed with prejudice.

## 7.    NO ADMISSION OF LIABILITY.

**No Admission of Liability.** WellPet, while continuing to deny all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the Action on the terms stated in this Agreement to avoid further expense, inconvenience, and burden, and therefore has determined that this Settlement Agreement on the terms set forth herein is in WellPet's best interests. WellPet denies any liability or wrongdoing of any kind associated with the claims alleged in this Action, and denies the material allegations of all the complaints filed in this Action. Neither the Settlement Agreement nor any actions taken to carry out the Settlement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or of the validity of any claim, defense, or of any point of fact or law on the part of any party, including but not limited to an admission that this Action is properly brought on a class or representative basis, or that a class or classes may be certified, other than for settlement purposes. Neither the Settlement Agreement, nor the fact of settlement, nor the settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission, concession, presumption, inference, or evidence thereof of any wrongdoing by WellPet or of the appropriateness of these or similar claims for class certification in any proceeding.

## 8.    MISCELLANEOUS.

**Change of Time Periods for Performance.** The time periods for performance under this Settlement Agreement, except the Class Period, are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties, without notice to Class Members. The Parties reserve the right, by agreement and subject to the Court's approval to reasonably extend the time to carry out any of the provisions of this Settlement Agreement.

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

**Time for Compliance.** If the date for performance of any act required by or under this Settlement Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as it had been performed on the day or within the period of time specified by or under this Settlement Agreement.

**Entire Agreement.** This Agreement, together with any written representations made by the parties in connection herewith, shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein.

**Notices Under Agreement.** All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and WellPet, or otherwise made pursuant to this Agreement, shall be directed to the following counsel:

| Class Counsel | WellPet |
|---|---|
| Rebecca A. Peterson | Amir M. Nassihi |
| rapeterson@locklaw.com | James P. Muehlberger |
| Lockridge Grindal Nauen P.L.L.P. | anassihi@shb.com |
| 100 Washington Avenue South | jmuehlberger@shb.com |
| Suite 2200 | Shook, Hardy & Bacon L.L.P. |
| Minneapolis, MN 55401 | 2555 Grand Blvd. |
| | Kansas City, MO 64108-2613 |

**Good Faith.** The Parties acknowledge that each intends to implement the Agreement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

**Binding on Successors.** This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the released Parties and persons.

**Arms-Length Negotiations.** This Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Class and other terms of this Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided by the Parties' private Settlement Conference with Chief Magistrate Judge Joseph C. Spero. The parties reached the Agreement after considering the risks and benefits of litigation. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.

**Publicity.** Neither Plaintiff nor WellPet will make any public statements about this Settlement, except in filings and appearances made in Court and in CAFA notices, and in language agreed upon in advance by the Parties to be used in answering any questions by the media, provided, however, that agreement on language shall not be unreasonably withheld by one Party so long as the language proposed by the other Party is non-disparaging.

**Non-Disparagement**. Plaintiff and Class Counsel agree that they will not make any statements or remarks about WellPet that defames, disparages, or in any way criticizes the reputation, practices, or conduct of WellPet or its brands, products, officers, directors, or employees. Plaintiff and Class Counsel further agree that they shall not encourage any family member, friend, or other person or entity to make any statements or remarks about WellPet or its brands, products, officers, directors, or employees that defames, disparages, or in any way criticizes the reputation, practices, or conduct of WellPet or its brands, products, officers, directors, or employees. Nothing herein shall prevent Plaintiff or Class Counsel from testifying truthfully in connection with any litigation, arbitration, or administrative proceeding if compelled to do so by a subpoena or court order.

Neither Plaintiff nor Class Counsel have communicated with any other potential plaintiff regarding bringing new claims against WellPet or its affiliated companies related to products manufactured, marketed, and/or sold by WellPet or its affiliated companies. Neither Class Counsel nor Plaintiff are aware of any other potential plaintiff or class member or attorney who intends to make a demand or bring such litigation related to products manufactured, marketed, and/or sold by WellPet or its affiliated companies. Neither Plaintiff nor Class Counsel have been notified or otherwise informed of any such intention or consideration as described above.

[Reserved]

**Waiver.** The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**Severability.** Except as otherwise provided herein, the provisions of this Agreement are not severable. The Parties would not have adopted this Agreement except as written in its entirety. If any part of this Agreement is held invalid, other than as contemplated herein, then this Agreement is invalid.

**Modification in Writing Only.** This Agreement and any and all parts of it may be amended, modified, changed, or waived only by a writing signed by duly authorized agents of WellPet and Plaintiff.

**Headings.** The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

**Governing Law.** This Agreement shall be interpreted, construed and enforced according to the laws of the State of California, without regard to conflicts of law.

**Continuing Jurisdiction.** After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law.   The parties agree Plaintiff shall have standing to enforce the Judgment.

**Execution.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

DocuSign Envelope ID: 5C0979CB-BA98-4EFB-9009-DD6EDC9DD293

IN WITNESS WHEREOF, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

**Plaintiff, on behalf of the Class**

Daniel Zeiger                                              Dated: 11/20/2021

Daniel Zeiger

**Class Counsel**

                                                          Dated: 11/23/2021

Rebecca A. Peterson

**On behalf of Defendant WellPet LLC**

Erica Hageman                                             Dated: 12/1/2021

Erica Hageman

**Counsel for Defendant WellPet LLC**

James P. Muehlberger                                      Dated: 12/1/2021

James P. Muehlberger

- 14 -

# EXHIBIT 2



## ABOUT US

For over 40 years, Lockridge Grindal Nauen P.L.L.P. has served clients throughout the Midwest and in Washington, D.C. Our attorneys have extensive experience in litigation concerning consumer fraud, antitrust, business, campaign finance, data breach, governmental, health care, employment, environmental, ERISA, intellectual property, real estate, securities, and tribal law.

Our firm represents clients of all shapes and sizes, taking the time to understand each client's goals and aspirations before tailoring our representation to meet their individual needs, whether they be in the courtroom, the halls of Congress, city hall, or in their state capitol.

Lockridge Grindal Nauen is one of the preeminent class action law firms in the country, has vast experience representing banks, financial institutions, shareholders, and other institutional investors in complex litigation, and has extensive experience litigating cases in Minnesota and across the country. Our work also encompasses claims directed at a diverse range of products, including asbestos products, electrical appliances, industrial accidents, construction products, and construction equipment.

As to consumer fraud litigation, the group recently obtained a judgment on behalf of a nationwide class of farmer-consumers in excess of $60 million. Our attorneys, paralegals and support staff litigate as a team effectively, aggressively and efficiently and have earned a national reputation for work product excellence and effective advocacy.

LGN also practices extensively in antitrust litigation.  The firm has litigated major cases and class actions involving price fixing, industry cartels, predatory pricing, price discrimination, and other antitrust and trade regulation issues in courts nationwide.  LGN attorneys have been recognized by courts, peer review publications, and other professional organizations as leading antitrust lawyers. In the last ten years alone, LGN and its co-counsel have recovered more than $2 billion for their clients and class members in antitrust cases.

Lockridge Grindal Nauen's attorneys and government relations professionals are assisted by an extensive support staff. The firm has offices in Minneapolis, Minnesota, Bismarck, North Dakota, and Washington, D.C.



## DIVERSITY AND INCLUSION

Lockridge Grindal Nauen is committed to embracing and reflecting the diversity of the clients we serve and our community. LGN recognizes our firm is stronger when we include all individuals regardless of gender, race, ethnicity, national origin, sexual orientation, gender identity or expression, or physical ability.

We have worked hard to develop an inclusive work environment. Women make up half of LGN's attorneys and almost 40% of our partners—a figure well ahead of the national average. We are also proud that LGN was the first law firm in Minnesota to publicly oppose the 2012 proposed "Marriage Amendment," which would have banned gay marriage in Minnesota, and we worked closely with Minnesotans United for All Families on the "Vote No" effort.

## Supporting a diverse legal profession

We partner with and sponsor organizations that work to expand diversity in the legal profession, such as the Minnesota Urban Debate League, the Page Education Foundation, the Sanneh Foundation, and Meet Me In The Middle—each of which works to expand educational opportunities and professional opportunities to high school and college students.

We work within the legal community to build a diverse profession. Since 2013, LGN has participated in the Hennepin County Bar Association Minority Clerkship Program (formerly the MSBA Minority Clerkship program), which matches 1L summer associates with LGN. In addition, LGN supports the following programs, either through financial sponsorship or active attorney involvement:

- Minnesota Chapter of the Federal Bar Association, Diversity Committee
- American Bar Association, Membership and Diversity Committees
- Minnesota Mother Attorneys Association
- Minnesota Women Lawyers
- Minnesota American Indian Bar Association
- National American Indian Bar Association
- Jewish Community Relations Council
- William McGee Civil Rights Moot Court
- American Constitution Society
- Community Action Partnership of Hennepin County
- Mid-Minnesota Legal Aid One Hour of Sharing Campaign (100% Associate participation in 2016)

## Helping Our Clients Make an Impact in Our Community

Through our legislative and legal work, LGN assists its clients in making a positive impact in the community. Representative work includes:

- Augsburg College (obtaining funding for an East African teacher training program)
- Boys and Girls Club (obtaining funding for job readiness and after school tutoring)
- Sanneh Foundation (obtaining funding for after school programs)
- Mille Lacs Band of Ojibwe (lobbying and legal work regarding various tribal matters at local and state levels)
- Leech Lake Band of Ojibwe (state and federal lobbying)
- Legal counseling to minority-owned medical providers that focus on providing health care services to diverse communities.



# PRO BONO

The firm's attorneys, paralegals and staff dedicate hundreds of hours per year toward pro bono legal representation and volunteer activities coordinated by a committee of partners and associates. LGN attorneys have been recognized as MSBA North Star Lawyers (for providing at least 50 hours of pro bono legal services) since the North Star Lawyer program began in 2013. Attorneys and paralegals receive credit against firm billable requirements for up to fifty hours of pro bono legal representation.

Many of LGN's attorneys are members of the Volunteer Lawyers' Network and have taken cases through the Minnesota Federal Bar Association's *Pro Se* Project referral program. Others have helped disadvantaged businesses and non-profit organizations with corporate formation and other legal matters. Still others have worked on guardian ad litem cases or represented children in the foster care system, veterans' benefits appeals, environmental matters and, in cooperation with Minnesota Advocates for Human Rights, have secured legal residency for asylum seekers who feared harm or persecution in their home countries of China, Rwanda and Tibet. Many LGN attorneys also provide free legal assistance at walk-in clinics around the Twin Cities.

## *Pro Bono Cases*

### Commercial

LGN attorneys successfully defended an elderly Dallas-area man accused of defaulting on an agreement to repay a loan that funded a so-called "life settlement" insurance policy. The plaintiff filed several similar lawsuits against senior citizens in federal court in Minnesota. LGN invested more than 500 hours in the case, initially referred to LGN by the Minnesota Federal Bar Association's Pro Se Project. After LGN's attorneys overcame the plaintiff's motion for summary judgment, the parties negotiated a settlement of the case.

### Asylum

Many LGN attorneys have represented numerous individuals and families seeking asylum, including:

- After two and a half years of work, a team of LGN attorneys and paralegals won Permanent Residency for a Rwandan client who was orphaned as a child and fled to the United States to avoid violence in her native country. The team won a unique immigration status for the client called Special Immigrant Juvenile Status, which is granted to only 1,200 orphaned child-immigrants each year. The team successfully

argued that the client met the criteria for Special Immigrant Juvenile Status on the basis that she was an orphan and a Minnesota court placed her under the

- guardianship of a Minnesota relative prior to her becoming 18 years old. LGN volunteered over 450 hours to achieve this victory for the client after the case was referred to LGN by the Advocates for Human Rights.
- LGN attorney Brian Clark won permanent resident status for a 10-year old girl from Liberia. The girl qualified for a unique status available to immigrant children whose parents are unable to care for them.
- After eight years of working with a family from Nepal that feared persecution on account of their Tibetan nationality, LGN partner Anna Horning Nygren, with the assistance of LGN paralegal Heather Potteiger and administrative assistant Cheryl Evans, obtained citizenship in 2016 for a family of four. Ms. Horning Nygren and her team first obtained asylum for the entire family, then helped the family obtain permanent residency status and, ultimately, citizenship.
- LGN attorneys have represented numerous individuals and families from other countries, including China, Rwanda, Eritrea, Turkey and Tibet, who have sought asylum in the United States on religious or political grounds.

## Veterans

LGN attorneys succeeded in obtaining survivor benefits from the U.S. Department of Veterans Affairs ("VA") for a pro bono client. The case was complicated by a mistake on the veteran's death certificate that resulted in denial of survivor benefits for the veteran's spouse. As a result, LGN filed litigation in the state where the veteran died to correct the mistake on the death certificate and subsequently assisted the widower in obtaining approval of his application by the VA. LGN invested over 70 hours of time to achieve this victory for the client. The case was initially referred to LGN by the Minnesota Federal Bar Association's Pro Se Project.

## Appellate Public Defender

LGN attorneys have participated in the MSBA Appellate Section's Pro Bono Project with the Appellate Public Defender. Through the program, LGN has represented several criminal defendants in appealing to the Court of Appeals and preparing a petition for review to the Minnesota Supreme Court. The work helps ensure that each person convicted of a crime in the State of Minnesota is able to fully exercise their right to have their conviction reviewed by an appellate body.

## Children

Several LGN attorneys have represented children through guardian ad litem cases, or foster children and children who are wards of the state, in cooperation with the Children's Law Center. In October 2011, the firm received the Children's Law Center's Distinguished Service Award.

- LGN Attorney Elizabeth Odette assisted her 14-year-old client in testifying in camera before the Judge at a trial for termination of her mother's parental rights. The court ruled that it was in the best interest of the child to transfer custody to a foster parent

rather than terminate parental rights based largely on the child's testimony that maintaining her relationship with her mother was very important to her.

## Organizations

LGN attorneys dedicate hundreds of hours every year in support of a variety of organizations, including:

- Children's Law Center of Minnesota. LGN received the Children's Law Center's 2011 Distinguished Service Award for its work representing foster children and children who are wards of the state.
- The Advocates for Human Rights. LGN successfully obtained asylum and citizenship for several clients.
- The Dignity Center, serving individuals transitioning from homelessness.
- Twin Cities Cardozo Society's Minneapolis Urban League Legal Aid Clinic.
- Twin Cities Cardozo Society's St. Paul Legal Aid Clinic, in partnership with Southern Minnesota Regional Legal Aid Services and Interfaith Action.
- Minnesota State Bar Association's Public Defender Appellate Pro Bono Project.
- Federal Bar Association Minnesota Chapter *Pro Se* Project. Our *Pro Se* Project cases have included obtaining survivor benefits from the U.S. Department of Veteran Affairs and many other matters.
- Volunteer Lawyer's Network's criminal expungement program.



**Robert K. Shelquist**
*Partner*
612-339-6900
rkshelquist@locklaw.com

**Practices**

Products Liability & Consumer Fraud Litigation
Antitrust Law
Business Litigation

**Education**

University of Minnesota Law School, 1990,
*cum laude*

**Bar Admissions**

1990, Minnesota

**Court Admissions**

Minnesota
U.S. District Court, District of Minnesota
Eighth Circuit Court of Appeals
U.S. Supreme Court

# Robert K. Shelquist

Rob K. Shelquist is a partner in the firm, and heads the firm's consumer protection and products liability litigation practice groups. During the course of his career, he has represented individuals, small businesses, and corporations in a wide range of civil litigation including defective and mispriced products, securities and ERISA, anti-competitive conduct, privacy, and the use of sharp business practices, fraud, misrepresentations, and other statutory violations in conjunction with the sale of goods and services. Mr. Shelquist has represented plaintiffs as court-appointed counsel and was one of the trial attorneys in two national class actions tried to verdict. In *Peterson v. BASF Corp.*, a judgment in excess of $60 million was paid following a jury verdict, multiple state appellate opinions, and two trips to the U.S. Supreme Court.

Mr. Shelquist has been and continues to be named Lead, Executive Committee, Plaintiff Steering Committee, and Committee Chair in complex litigation in both federal and state courts throughout the United States. Over the course of his career, Mr. Shelquist has led cases which have collectively resulted in close to $1 billion worth of recoveries by way of judgment and settlement.

A 1987 graduate of the University of California at Berkeley with a double major in Legal Studies and Political Science (with high honors), Mr. Shelquist was elected to the Golden Key Society. He received his J.D. Degree from the University of Minnesota Law School, *cum laude*, in 1990. He continues to lecture at continuing legal education events on a variety of topics, has been involved in the leadership of the consumer section of the Bar Association, and is a member of a working group for Standards and Best Practices, Duke Law Center for Judicial Studies.

## Representative Cases

- *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, MDL 1817 (E.D. Pa.) (Co-Lead Counsel)
- *Eliason v. Gentek Building Prods., Inc., et al.*, No. 10-cv-2093 (N.D. Ohio) (Executive Committee)
- *In Re HardiePlank Fiber Cement Siding Litig.*, MDL No. 2359 (D. Minn.) (Lead Counsel)

## From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2021 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | locklaw.com

## Professional Associations

- AAJ
- Federal Bar Association
- Minnesota Bar Association

## Professional Recognition

- Named a Minnesota Super Lawyer® from 2003-2020
- Listed in the Guide to Leading American Attorneys
- Attorney of the Year (Syngenta litigation team) by Minnesota Lawyer in 2017

## Presentations

Mr. Shelquist lectures on a variety of legal topics.

## Community Involvement

Mr. Shelquist is involved with a number of community organizations as a volunteer.

- *In Re IKO Roofing Shingle Prods. Liab. Litig.*, MDL No. 2104 (C.D. Ill.) (Co-Lead Counsel)
- *In Re Kitec Plumbing Sys. Prods. Liab. Litig.*, MDL No. 2098 (N.D. Tex.) (Co-Lead Counsel)
- *McFerren v. AT&T Mobility LLC*, No. 2008-cv-151322 (Superior Court Fulton County, GA) (Chairman of Plaintiffs' Steering Committee)
- *In Re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, MDL 08-1905 (D. Minn.) (Liaison Counsel)
- *In Re Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Steering Committee)
- *In Re Northstar Educ. Fin., Inc. Contract Litig.*, MDL 08-1990 (D. Minn.) (Co-Lead Counsel)
- *Cynthia Walker v. Cellfish Media, LLC*, No. 08 CH 40592 (Ill. Cir. Ct.) (Plaintiffs' Steering Committee)
- *Patricia Wright, et al. v. Owens Corning*, MDL No. 1567 (W.D. Pa) (Co-Lead Counsel)
- *In re Google Android Consumer Privacy Litig.*, MDL No. 2264 (N.D. Calif.) (Interim Co-Lead Counsel)
- *In Re Zurn Pex Prods. Liab. Litig.*, MDL 1958 (D. Minn.) (Co-Chair Plaintiffs' Steering Committee)
- *In Re Aredia and Zometa Prods. Liab. Litig.*, MDL 06-1760 (M.D. Tenn.) (Plaintiffs' Steering Committee)
- *In Re Baycol Prods. Litig.*, MDL No. 1431 (D. Minn.) (Discovery and Briefing Committees)
- *In Re Blue Cross Blue Shield Subscriber Litig.*, No. 19-C3-98-7780 (Dakota Cnty. Dist. Ct., Minn.) (Co-Chair Discovery Committee)
- *Davenport, et al. v. Illinois Farmers Ins. Co., et al.*, No. CIV-03-158-F (W.D. Okla.)
- *In Re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708 (DWF/AJB) (D. Minn.) (Trial Team)
- *In Re IPhone Application Litig.*, No. 10-CV-05878-LHK (N.D. Cal.) (Executive Committee)
- *In Re Medtronic, Inc., Inplantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1726 (JMR/AJB) (D. Minn.) (Trial Team)
- *In Re Meridia Prods. Liab. Litig.*, MDL 1481 (N.D. Ohio) (Co-Chair Discovery Committee)
- *In Re Milk Prods. Antitrust Litig.*, No. 3-96-458 (D. Minn.) (Co-Chair Discovery Committee)
- *In Re National Arbitration Forum Litig.*, No. 09-1939 (D. Minn.) (Plaintiffs' Lead Counsel Committee)
- *Robert Smale v. Sears Roebuck & Co. & Whirlpool Corp.*, No. C3-04-8891 (Hennepin Cnty. Dist. Court) (Liaison Counsel)
- *George v. Uponor Corp., et al.*, No. 12-249 (D. Minn.) (Co-Lead Counsel)



## LOCKRIDGE GRINDAL NAUEN
### P.L.L.P.
Attorneys at Law

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2021 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | locklaw.com



**LOCKRIDGE GRINDAL NAUEN** P.L.L.P.

*Attorneys at Law*

# Rebecca A. Peterson

**Rebecca A. Peterson**
*Partner*
612-339-6900
rapeterson@locklaw.com

### Practices

Securities Litigation
Products Liability & Consumer Fraud Litigation

### Education

USD School of Law, 2005
St. Olaf College, 1998

### Bar Admissions

Minnesota
California

### Court Admissions

U.S. District Court, Northern District of California
U.S. District Court, District of Minnesota
U.S. District Court, North Dakota
U.S. District Court, Central and Southern Districts of California
U.S. District Court, Eastern District of California
U.S. District Court, District of Colorado
U.S. District Court, Central District of Illinois
U.S. District Court, Eastern District of Wisconsin
U.S. Court of Appeals, Second Circuit
U.S. Court of Appeals, Sixth Circuit
U.S. Court of Appeals, Seventh Circuit

Rebecca A. Peterson is a partner in the firm's class action group with a focus on consumer protection, product liability, and pet food regulation cases and accompanying regulatory issues. Ms. Peterson has been part of successful prosecution of actions on behalf of consumers in both state and federal courts. Ms. Peterson has been appointed lead counsel and, alongside a group of attorneys, was recognized as Attorney of the Year by Minnesota Lawyer for her work on behalf of U.S. farmers. Prior to joining the firm, Ms. Peterson practiced in California and had extensive experience in complex class actions, appeals and public relations. Ms. Peterson carries that experience over to her practice today in fighting to protect the rights of consumers in both federal and state courts, as well as before regulatory and quasi-regulatory bodies. Ms. Peterson has been involved in several trials. Ms. Peterson recently won class certification in a pet food case alleging heavy metals in the dog food. See *Zeiger et al. v. WellPet, LLC et al.*

Ms. Peterson is admitted to the state bar of the States of Minnesota and California. She received her law degree from the University of San Diego School of Law and her B.A. from St. Olaf College. She is an Advisory Board Member of the Page Education Foundation and a Board Member of the animal rescue and sanctuary of Misfit Hounds.

## Representative Cases

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 2:16-md-02744 (E.D. Mich.)
- *Gold, et al. v. Lumber Liquidators, Inc.*, No. 14-cv-05373 (N.D. Cal.)
- *Helmer, et al. v. The Goodyear Tire & Rubber Co.*, No. 1:12-cv-00685-RBJ-MEH (D. Colo.) (trial team)
- *Hiddlestone, et al. v. The Honest Co. Inc.*, No. 2:16-cv-07054 JAK (AGRx) (C.D. Cal.)
- *Johnson v. Bobcat Co.*, No. 0:15-cv-02097-JRT-HB (D. Minn.)
- *Michael, et al. v. The Honest Company Inc.*, No. 2:15-cv-07059-JAK-AGR (C.D. Cal.)
- *In re Nat'l Hockey League Players' Concussion Injury Litig.*, MDL No. 14-2551 (SRN/JSM) (D. Minn.)
- *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, No. 1:15-cv-1364 (N.D. Ill.)
- *In re Syngenta AG MIR162 Corn Litig.*, No. 14-md-2591-JWL-JPO (D. Kan.)

## From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2018 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | locklaw.com

U.S. Court of Appeals, Eighth Circuit

U.S. Court of Appeals, Ninth Circuit

U.S. Court of Appeals, Tenth Circuit

**Professional Recognition**

- Attorney of the Year (Syngenta litigation team) by Minnesota Lawyer in 2017

- *In re Syngenta Litig. (Minn. Producers)*, No. 27-cv-15-3785 (Henn. Co. Dist. Ct., Minn.)
- *Colangelo v. Champion Petfoods USA, Inc. et al.,* No. 6:18-cv-01228-LEK-DEP (N.D.N.Y.)
- *Zarinebaf et al v. Champion Petfoods USA, Inc. et al.*, No. 1:18-cv-06951 (N.D. Ill.)
- *In re Big Heart Pet Brands Litig.*, No. 4:18-cv-00861-JSW (N.D. Cal.) [Co-Lead]
- *Grossman v. Schell & Kampeter, Inc. et al.*, No. 2:18-cv-02344-JAM-AC (E.D. Cal.)
- *Zeiger et al. v. WellPet LLC et al.*, No. 3:17-cv-04056-WHO (N.D. Cal.)
- *In re Toll Roads Litigation No.* 8:16-cv-00262-ODW-ADS (C.D. Cal)
- *Klein et al v. Facebook, Inc. 5:20-cv-08570-LHK (N.D. Cal)*
- *Classick v. Schell & Kampeter, Inc.* No. 2:18-cv-02344-JAM-AC (E.D. Cal)
- *In re Plum Baby Food Litigation, 4:*21-cv-00913-YGR (N.D. Cal) [Co-Lead]
- *In re Crops Input Antitrust Litigation*, 4:21-md-02993 (E.D. MO) [Co-Lead]

## Civic Associations

- Advisory Board Member, Page Education Foundation
- Board Member, Misfit Hounds



**LOCKRIDGE
GRINDAL
NAUEN**
P . L . L . P .
Attorneys at Law

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. 2018 | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | locklaw.com



**Krista K. Freier**

*Associate*

612-339-6900

[kkfreier@locklaw.com](mailto:kkfreier@locklaw.com)

## Practices

Products Liability & Consumer Fraud Litigation

## Education

Concordia College, Moorhead, MN
Hamline University School of Law, 2009

## Bar Admissions

2009, Minnesota

## Court Admissions

Minnesota

# Krista K. Freier

Krista Freier practices in the firm's class action group with an emphasis in products liability. She is a 2009 graduate of Hamline University School of Law where she was a Student Attorney in Hamline's Child Advocacy Clinic and interned with the Honorable Gregory G. Galler in Minnesota State Court. While attending law school, Krista clerked with the Hennepin County Attorney's Office in the divisions of Juvenile Prosecution-Victim Witness and Child Support. Before law school, Krista graduated from Concordia College in Moorhead, Minnesota, with a Bachelor of Arts in Spanish and History with a minor in Economics. Prior to joining the firm, Krista worked for the University of Minnesota and a local nonprofit organization.

## Representative Cases

- *In re Syngenta Litig. (Minn. Producers)*, No. 27-cv-15-3785 (Henn. Co. Dist. Ct., Minn.)
- *Zeiger et al. v. WellPet LLC et al.*, No. 3:17-cv-04056-WHO (N.D. Cal.)



From the Courtroom to the Capitol®

# EXHIBIT 3

# EXHIBIT 3

**FIRM NAME: Lockridge Grindal Nauen P.L.L.P.**

**Categories:**
(1) Written Discovery, Investigations, Factual Research
(2) Pleadings, Briefs, Pretrial Motions (including legal research)
(3) Litigation Strategy, Analysis & Case Management
(4) Experts
(5) Mediation/Settlement
(6) Trial Preparation & Trial
(7) Hearings/Depositions - Preparation and Attendance

**Status:**
(P) Partner
(A) Associate
(CA) Contract Attorney
(PL) Paralegal
(OC) Of Counsel
(LC) Law Clerk
(GR) Government Relations

| NAME | Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| Robert Shelquist | P | 35.25 | 44 | 32.75 | 39.25 | 4.25 | 0 | 4.5 | 160 | 140047.5 |
| Rebecca Peterson | P | 118.5 | 423 | 21.5 | 58.5 | 36.75 | 0 | 342.25 | 1000.5 | 613425 |
| Craig Davis | A | 0 | 44.5 | 0 | 0 | 0 | 0 | 0 | 44.5 | 23425 |
| Krista Freier | A | 761.5 | 140.75 | 0.25 | 0 | 0 | 0 | 0 | 902.5 | 427491.25 |
| Rick Linsk | A | 0 | 44.25 | 0 | 0 | 0 | 0 | 0 | 44.25 | 22437.5 |
| Angela Newfield | PL | 3 | 0.5 | 59.5 | 0 | 0 | 0 | 21 | 84 | 14700 |
| Stephen Owen | A | 0 | 0 | 1 | 0 | 0 | 0 | 16.5 | 17.5 | 8312.5 |
| Derek Waller | LC | 1.25 | 3.25 | 0 | 0 | 0 | 0 | 0 | 4.5 | 900 |
| Kelly LeRoy | PL | 10.5 | 55.5 | 7.75 | 29.5 | 3.5 | 0 | 53 | 155.75 | 43268.75 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **TOTALS** | | **930.00** | **755.75** | **122.75** | **127.25** | **44.50** | **0.00** | **437.25** | **2,413.50** | **1,294,007.50** |

# EXHIBIT 4

# EXHIBIT 4

**Firm: Lockridge Grindal Nauen P.L.L.P.**

|  | Cumulative Expenses |
|---|---|
| Assessments | $ 70,000.00 |
| Court Reporters/Videos/Transcripts/Publications | $ 27.30 |
| Copying | $ 3,139.95 |
| Travel - Reasonable Hotels, Transportation, Meals, Misc. | $ 15,004.94 |
| Messenger.Express Mail | $ 1,031.24 |
| Postage | $ 357.44 |
| Telephone, Facsimile | $ 341.86 |
| Filing Fees | $ 335.00 |
| Miscellaneous not included in travel | $ 3,313.17 |
| Total | **$ 93,550.90** |